IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT D. CHRIST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRETT J. CORMICK, ELAN SUISSE | ) | C.A. No. 06-275-GMS |
| INTERNATIONAL HOLDINGS (USA) | ) | |
| LLC, ELAN SUISSE (PTY) LTD., | ) | |
| NICOGEL LTD., JOHN WALTERS, | ) | |
| DIANNE MARSHALL and MERCARI | ) | |
| FINANCIAL SERVICES (PTY) LTD., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS OR STAY THE AMENDED COMPLAINT**

REED SMITH LLP
Thad J. Bracegirdle (No. 3691)
1201 Market Street
Suite 1500
Wilmington, Delaware 19801
(302) 778-7500

Attorneys for Plaintiff

Dated: April 2, 2007

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ............................................................................... 1

NATURE AND STAGE OF THE PROCEEDING ................................................... 3

SUMMARY OF ARGUMENT ................................................................................ 5

STATEMENT OF FACTS ....................................................................................... 7

I.    THE PARTIES ............................................................................................... 7

II.   BACKGROUND. .......................................................................................... 8

ARGUMENT ......................................................................................................... 11

I.    THIS COURT PROPERLY MAY EXERCISE PERSONAL JURISDICTION
      OVER ALL DEFENDANTS ........................................................................ 11

      A.    Jurisdiction Over Defendant Cormick Is Proper Pursuant to Either 6 *Del.
            C.* §18-109 or 10 *Del. C.* § 3104 ................................................... 12

            1.    Jurisdiction Under Section 18-109 ............................................. 13

            2.    Jurisdiction Under Section 3104 ................................................ 17

      B.    Jurisdiction Over Defendants Elan Suisse, Nicogel, Walters, Marshall and
            Mercari as Co-Conspirators With Defendant Cormick Is Proper Pursuant
            to 10 *Del. C.* § 3104. ....................................................................... 20

II.   THE AMENDED COMPLAINT STATES A CLAIM OF CIVIL CONSPIRACY
      AGAINST DEFENDANTS ........................................................................... 25

III.  PLAINTIFF'S FRAUD AND CIVIL CONSPIRACY CLAIMS ARE NOT
      BARRED BY ANY STATUTE OF LIMITATIONS. ...................................... 29

IV.   THE COURT SHOULD EXERCISE ITS DISCRETION AGAINST
      DISMISSING OR STAYING THIS ACTION IN FAVOR OF THE SOUTH
      AFRICA ACTION. ....................................................................................... 31

V.    DEFENDANTS' REQUEST FOR SANCTIONS HAS NO MERIT. ............... 34

CONCLUSION ..................................................................................................... 37

## TABLE OF AUTHORITIES

### FEDERAL CASES

*AAR International Inc. v. Nimelas Enterprises S.A.,*
  250 F.3d 510 (7th Cir. 2001) ...............................................................................31, 32

*Applied Biosystems, Inc. v. Cruachem, Ltd.,*
  772 F.Supp. 1458 (D. Del. 1991) ....................................................................11, 12, 17

*Beauty Time, Inc. v. VU Skin Systems, Inc.,*
  118 F.3d 140 (3d Cir. 1997)...............................................................................30

*Chambers v. NASCO, Inc.,*
  501 U.S. 32 (1991)...............................................................................................34, 35

*Colorado River Water Conservation District v. United States,*
  424 U.S. 800 (1976)..............................................................................................31

*Dentsply International Inc. v. Pentron Corp.,*
  648 F.Supp. 856 (D. Del. 1986)...........................................................................12

*Eames v. Nationwide Mutual Insurance Co.,*
  412 F.Supp.2d 431 (D. Del. 2006)......................................................................26, 29

*Elan Suisse Ltd. v Christ,*
  2006 WL 3838237 (E.D. Pa. Dec. 29, 2006).......................................2, 4, 33, 35

*Evergreen Marine Corp. v. Welgrow International Inc.,*
  942 F.Supp. 201 (S.D.N.Y. 1996) .......................................................................34

*Evergreen Marine Corp. v. Welgrow International Inc.,*
  954 F.Supp. 101 (S.D.N.Y. 1997) .......................................................................34

*Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.,*
  180 F.3d 896 (7th Cir. 1999) ...............................................................................31, 32

*In re Fruehauf Trailer Corp.,*
  250 B.R. 168 (D. Del. 2000).................................................................................11

*Harris v. Pernsley,*
  755 F.2d 338 (3d Cir. 1988).................................................................................32

*Marino v. Cross Country Bank,*
  2003 WL 503257 (D. Del. Feb. 14, 2003)..........................................................26

*Martin v. Brown,*
    63 F.3d 1252 (3d Cir. 1995)................................................................35

*Noonan South, Inc. v. County of Volusia,*
    841 F.2d 380 (11th Cir. 1988) ...........................................................32

*In re Orthopedic Bone Screw Products Liability Litigation,*
    193 F.3d 781 (3d Cir. 1999).........................................................34, 35

*Renner v. Lanard Toys Ltd.,*
    33 F.3d 277 (3d Cir. 1994)..................................................................11

*Resource Ventures, Inc. v. Resources Management International, Inc.,*
    42 F.Supp.2d 423 (D. Del. 1999)........................................................20

*Schneider National Carriers, Inc. v. Carr,*
    903 F.2d 1154 (7th Cir. 1990) ............................................................32

*Sears, Roebuck & Co. v. Sears plc,*
    744 F.Supp. 1297 (D. Del. 1990)...................................................18, 20

*Shamrock Holdings of California, Inc. v. Arenson,*
    421 F.Supp.2d 800 (D. Del. 2006)..........................................11, 17, 18

*In re Student Finance Corp.,*
    335 B.R. 539 (D. Del. 2005)...............................................................26

*Telcordia Technologies, Inc. v. Alcatel S.A.,*
    2005 WL 1268061 (D. Del. May 27, 2005)........................................11

*Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.,*
    863 F.Supp. 186 (D. Del. 1993)..........................................................21

## STATE CASES

*Aeroglobal Capital Management, LLC v. Cirrus Industries, Inc.,*
    871 A.2d 428 (Del. 2005) ............................................................17, 18

*Albert v. Alex. Brown Management Services,*
    2005 Del.Ch. LEXIS 133 (Aug. 26, 2005) .....................................18, 20

*Arnold v. Society for Savings Bancorp, Inc.,*
    1993 Del.Ch. LEXIS 275 (Dec. 15, 1993)......................................17, 20

*Assist Stock Management L.L.C. v. Rosheim,*
    753 A.2d 974 (Del. Ch. 2000).............................................13, 14, 16

*Cairns v. Gelmon,*
   1998 Del.Ch. LEXIS 79 (May 21, 1998) ..................................................................19

*Computer People, Inc. v. Best International Group, Inc.,*
   1999 WL 288119 (Del. Ch. Apr. 27, 1999) ..............................................................25

*Cornerstone Technologies, LLC v. Conrad,*
   2003 Del.Ch. LEXIS 34 (Mar. 31, 2003) ...........................................................14, 16

*Drelles v. Manufacturers Life Insurance Co.,*
   881 A.2d 822 (Pa Super. 2005)..................................................................................30

*Hercules, Inc. v. Leu Trust & Banking (Bahamas) Ltd.,*
   611 A.2d 476 (Del. 1992) ..........................................................................................21

*IOTEX Communications, Inc. v. Defries,*
   1998 WL 914265 (Del. Ch. Dec. 21, 1998)..........................................................24, 25

*Istituto Bancario Italiano SpA v. Hunter Engineering Co., Inc.,*
   449 A.2d 210 (Del. 1982) .....................................................................................20, 24

*Kahn v. Lynch Communication Systems, Inc.,*
   1989 Del.Ch. LEXIS 102 (Aug. 24, 1989) .................................................................20

*Marketing Products Management, LLC v. HealthandBeautyDirect.com, Inc.,*
   2004 WL 249581 (Del. Super. Jan. 28, 2004) ...........................................................25

*Palmer v. Moffat,*
   2001 WL 1221749 (Del. Super. Oct. 10, 2001).........................................................14

*Papendick v. Robert Bosch GmbH,*
   410 A.2d 148 (Del. 1979) .....................................................................................17, 20

*RJ Associates, Inc. v. Health Payors' Organization L.P.,*
   1999 Del.Ch. LEXIS 161 (July 16, 1999) ............................................................18, 20

*Ramunno v. Cawley,*
   705 A.2d 1029 (Del. 1988) .........................................................................................26

*Reyes v. State,*
   819 A.2d 305 (Del. 2003) .....................................................................................23, 24

*Sternberg v. O'Neil,*
   550 A.2d 1105 (Del. 1998) ...................................................................................17, 20

# FEDERAL RULES

Fed. R. Civ. P. 4 ....................................................................................................12

# STATE RULES AND STATUTES

6 *Del. C.* § 18-109 ........................................................................................... passim

10 *Del. C.* § 3104 ............................................................................................. passim

10 *Del. C.* § 3114 ....................................................................................................13

10 *Del. C.* § 8106 ....................................................................................................29

Del. R. Evid. 801 .....................................................................................................23

42 Pa. Cons. Stat. § 5524 .........................................................................................29

# MISCELLANEOUS

Charles Alan Wright, Arthur R. Miller, et al., *Federal Practice & Procedure*
    (2d ed. 1990) ..............................................................................................29, 32

Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate & Commercial Practice in the
    Delaware Court of Chancery* (2006 supp.)........................................................14, 17

## PRELIMINARY STATEMENT

This dispute arises from a wide-ranging conspiracy to defraud plaintiff Robert D. Christ that was conceived and pursued by individual defendants Brett J. Cormick ("Cormick"), John Walters ("Walters") and Dianne Marshall ("Marshall"), acting through and with the assistance of corporate defendants Elan Suisse International Holdings (USA) LLC ("Elan Suisse USA"), Elan Suisse (Pty) Ltd. ("Elan Suisse"), Nicogel Ltd. ("Nicogel") and Mercari Financial Services ("Mercari"). This fraudulent scheme truly was international in scope, involving individuals and entities located in the United States, the United Kingdom, Zimbabwe, South Africa, Jersey, Guernsey, Botswana, the Seychelles and Australia and communications and actions in those countries as well as across the Internet. Through their unlawful actions, defendants misappropriated $250,000 from plaintiff under the guise of an "investment" in Elan Suisse and Elan Suisse USA, the vehicles for a purported financial services and institutional investment business managed by defendant Cormick. Unbeknownst to plaintiff, however, Elan Suisse and Elan Suisse USA were vehicles only for duping him into providing funds to Cormick which then were used to fund Nicogel, a start-up company owned and operated by defendants Walters and Marshall.

As the ringleader of this conspiracy, defendant Cormick structured his unlawful conduct and his travels in such a way as to minimize contacts with any particular forum and make it as difficult as possible for plaintiff to secure personal jurisdiction over him and his co-conspirators when plaintiff eventually became aware of defendants' fraud. For example, Cormick is an Australian citizen but has represented to plaintiff and others at various times that he alternatively lives in, among other places, the United Kingdom, Zimbabwe and at least two locations in South Africa. In fact, Cormick already has used his ever-changing place of residence to evade service of process in South Africa, refusing to submit to the jurisdiction of a Johannesburg court in an

action brought there previously by plaintiff by arguing that he only "temporarily" resides in a location in the Western Cape, outside of the Johannesburg court's jurisdiction.

Cormick's attempts to evade justice even have extended to the courts of this country, as he and the other defendants have claimed in their motions to dismiss the original and amended complaints in this action that this Court may not exercise personal jurisdiction over them. The transparency of defendants' scheme, however, was apparent to a District Court Judge in Pennsylvania, who concluded recently that Elan Suisse filed a related action in another state in order to avoid the personal jurisdiction of this Court.[1] Through their actions, Cormick and his co-conspirators have run an international "shell game" in an effort to stay one step ahead of the judicial system.

Defendants' continuing attempts to avoid adjudication of plaintiff's claims against them, however, should end here. By forming Elan Suisse USA – a Delaware limited liability company and an integral part of defendants' fraudulent scheme – in this State and thereby availing themselves of the laws of Delaware in furtherance of their unlawful conduct, the foreign defendants have established sufficient contacts with this forum to support this Court's exercise of personal jurisdiction under the relevant long-arm statutes. While Cormick's and the other defendants' present motion represents only their latest attempt to evade justice and divert attention away from the merits of plaintiff's claims, the Court should make it their last. For the reasons set forth below, none of the grounds for dismissal offered by defendants has merit and, accordingly, their Motions to Dismiss or Stay should be denied and they should finally be forced to address the merits of plaintiff's claims against them.

---

[1] *See Elan Suisse Ltd. v. Christ*, 2006 WL 3838237, at *4 n.13 (E.D. Pa. Dec. 29, 2006). Pursuant to District Court Local Rule 7.1.3(a)(7), this and all other unreported opinions cited in this brief are attached as exhibits hereto.

## NATURE AND STAGE OF THE PROCEEDING

Plaintiff Robert D. Christ initiated this action by filing a complaint on April 27, 2006

(D.I. 1). In the original complaint, plaintiff alleged claims of promissory estoppel, breach of

contract and fraud against defendant Cormick (Counts I, II and III) as well as a claim of civil

conspiracy against all defendants (Count IV). Plaintiff thereafter served defendant Elan Suisse

USA, a Delaware limited liability company, with process through its registered agent in

Delaware (*see* D.I. 4). Plaintiff served the remaining defendants, each of whom resides outside

the United States, with process pursuant to Delaware long-arm statutes. Specifically, plaintiff

served defendants Cormick, Elan Suisse, Nicogel, Walters, Marshall and Mercari Financial

Services ("Mercari") pursuant to 10 *Del. C.* § 3104 (*see* D.I. 5, 6, 7, 8, 9, 15). Plaintiff also

served defendant Cormick pursuant to Section 18-109(a) of the Delaware Limited Liability

Company Act (the "LLC Act"), 6 *Del. C.* § 18-109(a) (*see* D.I. 3, 13). No defendant has

challenged the efficacy of service of process.

On May 22, 2006, defendants Cormick, Elan Suisse USA, Elan Suisse, Nicogel, Walters

and Marshall filed a motion to dismiss or stay this action (D.I. 16). Specifically, defendants

moved (1) to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of

personal jurisdiction, (2) to dismiss Count IV (civil conspiracy) pursuant to Rule 12(b)(6) for

failure to state a claim, (3) to dismiss Counts III (fraud) and IV (civil conspiracy) as barred by

the applicable statute of limitations,[2] and (4) to stay this action pending resolution of an action

filed by plaintiff against Cormick in South Africa. Defendants also moved the Court to sanction

plaintiff. On June 16, 2006, defendant Mercari filed its own Motion to Dismiss or Stay and, in

---

[2] Notably, defendants did not challenge the merits of Counts I, II or III under Rule 12(b)(6) or
argue that Counts I or II are barred by any statute of limitations.

support of that motion, joined in the other defendants' opening brief (D.I. 19).  Briefing on defendants' motions was completed on July 3, 2006 (*see* D.I. 21-25).

On June 23, 2006, Elan Suisse filed a related action, styled *Elan Suisse Ltd. v. Christ*, in the Court of Common Pleas of Montgomery County, Pennsylvania.  In that action, Elan Suisse alleged that plaintiff's posting on a website of the facts underlying this case was defamatory and violated Sections 43(a) and 43(d) of the Lanham Act, 15 U.S.C. §§ 1125(a) and 1125(d).  After plaintiff removed that action to the U.S. District Court for the Eastern District of Pennsylvania, he moved to dismiss the action or, alternatively, transfer it to this Court.  On December 29, 2006, the Honorable Gene E.K. Pratter of the Eastern District of Pennsylvania issued a memorandum and order transferring *Elan Suisse Ltd. v. Christ* to this Court "for consolidation with" this action. *See* 2006 WL 3838237, at *4.  Accordingly, the related action was transferred to this Court on January 30, 2007 and assigned Civil Action No. 07-60-GMS.  On February 19, 2007, plaintiff moved to consolidate *Elan Suisse Ltd. v. Christ* with this action; that motion currently is pending before the Court.

On March 2, 2007, plaintiff filed an amended complaint in this action which added supplemental facts discovered by plaintiff concerning defendants' conspiracy to defraud him (D.I. 29).  In response to the amended complaint, defendants renewed their motions to dismiss or stay and for sanctions on March 15, 2007 (D.I. 30).  Plaintiff hereby submits this answering brief in opposition to those motions.

## SUMMARY OF ARGUMENT

1.      All defendants properly are subject to the personal jurisdiction of this Court.

First, defendant Cormick, by reason of his formation, ownership and management of a Delaware

limited liability company in furtherance of his unlawful scheme to defraud plaintiff, is subject to

personal jurisdiction in Delaware pursuant to either 6 *Del. C.* § 18-109 or 10 *Del. C.* § 3104.

Additionally, the other defendants are subject to this Court's personal jurisdiction under 10 *Del.*

*C.* § 3104 as a result of their knowing participation with Cormick in a conspiracy to defraud

plaintiff, a substantial act in furtherance of which was the formation of Elan Suisse USA in

Delaware.

2.      The allegations of the amended complaint are sufficient to state a claim that

defendants engaged in a civil conspiracy to defraud plaintiff in order to misappropriate $250,000

for capitalizing Nicogel.  The facts alleged by plaintiff – as well as the reasonable inferences to

be drawn therefrom, to which plaintiff is entitled for the purposes of defendants' motion –

construct a series of relationships between defendants which leaves no doubt as to their

complicity in a common scheme to defraud plaintiff for their common benefit.

3.      Since all of plaintiff's claims are timely under Delaware's three-year statute of

limitations, defendants attempt to argue that Pennsylvania law – and its shorter statute of

limitations – bars certain of plaintiff's claims.  Even assuming that Pennsylvania's two-year

statute of limitations applies to Counts III (fraud) and IV (civil conspiracy), that statute did not

begin to run until no earlier than September 2004, when plaintiff first learned of defendants'

fraudulent and unlawful actions despite his exercise of reasonable diligence.  Therefore, under

the "discovery rule," plaintiff's claims are timely and would not be barred until September 2006

at the earliest.

4.     The Court's discretion to stay a federal action in favor of a concurrent foreign proceeding should be exercised sparingly and only under exceptional circumstances. The present motion does not present such exceptional circumstances, particularly since (a) plaintiff's amended complaint alleges several causes of action and names several defendants not included in the action previously filed by plaintiff in South Africa against Cormick only, and (b) this Court also will hear related litigation, initiated voluntarily by Elan Suisse and arising from the same facts as this case. Denial of defendants' motion is further justified by the fact that Cormick openly has challenged the South African court's personal jurisdiction over him, thereby jeopardizing plaintiff's ability to seek relief in that court.

5.     Defendants' request for sanctions against plaintiff pursuant to the Court's inherent judicial powers is wholly unjustified and without merit. The Court's inherent power to award attorneys' fees is to be exercised only in cases where a party has acted egregiously and in bad faith. As plaintiff demonstrates below, his allegations have ample factual support and are brought in good faith. Defendants' request for sanctions, and their claims of harassment, is entirely baseless.

## STATEMENT OF FACTS

### I.    THE PARTIES.

Plaintiff Robert D. Christ is a citizen of Louisiana who resides in Abita Springs, Louisiana. Am. Compl. ¶ 1.

Defendant Cormick is a citizen of Australia who, according to statements he has made to plaintiff and others, resides alternatively in the United Kingdom and in the Republic of Zimbabwe. Am. Compl. ¶ 2. Cormick also has represented at various times that he resides in Hermanus, South Africa as well as in Gauteng, near Johannesburg, South Africa. Christ Aff. ¶ 4.[3]

Defendant Elan Suisse USA is a limited liability company formed and organized under the laws of Delaware. Am. Compl. ¶ 3. Defendant Cormick is the sole member of Elan Suisse USA. *Id.*

Defendant Elan Suisse is a corporation formed and organized under the laws of the Republic of South Africa. Am. Compl. ¶ 4. At all times relevant to this action, defendant Cormick was a director and officer of Elan Suisse. *Id.*

Defendant Nicogel is a corporation formed and organized under the laws of the United Kingdom with its principal place of business in Cambridgeshire, England. Am. Compl. ¶ 5. The primary business of Nicogel (previously known as Aquacine Ltd. ("Aquacine")) purportedly is the development and marketing of a nicotine replacement device in the form of an externally-applied gel. *Id.* ¶ 37. Defendant Walters is a citizen of the United Kingdom and the Chief

---

[3] Citations to "Christ Aff." refer to the Affidavit of Robert D. Christ filed with the Court on June 26, 2006 (D.I. 22). A copy of Mr. Christ's affidavit is submitted herewith as Exhibit A. As discussed below, the Court properly may consider this affidavit in its analysis of defendants' jurisdictional arguments. *See* p. 11 *infra.*

Executive Officer of Nicogel. *Id.* ¶ 6. Defendant Marshall is a citizen of the United Kingdom and an officer and shareholder of Nicogel. *Id.* ¶ 7.

Defendant Mercari is a corporation formed and organized under the laws of the Republic of South Africa with its principal place of business in Sandton, South Africa. Am. Compl. ¶ 8. At all times relevant to this action, defendant Cormick was a director of Mercari. *Id.* As alleged in the amended complaint, Cormick – with the authorization and knowledge of Mercari's then-Managing Director – operated Elan Suisse out of Mercari's offices and utilized Mercari's employees and resources (such as mail service, telephones, computers, fax services, etc.) to operate Elan Suisse and communicate with plaintiff. *Id.* ¶ 36.

## II.    BACKGROUND.

In the mid- to late 1990's, plaintiff operated a tour company specializing in expeditions to the geographic North and South Poles. Am. Compl. ¶ 14. Plaintiff first met defendant Cormick in April 1996, when Cormick participated in one of plaintiff's expeditions, after which time plaintiff and Cormick maintained a friendship. *Id.*

In January 2004, plaintiff traveled to Cape Town, South Africa to attend to the affairs of a close friend who had died suddenly in an accident. Am. Compl. ¶ 15. While plaintiff was in South Africa, Cormick traveled to Cape Town from his residence in Harare, Zimbabwe to meet with plaintiff. *Id.* During these meetings, Cormick discussed with plaintiff his potential investment in a purported business opportunity devised by Cormick. *Id.* On January 28, 2004, Cormick proposed in an e-mail to plaintiff that plaintiff invest in a holding company that would operate to promote and sell United States-based financial products and investment vehicles to investors located in South Africa. Am. Compl. ¶ 16. In this e-mail, Cormick intentionally misrepresented to plaintiff, among other things, that he had access to 8,000 brokers and financial advisors in South Africa who represented one million potential investors in that country. *Id.*

Cormick further misrepresented to plaintiff that he had relationships with investors who intended immediately to invest $28.5 million through his proposed business. *Id.* However, Cormick informed plaintiff, he required an initial infusion of capital in order to launch the venture.

During late January and early February 2004, plaintiff and Cormick exchanged multiple e-mails in which they negotiated the terms of plaintiff's investment in Cormick's alleged business venture. Am. Compl. ¶ 17. Over the course of these e-mails, in response to concerns raised by plaintiff and in an effort to persuade plaintiff to invest in his purported business, Cormick intentionally misrepresented to plaintiff that the infrastructure to begin operations already was in place and that he only needed plaintiff's investment in order to get his business off the ground. *Id.* These negotiations culminated in a written proposal by Cormick on February 15, 2004 pursuant to which plaintiff would invest $350,000 in exchange for a 50% equity interest in two entities: (i) Elan Suisse, a South African corporation which would manage the investment operations; and (ii) Elan Suisse USA, a Delaware limited liability company which would own certain intellectual property rights. Am. Compl. ¶ 18. In subsequent e-mails in late February 2004, and during a face-to-face meeting in London, England in early March 2004, plaintiff and Cormick further discussed the details of plaintiff's investment. *Id.* During this time, Cormick emphasized to plaintiff repeatedly that he required plaintiff's investment as soon as possible. *Id.*

During the course of these discussions, plaintiff and Cormick agreed to memorialize the terms of plaintiff's investment in a written agreement at a future date. Am. Compl. ¶ 19. In March 2004, in reliance upon Cormick's promise that he and plaintiff would draft and execute promptly a written agreement documenting plaintiff's investment in Elan Suisse and Elan Suisse USA (which Cormick caused to be formed in Delaware on March 15, 2004), and in reliance upon multiple misstatements by Cormick concerning his personal credentials, his purported

relationships with South African investors and the validity of his proposed business venture, plaintiff wired an initial investment of $250,000 (in two separate payments of $125,000 each) to Cormick's personal bank account in London pursuant to Cormick's instructions. *Id.* Plaintiff withheld the remaining $100,000 of his proposed investment pending execution of a written agreement. *Id.*

However, despite Cormick's representations that he and plaintiff would execute a written agreement, no such contract was ever prepared or signed, nor did plaintiff ever receive equity shares of Elan Suisse or Elan Suisse USA in exchange for his $250,000 investment. Am. Compl. ¶ 20. In September 2004, at which time Cormick's business had yet to commence operations, plaintiff sent e-mails to Cormick inquiring as to the status of his investment and requesting an audit of Elan Suisse and Elan Suisse USA. *Id.* Rather than undertake the audit requested by plaintiff, in an e-mail dated September 9, 2004, Cormick offered to repay plaintiff the $250,000 he had wired previously to Cormick. Plaintiff accepted Cormick's offer in writing on November 30, 2004. *Id.* To date, however, in direct breach of their agreement, plaintiff has not received repayment of his $250,000 payment from Cormick. *Id.*

## ARGUMENT

### I.    THIS COURT PROPERLY MAY EXERCISE PERSONAL JURISDICTION OVER ALL DEFENDANTS.

Defendants seek dismissal of this action, among other grounds, pursuant to Rule 12(b)(2) for lack of personal jurisdiction. In response to this motion, plaintiff bears the burden of establishing that the Court may properly exercise personal jurisdiction over defendants. *E.g., Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F.Supp. 1458, 1462 (D. Del. 1991). In analyzing defendants' motion to dismiss pursuant to Rule 12(b)(2), the Court must accept as true all allegations of plaintiff's complaint and resolve all factual disputes in plaintiff's favor. *E.g., Shamrock Holdings of California, Inc. v. Arenson*, 421 F.Supp.2d 800, 803 (D. Del. 2006). The Court also may consider sworn affidavits or other competent evidence relating to the issue of personal jurisdiction. *In re Fruehauf Trailer Corp.*, 250 B.R. 168, 183 (D. Del. 2000).

Where, as here, personal jurisdiction is contested prior to discovery, plaintiff need only establish a *prima facie* showing that jurisdiction exists with the record viewed in the light most favorable to plaintiff. *Id.*; *Sears, Roebuck & Co. v. Sears plc*, 744 F.Supp. 1297, 1301 (D. Del. 1990). The Court may, in its discretion, defer deciding a motion to dismiss pursuant to Rule 12(b)(2) in order to permit plaintiff to take limited discovery concerning the defendants' amenability to personal jurisdiction. *See, e.g., Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 283-84 (3d Cir. 1994).[4] Where a factual dispute exists concerning the basis for asserting personal

---

[4] Defendants argue that the Court should not afford plaintiff discovery relating to personal jurisdiction on the grounds that plaintiff's allegations supporting jurisdiction are "untenable as a matter of law." Defendants' Opening Brief ("DOB") at 18-20. As this Court has recognized, jursdictional discovery should be afforded unless the plaintiff's claims are "clearly frivolous." *Telcordia Technologies, Inc. v. Alcatel S.A.*, 2005 WL 1268061, at *9 (D. Del. May 27, 2005) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)). As demonstrated in this brief, the allegations of plaintiff's amended complaint sufficiently establish this Court's personal jurisdiction over defendants. Nonetheless, should the Court determine that

*(Continued on following page)*

jurisdiction over defendants, the Court also has discretion to reserve decision pending an evidentiary hearing. *See Dentsply Int'l Inc. v. Pentron Corp.*, 648 F.Supp. 856, 860 (D. Del. 1986).

Rule 4 of the Federal Rules of Civil Procedure permits assertion of personal jurisdiction over an out-of-state party pursuant to the law of the state in which the District Court sits. *See* Fed. R. Civ. P. 4(e). To determine whether personal jurisdiction exists, the Court must first examine whether jurisdiction is authorized by the relevant state long-arm statute and then assess whether the exercise of jurisdiction satisfies the Due Process Clause of the Fifth Amendment. *Applied Biosystems*, 772 F.Supp. at 1462 (citing *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 293 (3d Cir.), *cert. denied*, 474 U.S. 980 (1985)). As explained below, viewing all facts in the light most favorable to plaintiff, the allegations of the amended complaint support a *prima facie* exercise of personal jurisdiction over all defendants.

### A.    Jurisdiction Over Defendant Cormick Is Proper Pursuant to Either 6 *Del. C.* §18-109 or 10 *Del. C.* § 3104.

Defendant Cormick was served with process pursuant to two separate long-arm statutes, 6 *Del. C.* § 18-109 and 10 *Del. C.* § 3104 (*see* D.I. 3, 11, 13, 14, 15), under either of which Cormick equally is subject to this Court's personal jurisdiction. Accordingly, Cormick's motion to dismiss pursuant to Rule 12(b)(2) must fail.

---

*(Continued from previous page)*
factual issues exist with respect to defendants' amenability to suit in this forum, plaintiff respectfully submits that his claim of personal jurisdiction over defendants unquestionably surpasses the "clearly frivolous" standard and that jurisdictional discovery and/or an evidentiary hearing is appropriate. For example, while plaintiff believes that the allegations of the amended complaint sufficiently establish "conspiracy" jurisdiction over defendants (*see* pp. 20-25 *infra*), that inquiry nonetheless is fact-intensive and justifies further investigation if the Court has questions concerning defendants' contacts with this forum.

1.     <u>**Jurisdiction Under Section 18-109.**</u>

Section 18-109 of the LLC Act, 6 *Del. C.* § 18-109 ("Section 18-109"), is a consent to

jurisdiction statute which authorizes long-arm service of process upon non-resident managers

and liquidating trustees of Delaware limited liability companies as well as persons who, while

not a "manager" as designated pursuant to the entity's operating agreement, nonetheless

"participates materially in the management of the limited liability company." 6 *Del. C.* § 18-

109(a). Section 18-109(a) provides in relevant part that a manager or a person who participates

materially in the management of a limited liability company "may be served with process … in

all civil actions or proceedings brought in the State of Delaware involving or relating to the

business of the limited liability company or a violation by the manager … of a duty to the limited

liability company, or any member of the limited liability company." *Id.* Cormick has not

challenged the effectiveness of service of process under Section 18-109(a); therefore, the only

issues before the Court are whether Cormick is subject to service under that statute and whether

such an exercise of jurisdiction comports with Due Process.

First, it is important to note that the scope of service authorized by Section 18-109(a) is

not nearly as narrow as Cormick contends. The statute, by its very language, applies not just to

claims arising from a breach of a manager's fiduciary duties but also to any claim "involving or

relating to the business of the limited liability company." 6 *Del. C.* § 18-109(a). In construing

this provision, the Delaware Court of Chancery has noted that the language cited above differs

significantly from that of 10 *Del. C.* § 3114 ("Section 3114"), the analogous director long-arm

statute, which has been limited by the Delaware courts to apply "only to those actions directed

against a director of a Delaware corporation for acts on his part performed only in his capacity as

a director." *Assist Stock Mgmt. L.L.C. v. Rosheim*, 753 A.2d 974, 979 (Del. Ch. 2000) (quoting

*Hana Ranch, Inc. v. Lent*, 424 A.2d 28, 30 (Del. Ch. 1980)). As a result, the Court of Chancery

has applied Section 18-109 more liberally than Section 3114 in deference to the Delaware

legislature's decision to draft Section 18-109 broadly to authorize jurisdiction over claims

"involving or relating to the business" of limited liability companies. *See id.* at 980; *Cornerstone*

*Technologies, LLC v. Conrad*, 2003 Del. Ch. LEXIS 34, at *40 (Mar. 31, 2003); *see also* Donald

J. Wolfe, Jr. & Michael A. Pittenger, *Corporate & Commercial Practice in the Delaware Court*

*of Chancery* § 3-5[a][1][v], at 3-67 (2006 Supp.).  The court has held that, in considering the

scope of Section 18-109(a), "[p]rotection against unconstitutional application … could be

provided on a case-by-case basis by applying the minimum contacts analysis mandated by due

process." *Rosheim*, 753 A.2d at 980.[5]

    First, Cormick properly is subject to service pursuant to Section 18-109(a) because, while

not a manager of Elan Suisse USA as designated by that entity's operating agreement,[6] he

"participated materially in the management" of Elan Suisse USA.  The Certificate of Formation

for Elan Suisse USA indicates that, at the time Cormick formed that entity, he was the sole initial

member of the limited liability company. *See* Christ Aff. Ex. C.  Given that no other

organizational documents for Elan Suisse USA have been filed with the Delaware Secretary of

State, there can be no question that, as the sole member of that entity, Cormick is the only person

---

5 Cormick's citation to *Palmer v. Moffat*, 2001 WL 1221749 (Del. Super. Oct. 10, 2001), does
not alter this analysis.  In comparing Section 3114 and Section 18-109, the Superior Court in
*Palmer* did not address the scope of Section 18-109 or limit that scope to breaches of fiduciary
duty by managers of limited liability companies. *See* 2001 WL 1221749, at *3.  Rather,
consistent with *Rosheim*, the court merely noted Section 18-109's application to the rights and
duties of managers in evaluating the constitutionality of applying the statute to a particular
defendant. *See id.* at *4.  In no way did the Superior Court depart from the Court of Chancery's
broad interpretation of Section 18-109 as expressed in *Rosheim* and *Cornerstone Technologies*.

6 In fact, no such operating agreement ever has been filed with the Delaware Secretary of State
nor does plaintiff believe one actually exists – although, curiously, Cormick has made many
references to an operating agreement in the South African suit.

who was or possibly could have been responsible for the entity's management.  He therefore falls

within the definition of "manager" for the purposes of personal jurisdiction under Section 18-

109(a).[7]

There likewise can be no question that the claims alleged in the amended complaint arise

from actions taken by Cormick which "involve or relate to" the business of Elan Suisse USA as

that language has been construed by the Court of Chancery.  Elan Suisse USA was formed by

Cormick for the sole purpose of inducing plaintiff to transfer $250,000 to Cormick in exchange

for the illusory prospect of owning equity shares of Elan Suisse USA.  *See* Am. Compl. ¶¶ 18-20.

In other words, the only "business" of Elan Suisse USA was to provide Cormick with a straw

man through which he could defraud plaintiff.  Therefore, as the sole person who controlled and

managed that entity for the purpose of perpetuating this fraudulent scheme, Cormick properly is

subject to service of process pursuant to Section 18-109(a).

As a result of Cormick's management of Elan Suisse USA in connection with his

unlawful scheme, this Court's assertion of personal jurisdiction under Section 18-109(a) is fully

consistent with the requirements of the Due Process Clause of the Fifth Amendment.  In

---

[7] Cormick questions whether Elan Suisse USA, which was formed on March 15, 2004, existed at the time plaintiff's claims arose.  *See* DOB at 8-9.  As defendants know, however, plaintiff alleges that he wired funds to Cormick in March 2004, without identifying the date of those transfers, because plaintiff provided the only record of his first wire transfer of $125,000 (*see* Compl. ¶ 19) to Cormick.  Christ Aff. ¶ 6.  Nonetheless, the record of plaintiff's second wire transfer of $125,000 (*see* Christ Aff. Ex. B) indicates that those funds were sent to Cormick on March 16, 2004, *after* Cormick formed Elan Suisse USA.  In any event, a significant portion of Cormick's unlawful conduct transpired after March 15, 2004, when he continued to promise plaintiff that he and Cormick would execute a written agreement and fraudulently induced plaintiff to perform web development and marketing services for Cormick's non-existent business.  *See, e.g.,* Am. Compl. ¶¶ 20, 26.  Moreover, for the reasons discussed below (*see* pp. 22-23 *infra*), the date on which Elan Suisse USA was formed is irrelevant to the validity of plaintiff's claims and, if anything, proves that Cormick formed and controlled Elan Suisse USA solely for the purpose of defrauding plaintiff.

performing its Constitutional analysis, the Court is to make "a realistic evaluation of the relationship" that Cormick has established with Delaware to determine whether it is "'keeping with traditional notions of fair play and substantial justice' to require him to defend this dispute in this court." *Rosheim*, 753 A.2d at 980 (quoting *In re USACafes, L.P. Litig.*, 600 A.2d 43, 52 (Del. Ch. 1991)).  Therefore, the validity of personal jurisdiction pursuant to Section 18-109(a) is not limited to disputes concerning the rights, duties and obligations of managers or members of Elan Suisse USA, as Cormick contends; rather, the Court more broadly determines whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Cornerstone Technologies*, 2003 Del. Ch. LEXIS 34, at *42 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Here, Cormick's formation of Elan Suisse USA and his intentional selection of Delaware as the domicile for the entity through which he perpetrated his fraudulent scheme provides more than sufficient contact with this forum to support personal jurisdiction.  Elan Suisse USA could have been formed in any number of international jurisdictions – as were many other vehicles through which Cormick has defrauded other individuals – but Cormick purposely availed himself of the benefits of Delaware law in order to entice plaintiff to "invest" in Elan Suisse USA and Cormick's illusory business venture.  *See* Christ Aff. Ex. D.  Given that Cormick formed Elan Suisse USA as a Delaware limited liability company – and, in doing so, consented by virtue of Section 18-109(a) to the personal jurisdiction of Delaware courts in disputes relating to that entity – Cormick cannot argue credibly that he could not have reasonably anticipated being subject to suit in this forum.  *See Cornerstone Technologies*, 2003 Del. Ch. LEXIS 34, at *43 (holding that manager of Delaware limited liability properly was subject to personal jurisdiction under Section 18-109(a) and noting that, by choosing to form entities in Delaware, "it is clear

that [defendant] purposefully availed himself of the benefits and protections of Delaware law and

that he cannot be surprised to face this lawsuit here").

### 2. Jurisdiction Under Section 3104.

Even if Cormick was not subject to service pursuant to Section 18-109(a), this Court's

personal jurisdiction over him equally is proper under 10 *Del. C.* § 3104. Delaware courts

consistently have held that the formation and ownership of a Delaware entity can constitute the

transaction of business in Delaware for the purposes of Section 3104(c)(1), which authorizes

service of process on a non-resident defendant who "transacts any business … in the State" in

actions arising from that conduct. *See, e.g., Shamrock Holdings*, 421 F.Supp.2d at 804 ("A

single act of incorporation in Delaware will suffice to confer personal jurisdiction over a

nonresident defendant if such purposeful activity in Delaware is an integral component of the

total transaction to which plaintiff's cause of action relates."); *Aeroglobal Capital Mgmt., LLC v.

Cirrus Industries, Inc.*, 871 A.2d 428, 439 (Del. 2005) ("[T]he ownership of a Delaware

subsidiary may constitute the transaction of business under Delaware's Long Arm Statute where

the underlying cause of action arises from the creation and operation of the Delaware

subsidiary.") (citing *Papendick v. Robert Bosch GmbH*, 410 A.2d 148, 152 (Del. 1979);

*Sternberg v. O'Neil*, 550 A.2d 1105, 1107 (Del. 1988)); *Arnold v. Soc'y for Sav. Bancorp, Inc.*,

1993 Del. Ch. LEXIS 275, at *8 (Dec. 15, 1993) ("[T]he act of forming a Delaware subsidiary

constitutes a transaction of business in Delaware for the purposes of § 3104."), *aff'd in part,

rev'd in part on other grounds*, 650 A.2d 1270 (Del. 1994); *see generally* Wolfe & Pittenger § 3-

5[a][1][i], at 3-42 to 3-43 (and cases cited therein). This Court similarly has held that the

formation and ownership of a Delaware entity can constitute tortious conduct in Delaware for the

purposes of Section 3104(c)(3), which authorizes service of process on a non-resident defendant

who "causes tortious injury in the State." *See Applied Biosystems*, 772 F.Supp. at 1467

(recognizing that, under Section 3104(c), "the incorporation of [a subsidiary] in Delaware would provide specific jurisdiction over any tort causes of action related to the act of incorporation"); *Sears*, 744 F.Supp. at 1303 ("[B]y incorporating a subsidiary in Delaware … [defendant] performed an act in state sufficient to confer personal jurisdiction over it for causes of action related to that act of incorporation.").[8]

Notwithstanding his claims to the contrary, Cormick formed Elan Suisse USA – an entity he solely owned – in Delaware as an integral part of his scheme to defraud plaintiff. As alleged in the amended complaint, Elan Suisse USA was a conduit through which Cormick fraudulently induced plaintiff to remit $250,000 in exchange for what he was told would be equity interests in Elan Suisse USA and Elan Suisse. *See, e.g.*, Am. Compl. ¶¶ 18-20. Plaintiff's claims against Cormick therefore arise from and relate directly to Cormick's formation of Elan Suisse USA as a Delaware limited liability company. As such, those claims provide ample support for the assertion of personal jurisdiction over Cormick pursuant to either Section 3104(c)(1) or Section 3104(c)(3). *See Shamrock Holdings*, 421 F.Supp.2d at 804 (plaintiffs' causes of action arose from and related to defendants' formation of Delaware entities, which supported personal jurisdiction pursuant to Section 3104(c)(1)); *Aeroglobal*, 871 A.2d at 438-40 (creation and ownership of Delaware subsidiary to facilitate investment giving rise to cause of action sufficient to establish personal jurisdiction under Section 3104(c)(1)); *Albert v. Alex. Brown Mgmt. Services*, 2005 Del. Ch. LEXIS 133, at *51-55 (Aug. 26, 2005) (non-resident defendants' formation and management of Delaware subsidiaries sufficient to establish personal jurisdiction under Section 3104(c)(1)); *RJ Associates, Inc. v. Health Payors' Org. L.P.*, 1999 Del. Ch.

---

[8] In arguing that plaintiff must allege that the formation of Elan Suisse USA "caused … tortious injury in Delaware" to establish jurisdiction under Section 3104(c)(3) (OB at 13), Cormick of course fails to recognize this Court's express holdings in *Applied Biosystems* and *Sears*.

LEXIS 161, at *15-17 (July 16, 1999) (non-resident defendant's formation and management of Delaware subsidiary sufficient to establish personal jurisdiction under Section 3104(c)(1)); *Sears*, 744 F.Supp. at 1303 (non-resident defendant's incorporation of Delaware subsidiary constituted an act sufficient to confer personal jurisdiction under Section 3104(c)(3)).

The Delaware Court of Chancery's decision in *Cairns v. Gelmon*, 1998 Del. Ch. LEXIS 79 (May 21, 1998), is particularly instructive in this context. In *Cairns*, the plaintiffs alleged claims of, *inter alia*, fraud, breach of contract and unjust enrichment against defendants who had agreed to form a joint venture with the plaintiffs to license technology through a Delaware subsidiary which the parties would own equally. Upon forming the Delaware subsidiary, however, the defendants issued all the stock to themselves and the plaintiffs thereafter served process upon those non-resident defendants pursuant to Section 3104. In denying the defendants' motion to dismiss, the Court of Chancery accepted the plaintiffs' argument that "a single act of incorporation in Delaware, if done as part of a wrongful scheme, will suffice to confer in personam jurisdiction over the nonresident defendants responsible for the scheme." 1998 Del. Ch. LEXIS 79, at *7. The court further held that "because the incorporation of [the subsidiary] in Delaware is central to [plaintiffs'] claims of wrongdoing, I conclude that in these specific circumstances that single act suffices to constitute the 'transaction of business' in Delaware under 10 *Del. C.* § 3104(c)(1)." *Id.* at *10. Since Cormick's formation of Elan Suisse USA is likewise central to plaintiff's allegations concerning Cormick's fraudulent scheme, that act similarly establishes this Court's personal jurisdiction over Cormick pursuant to Section 3104.

As is the case with Section 18-109, personal jurisdiction over Cormick under Section 3104 comports with the "minimum contacts" requirement imposed by due process. Both this

Court and Delaware state courts have held that, by forming and owning a Delaware entity, a non-resident defendant purposefully avails himself of the benefits and protections of Delaware law and, accordingly, reasonably could expect to be haled before a Delaware court for claims relating to that act. *See Sears*, 744 F.Supp. at 1303; *Sternberg*, 550 A.2d at 1120-21; *Papendick*, 410 A.2d at 152; *Albert*, 2005 Del. Ch. LEXIS 133, at *57-58; *RJ Associates*, 1999 Del. Ch. LEXIS 161, at *19-20; *Arnold*, 1993 Del. Ch. LEXIS 275, at *13-14; *Kahn v. Lynch Communication Systems, Inc.*, 1989 Del. Ch. LEXIS 102, at *13 (Aug. 24, 1989). Therefore, the assertion of personal jurisdiction over Cormick pursuant to Section 3104 is fully consistent with Constitutional notions of fair play and substantial justice.

**B.    Jurisdiction Over Defendants Elan Suisse, Nicogel, Walters, Marshall and Mercari as Co-Conspirators With Defendant Cormick Is Proper Pursuant to 10 *Del. C.* § 3104.**

Because defendants Elan Suisse, Nicogel, Walters, Marshall and Mercari conspired with defendant Cormick to defraud plaintiff – using Cormick's formation of Elan Suisse USA as an integral part of their scheme – and utilize the misappropriated funds to help launch the business that ultimately became Nicogel, the actions of Cormick which support this Court's personal jurisdiction over him also may be imputed to the other defendants to support personal jurisdiction over them. Under Delaware law, this "conspiracy theory" of jurisdiction provides that a non-resident conspirator properly is subject to the Court's jurisdiction if: (1) a conspiracy to defraud existed; (2) the defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy. *Istituto Bancario Italiano SpA v. Hunter Engineering Co., Inc.*, 449 A.2d 210, 225 (Del. 1982). *See also Resource*

20

*Ventures, Inc. v. Resources Mgmt. Int'l Inc.*, 42 F.Supp.2d 423, 434 (D. Del. 1999) (applying the

five-part test established in *Istituto Bancario*); *Wesley-Jessen Corp. v. Pilkington Visioncare,*

*Inc.*, 863 F.Supp. 186, 189 (D. Del. 1993) (same).

Plaintiff is not required to establish the substantive elements of a claim for civil

conspiracy to satisfy the first two elements of this test. *See Hercules, Inc. v. Leu Trust &*

*Banking (Bahamas) Ltd.*, 611 A.2d 476, 481 (Del. 1992), *cert. dismissed*, 507 U.S. 1025 (1993).

Nonetheless, there are sufficient facts to establish the existence of a conspiracy among

defendants both as a *prima facie* case and for the purposes of establishing jurisdiction over

Cormick's co-conspirators pursuant to Section 3104. For example, when Cormick was soliciting

plaintiff's investment in the Elan Suisse venture, and after plaintiff wired $250,000 to Cormick,

he stated repeatedly in e-mails to plaintiff that Elan Suisse was creating a biotechnology fund for

potential South African investors. *See* Am. Compl. ¶ 38; Christ Aff. ¶ 10(a). This biotechnology

"fund" ultimately promoted Acquacine (which later was renamed Nicogel), and its alleged

production of medicine delivery devices, as a key venture capital investment opportunity. *See*

Am. Compl. ¶ 38; Christ Aff. ¶ 10(b).

Walters and Marshall, both of whom are officers of Nicogel, participated fully and

knowingly with Cormick in promoting the fraudulent Elan Suisse venture. Walters and Cormick

have known each other since at least 2001, when Cormick was promoting investment in a

purported biotechnology firm with which Walters then was involved. Am. Compl. ¶ 38. In

addition, Walters is identified in multiple promotional materials (along with Cormick) and in

press reports as a key executive at Elan Suisse. *See id.*; Christ Aff. ¶ 10(d), (f), (g). Marshall

also personally registered Internet domain names for Nicogel's predecessor and prepared

promotional materials for Elan Suisse's biotechnology "fund" which touted the prospects for the

company that became Nicogel. *See* Christ Aff. ¶ 10(c), (e). Walters and Marshall not only share officer positions at Nicogel and a residence, they are the parents of a young daughter with whom they also reside. *See id.* ¶ 10(c). Finally, Nicogel and Elan Suisse are connected through Anthony John Carter, an admitted investor in Elan Suisse who also serves as a director of Nicogel. *See* Am. Compl. ¶ 38. Viewing all these facts in a light most favorable to plaintiff, as the Court must in the context of the present motion, defendants' claim of "guilt by association" lacks credibility; instead, it is more than reasonable to conclude that a conspiracy existed between Cormick, Walters, Marshall and Nicogel to defraud plaintiff.

The facts proving the conspiracy between Cormick and Mercari are even clearer. As the amended complaint alleges, Cormick was a director of Mercari at the time of his fraudulent communications with plaintiff and the formation of Elan Suisse USA. *See* Am. Compl. ¶ 36. During that time, Cormick conducted the fraudulent Elan Suisse operations from Mercari's offices and utilized Mercari's employees and resources (such as mail service, telephones, computers, fax services, etc.) to carry out his unlawful scheme to defraud plaintiff and, in furtherance of that scheme, to form Elan Suisse USA. *See id.*

The formation by Cormick of Elan Suisse USA, and defendants' decision to avail themselves of the benefits of Delaware law in furtherance of their scheme to defraud plaintiff, satisfies the remaining elements under *Istituto Bancario*. Defendants' argument that any conspiracy could not have involved the formation of Elan Suisse USA had plaintiff wired funds to Cormick prior to the entity's creation (DOB at 11-12) not only is factually inaccurate (*see* p. 15 n.7 *supra*) but also is inapposite. Defendants' scheme to defraud plaintiff did not begin and end at the moment plaintiff wired funds to Cormick; rather, it began with Cormick's initial fraudulent proposals to plaintiff concerning the non-existent Elan Suisse business venture and

continued through, *inter alia*: (1) Cormick's continued misstatements to plaintiff concerning Elan Suisse following plaintiff's "investment" which concealed and perpetuated the fraud and induced plaintiff to perform additional marketing services through the Fall of 2004 (Am. Compl. ¶¶ 20, 26); (2) Cormick's misstatements following the misappropriation of plaintiff's funds concerning the written agreement between the parties which never was executed (Am. Compl. ¶¶ 20, 22-23); and (3) defendants' subsequent use of plaintiff's funds not to capitalize Elan Suisse, but to start up Aquacine, which ultimately was renamed Nicogel (Am. Compl. ¶¶ 37-38).

Similarly, the fact that the entity which ultimately became Nicogel may not have been created until after the formation of Elan Suisse USA is of no moment. First, while Nicogel's predecessor was created in July 2004 (*see* OB Ex. F), the Aquacine/Nicogel venture was well into development by the time defendants formed Elan Suisse USA – and, in fact, was used to induce plaintiff's "investment" (*see* Am. Compl. ¶ 38). For example, the "aquacine.com" domain name was registered in October 2003 and an Aquacine website dating from 2004 stated that it was governed by copyrights held by the "Aquacine Group" since as early as 2002. *See* Exs. B, C. In any event, since Nicogel ultimately was the beneficiary of its co-defendants' fraudulent scheme (which included, *inter alia*, creating Elan Suisse USA in Delaware) it unquestionably was a participant in their conspiracy. In summary, the formation of Elan Suisse USA was but one part of defendants' unlawful scheme, which spanned more than a year, albeit an integral part – as discussed above, the creation of Elan Suisse USA was used by Cormick, with the other defendants' knowledge and complicity, to lure plaintiff into "investing" his funds in the non-existent business venture.[9]

---

[9] Defendants' reliance upon *Reyes v. State*, 819 A.2d 305 (Del. 2003), is misplaced. The *Reyes* court considered whether a conspiracy existed for the purpose of determining whether certain
*(Continued on following page)*

Accordingly, the creation of Elan Suisse USA by filing of a certificate of formation with the Delaware Secretary of State constitutes a substantial act in furtherance of defendants' conspiracy that occurred in Delaware, about which defendants knew or had reason to know and which was a direct and foreseeable result of the conspiracy. The Delaware Supreme Court's holding in *Istituto Bancario* provides important guidance on this point. The plaintiff in *Istituto Bancario* brought an action against two foreign corporations which had been issued shares of a Delaware corporation as part of an alleged conspiracy to dilute the plaintiff's holdings in the corporation. Applying its five-part test, the Delaware Supreme Court held that the filing of the certificate of amendment with the Delaware Secretary of State which had increased the number of authorized shares issued to the foreign defendants was an act taken in furtherance of the conspiracy which occurred in Delaware and had a foreseeable effect within the State. *See* 449 A.2d at 227. Specifically, the court noted that "while we recognize the act of filing the certificate amendment increasing the authorized shares, did not in itself do the damage, it was an essential step to the conspiracy to defraud. … The public act in Delaware of amending the certificate was therefore a substantial act in the furtherance of the conspiracy." *Id.* Cormick's formation of Elan Suisse USA similarly was an essential and substantial act in furtherance of defendants' conspiracy of which all defendants were aware and which had a direct and foreseeable effect in Delaware.

This case therefore is distinguishable from *IOTEX Communications, Inc. v. Defries*, 1998 WL 914265 (Del. Ch. Dec. 21, 1998), in which the Delaware Court of Chancery opined that the

---

*(Continued from previous page)*
statements fell within the exception to hearsay provided by Delaware Rule of Evidence 801(d)(2)(E), a different standard than that applied by the Court in analyzing the validity of personal jurisdiction over non-resident co-conspirators. *See* 819 A.2d at 312-13.

"[m]ere use of a Delaware corporate entity in connection with a civil conspiracy" did not

constitute a "principal effect involving Delaware" under the *Istituto Bancario* test.  1998 WL

914265, at *7.  In *IOTEX*, the Court of Chancery rejected the plaintiff's claim that the use of an

already existing Delaware corporation as a vehicle through which non-resident defendants

committed a fraud supported personal jurisdiction over those defendants.  In doing so, the court

distinguished *Istituto Bancario*, in which "a substantial act in furtherance of the civil conspiracy

– the filing of a certificate of amendment with the Delaware Secretary of State authorizing the

issuance of the shares there in question – actually took place in Delaware."  *Id.*  Here, defendants

did not "merely use" an existing Delaware entity in furtherance of their conspiracy, but rather –

as was the case in *Istituto Bancario* – took the integral step of creating Elan Suisse USA through

the filing of a certificate of formation in Delaware.  As *Istituto Bancario* makes clear, this act

justifies the exercise of this Court's personal jurisdiction over all defendants.[10]

## II.    THE AMENDED COMPLAINT STATES A CLAIM OF CIVIL CONSPIRACY AGAINST DEFENDANTS.

Defendants contend that plaintiff's amended complaint does not adequately allege facts

stating a claim for civil conspiracy under Pennsylvania law.  To state such a claim under

---

[10] The holdings of *Marketing Products Management, LLC v. HealthandBeautyDirect.com, Inc.*,
2004 WL 249581 (Del. Super. Jan. 28, 2004), and *Computer People, Inc. v. Best International
Group, Inc.*, 1999 WL 288119 (Del. Ch. Apr. 27, 1999), are based on facts not present here and
are similarly distinguishable.  In *HealthandBeautyDirect.com*, the Delaware Superior Court
rejected the plaintiff's claim of conspiracy jurisdiction based on its finding that a Delaware
corporation was formed nearly two years prior to execution of the contract at issue and,
therefore, was not incorporated with the intent to defraud the plaintiff.  *See* 2004 WL 249581, at
*2-3.  In *Computer People*, the Delaware Court of Chancery held that the formation of a
Delaware corporation did not constitute a "substantial act or effect" in furtherance of a
conspiracy, and rejected the plaintiff's conspiracy theory of jurisdiction, "not as a matter of
theory but as a matter of evidence."  1999 WL 288119, at *9.  By contrast, the formation of Elan
Suisse USA in Delaware, as plaintiff has demonstrated, was a key component of defendants'
conspiracy to defraud plaintiff.

Pennsylvania law, a plaintiff must allege: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. *In re Student Fin. Corp.*, 335 B.R. 539, 552 (D. Del. 2005) (applying Pennsylvania law). For the purposes of defendants' motion, the choice of law is irrelevant since the elements for a claim of civil conspiracy are materially identical under either Pennsylvania or Delaware law. *See, e.g., Eames v. Nationwide Mut. Ins. Co.*, 412 F.Supp.2d 431, 438 (D. Del. 2006) ("Under Delaware law, a claim for civil conspiracy requires a plaintiff to show (1) a combination of two or more persons, (2) an unlawful act done to further the conspiracy, and (3) damages.").[11] The allegations of the amended complaint state a claim under either standard.

The liberal pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure govern allegations of civil conspiracy. *Marino v. Cross Country Bank*, 2003 WL 503257, at *5 (D. Del. Feb. 14, 2003). Under Rule 8(a), such allegations "must be sufficient to 'describe the general composition of the conspiracy, some or all of its broad objectives, and the defendant's general role in the conspiracy.'" *Id.* (quoting *China Res. Prods. (U.S.A.), Ltd. v. Fayda Int'l, Inc.*, 788 F.Supp. 815, 819 (D. Del. 1992)). In considering the sufficiency of plaintiff's claims pursuant to a Rule 12(b)(6) motion, the Court is to accept as true all facts alleged in the amended complaint and draw all reasonable inferences in plaintiff's favor. *See, e.g., Eames*, 412 F.Supp.2d at 435 (citing *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d

---

[11] Defendants misconstrue the holding of *Ramunno v. Cawley*, 705 A.2d 1029 (Del. 1988) (*see* OB at 21 n.8), in which the Delaware Supreme Court, consistent with the authorities cited herein, stated that "civil conspiracy is not an independent cause of action in Delaware … *it must arise from some underlying wrong*." 705 A.2d at 1039 (emphasis added).

478, 483 (3d Cir. 1998)).  The claims should be dismissed only if no relief could be granted under any set of facts consistent with the allegations of the amended complaint.  *Id.*[12]

The allegations of plaintiff's amended complaint meet these standards.  With respect to Elan Suisse, the amended complaint alleges that Cormick, acting in his capacity as a director and officer of Elan Suisse (Am. Compl. ¶ 4), fraudulently induced plaintiff to transfer $250,000 to Cormick under the false impression that plaintiff was to receive an equity interest in Elan Suisse, the entity which Cormick represented to plaintiff would manage the alleged business venture's investment operations in South Africa.  *See id.* ¶¶ 16-19.  The amended complaint also alleges how Elan Suisse USA, which was formed and controlled by Cormick, similarly was used to induce plaintiff to wire funds to Cormick because plaintiff was fraudulently misled to believe that he was investing in Elan Suisse USA.  *See id.*  Plaintiff also alleges that, in furtherance of defendants' conspiracy, Cormick used his position as a director of Mercari and Mercari's resources – with the knowledge of Mercari's Managing Director – to communicate with plaintiff and effectuate defendants' scheme to defraud plaintiff.  *See id.* ¶ 36.[13]

With respect to Nicogel, the amended complaint alleges that the funds which had been misappropriated from plaintiff were not used to fund Elan Suisse or Elan Suisse USA, but

---

[12] Even if the heightened pleading standards of Rule 9(b) apply (*see* OB at 22), the allegations of the amended complaint, as described herein, sufficiently describe Cormick's fraudulent acts and the co-defendants' complicity in the scheme to defraud plaintiff.

[13] The averments before this Court of Dirk Mostert, Mercari's owner, raise significant doubts as to Mostert's and Mercari's credibility.  Mostert now admits that "Mercari briefly permitted Dr. Cormick to utilize Mercari's offices" but claims that "Mercari never learned of Mr. Christ or Dr. Cormick's dealings with him until this lawsuit was filed" in April 2006.  Decl. of Mercari Financial Services (Pty) Ltd. ¶ 7.  In January 2005, however, Mostert sent correspondence to plaintiff's South African counsel – in response to claims that Mercari assisted Cormick with defrauding plaintiff – in which he stated that Elan Suisse "does not sublet offices from [Mercari]."  *See* Ex. D.  Notably, the correspondence also identifies Cormick as a director of Mercari.  *See id.*

instead were used to capitalize Aquacine, a start-up company which ultimately was renamed

Nicogel. *See* Am. Compl. ¶ 37. The amended complaint further alleges that, during and after

Cormick's solicitation of plaintiff's investment in Elan Suisse, Cormick stated repeatedly to

plaintiff that Elan Suisse was creating a "biotechnology fund" – through which Cormick and

Elan Suisse ultimately promoted Aquacine – for potential South African investors. *See id.* ¶ 38.

Given the fact that Cormick defrauded plaintiff in order to fund an investment in Nicogel, it is

reasonable for the Court to infer that Nicogel knowingly conspired with Cormick and Elan

Suisse to defraud plaintiff with the ultimate objective of funding Nicogel. By the same token,

the Court also reasonably may infer that Walters (a convicted felon) and Marshall, who are

officers of Nicogel (*see id.* ¶¶ 6-7) and also live together with their daughter (*see* Christ Aff. ¶

10(c)), knowingly conspired with the other defendants in their fraudulent scheme. This inference

is only strengthened by the additional facts alleged in plaintiff's amended complaint establishing

the connection between Elan Suisse, Nicogel and the individual defendants. For example –

contrary to previous statements made by Walters – Cormick and Walters have known each other

since at least 2001, well before collaborating on the Nicogel scheme, when Cormick was

promoting investment in another purported venture of Walters'. *See* Am. Compl. ¶ 38. Walters

and Cormick later identified themselves as key executives at Elan Suisse in promotional

materials prepared by Marshall. *See id.*; Christ Aff. ¶ 10(e). Anthony John Carter, an investor in

Elan Suisse who also serves as a director of Nicogel, also provides an undeniable link between

the two entities and their intertwined management. *See* Am. Compl. ¶ 38.

      These allegations – and the clear inferences to be drawn from them – prove more than

just "guilt by association." Cormick's and Walters' history of promoting "biotechnology funds"

and their involvement together in Elan Suisse are more than just coincidence, as is the fact that

they used Elan Suisse to raise investment for Nicogel, a venture in which Cormick, Walters, Marshall, and a co-investor in Elan Suisse all are involved. The close collaboration between these individuals leads inescapably to the conclusion that they and their affiliated entities, through Cormick's acts, including the formation of Elan Suisse USA, knowingly conspired to misappropriate plaintiff's funds.[14]

## III. PLAINTIFF'S FRAUD AND CIVIL CONSPIRACY CLAIMS ARE NOT BARRED BY ANY STATUTE OF LIMITATIONS.

There can be no dispute – and defendants do not dispute – that plaintiff's fraud and civil conspiracy claims are not barred by Delaware's three-year statute of limitations. *See* 10 *Del. C.* § 8106. Accordingly, defendants argue that Pennsylvania's shorter *two-year* statute of limitations (*see* 42 Pa. Cons. Stat. § 5524(7)) applies to and bars those claims. Even assuming for the purposes of the present motion that the Pennsylvania statute of limitations applies to plaintiff's claims of fraud and civil conspiracy, defendants' argument is unavailing.

Defendants note correctly that Pennsylvania's two-year statute of limitations for fraud claims is subject to a "discovery rule" which tolls the limitations period "until the plaintiff learns or reasonably should have learned through the exercise of due diligence of the existence of the

---

[14] In the event the Court determines that plaintiff's civil conspiracy claim does not meet the relevant pleading requirements, plaintiff respectfully requests that he be granted leave to further amend his complaint to add factual allegations relating to defendants' actions. While plaintiff amended his complaint pursuant to Rule 15(a) in order to supplement his original allegations with facts he has discovered since the complaint was first filed, his ongoing investigation into defendants' wide-ranging, international conspiracy continues to uncover facts relating to their fraudulent activities – despite defendants' best efforts to obscure and cover their trail. Where, as here, any pleading deficiencies can be cured by the addition of supplemental facts, the Court should grant leave to amend the complaint. *See, e.g.,* 6 Charles Alan Wright, Arthur R. Miller, et al., *Federal Practice & Procedure* § 1483, at 587 (2d ed. 1990) ("Ideally, if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend."); *Eames*, 412 F.Supp.2d at 439 (dismissing civil conspiracy claim without prejudice and granting plaintiffs leave to amend).

claim." *Beauty Time, Inc. v. VU Skin Systems, Inc.*, 118 F.3d 140, 148 (3d Cir. 1997). The Third

Circuit has recognized that, under the discovery rule, the statute of limitations will not begin to

run "when a party 'has been injured by fraud and remains in ignorance without any fault or want

of diligence or care on his part, … though there be no special circumstances or efforts on the part

of the party committing the fraud to conceal it from the knowledge of the other party.'" *Id.* at

144 (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946)). The reasonable diligence

required of a plaintiff in ascertaining the cause of an injury is "such diligence, care, or attention

as might be expected from a man of ordinary prudence and activity." *Id.*

The facts alleged in the amended complaint and set forth in plaintiff's affidavit

demonstrate conclusively that, if Pennsylvania's statute of limitations applies, its application

should be tolled until September 2004 at the earliest. Contrary to defendants' claims, the present

situation is not one where plaintiff "blindly relie[d] upon a misrepresentation the falsity of which

would be patent if he had used his opportunity to make a cursory examination or investigation."

*Drelles v. Manufacturers Life Ins. Co.*, 881 A.2d 822, 840 (Pa. Super. 2005). Rather, plaintiff

justifiably relied upon the representations and statements of Cormick, an individual who by

January 2004 had been a friend of plaintiff's for nearly eight years – and a sufficiently close

friend to visit plaintiff in South Africa when plaintiff was tending to the affairs of another friend

who had died suddenly – and who held himself out as a sophisticated businessman with access to

thousands of potential investors in South Africa. *See* Am. Compl. ¶¶ 14-16; Christ Aff. ¶ 9.

While defendants attempt to argue that the extent of Cormick's fraud was limited to

plaintiff's wiring of $250,000 in March 2004, plaintiff continued to justifiably rely upon

Cormick's continuing misstatements concerning Elan Suisse's purported business operations and

the expected written agreement between plaintiff and Cormick even after plaintiff's initial

"investment." *See* Am. Compl. ¶ 20. Based on these continuing misrepresentations, plaintiff still believed in the validity of Elan Suisse and, in fact, performed web development and marketing services for Elan Suisse through the Summer of 2004. *See id.* ¶ 26; Christ Aff. ¶ 7. Indeed, as alleged in the amended complaint, plaintiff did not have reason to suspect Cormick's fraud until September 2004, when plaintiff, curious as to why Elan Suisse still had not commenced operations, demanded an audit of Elan Suisse and Elan Suisse USA. *See* Am. Compl. ¶ 20; Christ Aff. ¶ 8. Accordingly, despite his exercise of reasonable diligence, plaintiff had no reason to be aware of Cormick's fraudulent conduct – which Cormick continued to conceal throughout 2004 by means of further misstatements – until September 2004 at the earliest. Therefore, the two-year Pennsylvania statute of limitations applied to fraud actions does not bar plaintiff's fraud or civil conspiracy claims, which were commenced on April 27, 2006.

## IV.    THE COURT SHOULD EXERCISE ITS DISCRETION AGAINST DISMISSING OR STAYING THIS ACTION IN FAVOR OF THE SOUTH AFRICA ACTION.

Under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), the Court may, under only "exceptional" circumstances, abstain from hearing a suit and "await the outcome of parallel proceedings as a matter of 'wise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation.'" *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 898 (7th Cir. 1999) (quoting *Colorado River*, 424 U.S. at 817). However, "because the federal courts have a 'heavy obligation' to exercise jurisdiction, 'only the clearest of justifications will warrant dismissal' of the federal action in deference to a concurrent ... proceeding." *AAR Int'l Inc. v. Nimelas Enterprises S.A.*, 250 F.3d 510, 517 (7th Cir. 2001) (quoting *Colorado River*, 424 U.S. at 819). Therefore, the Court's "task in determining whether abstention is appropriate is 'not to find some substantial reason for the *exercise* of federal jurisdiction by the district court, ... [but] rather ...

31

to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction.'" *Id.* at 517-18 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983)) (emphasis and omissions in original). *See also Noonan South, Inc. v. County of Volusia*, 841 F.2d 380, 383 (11th Cir. 1988) ("The dismissal of an action in deference to parallel … proceedings is an extraordinary step that should not be undertaken absent a danger of a serious waste of judicial resources."); *Harris v. Pernsley*, 755 F.2d 338, 345-46 (3d Cir. 1988). As such, the cases in which "exceptional circumstances" will justify a stay or dismissal in favor of a concurrent proceeding are "rare." 17A Wright & Miller § 4247, at 151-53. The Court's analysis under *Colorado River* "is somewhat different where, as here, 'the alternate forum is not the tribunal of a state of the federal union to which, under our Constitution, we owe a special obligation of comity.'" *Finova*, 180 F.3d at 898 (quoting *Ingersoll Milling Mach. Co. v. Granger*, 833 F.2d 680, 685 (7th Cir. 1987)).

Despite defendants' claims to the contrary, this action and the prior-filed action in South Africa are not parallel. "Suits are parallel if substantially the same parties are litigating substantially the same issues simultaneously in two fora." *Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.2d 1154, 1156 (7th Cir. 1990). While plaintiff's complaint in the South African action alleges certain of the same facts alleged here, it does not incorporate all of the causes of action alleged here or name any of the present defendants besides Cormick, none of whom except Elan Suisse and Mercari potentially could be subject to personal jurisdiction in a South African court. A foreign action will only be deemed parallel with a concurrent federal action if "there is a 'substantial likelihood' that the foreign litigation 'will dispose of all claims presented in the federal case.'" *AAR Int'l*, 250 F.3d at 518 (quoting *Day v. Union Mines Inc.*, 862 F.2d

652, 656 (7th Cir. 1988)).  Defendants cannot seriously contend that the South Africa litigation,

which alleges only a single claim against Cormick, would dispose of all claims alleged in this

action.

Defendants also cannot seriously contend that litigating in this forum will be

inconvenient given that this Court also will be hearing related litigation which Elan Suisse

voluntarily initiated in the United States.  As the U.S. District Court for the Eastern District of

Pennsylvania noted correctly in transferring the related action to this forum, all of the defendants

here – even if dismissed from this case – necessarily will be relevant witnesses in *Elan Suisse*

*Ltd. v. Christ*, and therefore cannot credibly claim inconvenience when they willingly chose to

pursue litigation in this country.  *See* 2006 WL 3838237, at *4.  The fact that this Court also will

hear *Elan Suisse Ltd. v. Christ*, an action arising from common facts which plaintiff has moved

to consolidate with this case, further weighs against staying this action.

Moreover, Cormick's claim that he is "currently waiting for Mr. Christ to apply to the

South African court for a trial date" (Cormick Decl. ¶ 10) is highly disingenuous, if not

altogether false.  Cormick neglects to inform the Court that, in his pleading in response to

plaintiff's South African complaint and in a sworn affidavit filed with the South African court,

he disclaimed all contacts with that forum and expressly challenged the South African court's

personal jurisdiction over him – just as he has done in this action.  *See* Cormick Decl. Ex. A-2 ¶¶

2.1.1-2.1.3, 4.3.1-4.3.2; Christ Aff. Ex. A.  Therefore, Cormick never intends to face trial in

South Africa on plaintiff's claims there and plaintiff likely cannot obtain the relief he seeks in

South Africa.  *See* Christ Aff. ¶ 11.  Moreover, plaintiff cannot simply dismiss the South African

action because, by doing so, he would forfeit a $15,000 bond paid into the court at the

commencement of the action.  *See id.*

33

One of the cases cited by defendants actually militates against a stay in these circumstances. In *Evergreen Marine Corp. v. Welgrow Int'l Inc.*, 942 F.Supp. 201 (S.D.N.Y. 1996), the U.S. District Court for the Southern District of New York, in a predecessor opinion to *Evergreen Marine Corp. v. Welgrow Int'l Inc.*, 954 F.Supp. 101 (S.D.N.Y. 1997) (cited at DOB at 30), denied the defendant's motion to dismiss the federal action in favor of a pending action in Belgium brought against it by the same plaintiff. The *Evergreen* court, noting that "[p]arallel proceedings on the same in personam claim should ordinarily be allowed to proceed simultaneously," 942 F.Supp. at 207, found a risk of inadequate relief in Belgium because of the defendant's refusal to submit to the jurisdiction of the Belgian court. *Id.* In light of the questions concerning the Belgian court's jurisdiction over the defendant, the plaintiff's "legitimate interest in assuring that it has an adequate forum in which to proceed" against the defendant counseled against the federal court's abstention. *Id.* The same is true here, where Cormick has challenged the personal jurisdiction of the South African court and, thus, staying this action will effectively deprive plaintiff of a forum in which to pursue his claims.

## V.    DEFENDANTS' REQUEST FOR SANCTIONS HAS NO MERIT.

In addition to moving to dismiss the amended complaint, defendants also have moved for sanctions against plaintiff. While the Court's inherent judicial powers authorize it to award attorneys' fees as a means of sanctioning a party, the Court should do so only in "cases where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991). "Because of their very potency, inherent powers must be exercised with restraint and caution." *Id.* at 44. Imposition of attorneys' fees under the Court's inherent powers is reserved for behavior "of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation." *In re Orthopedic Bone Screw*

34

*Products Liab. Litig.*, 193 F.3d 781, 795 (3d Cir. 1999) (quoting *Baker Indus., Inc. v. Cerberus Ltd.*, 764 F.2d 204, 208 (3d Cir. 1985)). Therefore, "a court's inherent power should be reserved for those cases in which the conduct of a party … is egregious and no other basis for sanctions exists." *Martin v. Brown*, 63 F.3d 1252, 1265 (3d Cir. 1995).

Plaintiff's conduct in bringing this action falls far short of this exacting standard. Defendants seek sanctions based on nothing more than their assertions that plaintiff's claims are "vexatious and harassing," that plaintiff brought this action against defendants "without any reasonable basis for the assertion of jurisdiction in Delaware, and contrary to well-established Delaware law," and that plaintiff has made "false accusations" against defendants Nicogel, Walters and Marshall. DOB at 32-33. As plaintiff has demonstrated above, his claims not only have a good faith basis in fact, but also withstand defendants' Motion to Dismiss under Rules 12(b)(2) and 12(b)(6). As such, plaintiff hardly can be accused of having "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45.[15] Moreover, even if the Court ultimately concludes that plaintiff's claims should be dismissed, such a dismissal does not suggest that plaintiff brought this action in bad faith or that defendants are entitled to sanctions. *See Orthopedic Bone Screw Products Liab. Litig.*, 193 F.3d at 796 ("[I]t is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not prevail, his action must have been unreasonable or without foundation.") (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1978)). In short, there are absolutely no grounds upon which the Court could find that, by filing

---

[15] Defendants' claims of harassment and bad faith ring hollow given Judge Pratter's suggestion that Elan Suisse likely brought its related case, *Elan Suisse Ltd. v. Christ*, in Pennsylvania solely to avoid this Court's jurisdiction. *See* 2006 WL 3838237, at *4 n.13.

this action, plaintiff has engaged in sufficiently egregious conduct to warrant the extreme and sparingly-imposed remedy of sanctions in the exercise of the Court's inherent powers.

## CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that the Court deny defendants'

Motion to Dismiss or Stay, as well as their Motion for Sanctions, in their entirety.

REED SMITH LLP

_/s/ Thad J. Bracegirdle_
Thad J. Bracegirdle (No. 3691)
1201 Market Street
Suite 1500
Wilmington, Delaware 19801
(302) 778-7500

Attorneys for Plaintiff

Dated: April 2, 2007

37