# EXHIBIT F

LEXSEE 1993 DEL. CH. LEXIS 275

ROBERT H. ARNOLD, Plaintiff, v. SOCIETY FOR SAVINGS BANCORP, INC., a Delaware corporation, DAVID T. CHASE, SANFORD CLOUD, JR., LAWRENCE CONNELL, ROBERT E. GREEN, JEROME H. GROSSMAN, BETSY HENLEY-COHN, RONALD D. JARVIS, EDWARD W. LARGE, EDWARD J. OKAY, JOHN F. SHEA, JR., FLORIAN A. STANG, JERRY F. STONE, JR., BANK OF BOSTON CORPORATION, and BBC CONNECTICUT HOLDING CORPORATION, Defendants.

C.A. No. 12883

COURT OF CHANCERY OF DELAWARE, NEW CASTLE

*1993 Del. Ch. LEXIS 275; Fed. Sec. L. Rep. (CCH) P98,006*

October 1, 1993, Submitted
December 15, 1993, Decided

**NOTICE:** THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff shareholder filed a motion for summary judgment against defendants, a Delaware corporation and its directors, and an acquiring corporation. The shareholder's action asserted that the Delaware corporation's directors breached their fiduciary duty of full disclosure during the period surrounding the corporation's merger with the acquiring corporation, and violated their duty to obtain maximum shareholder value.

**OVERVIEW:** After a corporation merged with another corporation, a shareholder of the merged corporation claimed that the directors breached their fiduciary duty of candor by failing to disclose material information, and their duty to obtain maximum shareholder value. The corporation and the directors denied the breach, and the acquiring corporation, a Massachusetts corporation, contended that the chancery court did not have jurisdiction over it because it did not conduct business in Delaware. The court held that (1) the acquiring corporation's actions of voluntarily merging its subsidiary into the Delaware corporation and choosing to designate the Delaware corporation as the surviving entity constituted a transaction of business under *Del. Code Ann. tit. 10, § 3104*, which subjected the acquiring corporation to the personal jurisdiction of the chancery court, (2) the directors did not breach any duty of candor, and (3) the directors did not breach their duty to obtain maximum shareholder value because that duty did not exist in the subject merger transaction because it did not contemplate the inevitable break-up of the Delaware corporation.

**OUTCOME:** The court granted summary judgment and dismissed the shareholder's claims that alleged a breach of the duty of candor on the part of the directors, and a breach of their duty to obtain maximum shareholder value.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN1] Whether Delaware has personal jurisdiction over a defendant served under its long-arm statute, *Del. Code Ann. tit. 10, § 3104* depends on: (i) whether the complaint provides a statutory basis under § 3104 for asserting personal jurisdiction; and (ii) whether subjecting the defendant to jurisdiction is fair under the Due Process Clause of the United States Constitution.

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN2] A court may exercise personal jurisdiction over any non-resident who transacts any business or performs

any character of work or service in Delaware. Del. Code. Ann. tit. 19, § 3104(c)(1).

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN3] Section 3104, *Del Code Ann. tit. 10, § 3104*, is a "single act" statute such that one act may be enough to constitute "transacting business" under § 3104.

*Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview*
*Civil Procedure > Summary Judgment > Standards > Appropriateness*
*Civil Procedure > Summary Judgment > Standards > Materiality*
[HN4] To prevail on a summary judgment motion, the moving party must establish that there is no genuine issue as to any material fact presented to the Court. Del. Ch. Ct. R. Civ. P. 56(c). Reasonable factual inferences will be drawn against the nonmoving party only if they are supported by evidence as opposed to mere assertions or allegations.

*Business & Corporate Law > Mergers & Acquisitions > Mergers > Duties & Liabilities of Directors & Officers*
*Governments > Fiduciary Responsibilities*
[HN5] Under Delaware law, one of a director's fiduciary duties in regard to a merger transaction is to disclose the material facts regarding that transaction to the shareholders. An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.

*Business & Corporate Law > Mergers & Acquisitions > Mergers > Duties & Liabilities of Directors & Officers*
[HN6] Under Delaware law, shareholders are not entitled to a "play-by-play" description of merger negotiations.

*Business & Corporate Law > Mergers & Acquisitions > Mergers > Duties & Liabilities of Directors & Officers*
[HN7] A proxy statement is not misleading when a vote, reported as unanimous, contains abstentions.

*Business & Corporate Law > Corporations > Directors & Officers > Management Duties & Liabilities > General Overview*
*Business & Corporate Law > Mergers & Acquisitions > Mergers > Duties & Liabilities of Directors & Officers*
[HN8] When a break-up of a corporate entity becomes "inevitable", the duty owed by the board of directors of that company changes. No longer does the board have the duty to preserve the corporate entity; instead, it must maximize shareholder value.

*Business & Corporate Law > Mergers & Acquisitions > Mergers > Duties & Liabilities of Directors & Officers*
[HN9] The duty of the board of directors to maximize shareholder value when a break-up of a corporate entity becomes inevitable occurs: (1) when a corporation initiates an active bidding process seeking to sell itself or to effect a business reorganization involving a clear break-up of the company, and (2) where, in response to a bidder's offer, a target abandons its long-term strategy and seeks an alternative transaction involving the breakup of the company.

**COUNSEL:** [*1]

William Prickett, Esquire, Ronald A. Brown, Jr., Esquire, Jeen Kim, Esquire, Curtis C. Johnston, Esquire, and Thomas A. Mullen, Esquire, of PRICKETT, JONES, ELLIOTT, KRISTOL & SCHNEE, Wilmington, Delaware, Attorneys for Plaintiff.

Jesse A. Finkelstein, Esquire, of RICHARDS, LAYTON & FINGER, Wilmington, Delaware; OF COUNSEL: Richard F. Ziegler, Esquire, of CLEARY, GOTTLIEB, STEEN & HAMILTON, New York, New York, Attorneys for Defendants Society for Savings Bancorp, Inc., David T. Chase, Sanford Cloud, Jr., Lawrence Connell, Robert E. Green, Jerome H. Grossman, Betsy Henley-Cohn, Ronald D. Jarvis, Edward F. Large, Edward J. Okay, John F. Shea, Jr., Florian A. Stang and Jerry F. Stone, Jr.

A. Gilchrist Sparks, III, Esquire, and Seth D. Rigrodsky, Esquire, of MORRIS, NICHOLS, ARSHT & TUNNELL, Wilmington, Delaware; OF COUNSEL: Robert A. Buhlman, Esquire, of BINGHAM, DANA & GOULD, Boston, Massachusetts, Attorneys for Defendants Bank of Boston Corporation and BBC Connecticut Holding Corporation.

**JUDGES:** CHANDLER

**OPINIONBY:** CHANDLER

**OPINION:**

**MEMORANDUM OPINION**

CHANDLER, Vice Chancellor

Plaintiff is the owner of 300 shares of common stock of Society for Savings Bancorp, Inc. ("Bancorp"), a Delaware corporation. [*2] Plaintiff is suing Bancorp, certain directors of Bancorp, Bank of Boston Corporation ("BoB") and BBC Connecticut Holding Corporation ("BBC") (collectively "Defendants"). Plaintiff's cause of action against Defendants alleges that Defendants breached their fiduciary duty of full disclosure during the period surrounding the merger of Bancorp and BBC. Plaintiff also alleges that Defendants violated their Revlon duties during the consummation of the same merger.

I. BACKGROUND

BoB is a bank holding company registered under Massachusetts law that provides banking services in the Northeastern United States. It owns several banking institutions, including BBC. BoB created BBC specifically for the purpose of merging it into Bancorp. Bancorp, a Delaware corporation, owns Fidelity Acceptance Corporation ("FAC"). Through the process described below, BoB agreed to merge its subsidiary, BBC, into Bancorp, and designate Bancorp the surviving entity (the "Merger"). This transaction was completed in July, 1993. As a result of the Merger, BoB owns one hundred percent of the stock of Bancorp.

The events leading up to the Merger are as follows. In 1991, Bancorp's Board of Directors (the "Bancorp [*3] Board") investigated options for enhancing shareholder value: in other words, it put Bancorp "in play". Bancorp retained Goldman Sachs to undertake and evaluate alternatives. Apparently, in late 1991, after presenting several options to the Bancorp Board, Goldman Sachs determined to acquire Bancorp for itself. Goldman Sachs developed a strategy whereby it would acquire a large part of Bancorp's assets, sell Bancorp's deposit base to another institution, sell FAC and create a stub entity to hold and liquidate any remaining assets (the "Proposed Goldman Transaction"). In order to quantify its strategy, Goldman Sachs sought to value the FAC component of the Proposed Goldman Transaction. It accomplished this by conducting an auction of FAC.

Nine companies submitted "serious" preliminary bids for FAC; Norwest submitted a high bid of $ 275 million. Goldman Sachs invited the five highest bidders to conduct due diligence of FAC, and after Norwest's completion of due diligence, it confirmed its offer to buy FAC for $ 275 million. In May 1992, contracts for the sale of FAC were drafted; the only steps remaining were for Bancorp and its shareholders to approve the Proposed Goldman Transaction [*4] and the parties to the sale to sign the agreements.

On May 28, 1992, Goldman Sachs presented the Proposed Goldman Transaction to the Bancorp Board. Goldman Sachs recommended it to the Bancorp Board and placed a tentative value on the Proposed Goldman Transaction, as a whole, at $ 229.4 million or $ 19.26 per share. By a vote of 8 to 5, the Bancorp Board rejected the Proposed Goldman Transaction. In a press release issued a few days after this board meeting, Bancorp, through Lawrence Connell, stated that the board "'has determined that management should devote all its efforts to strengthening [Bancorp] as an independent public corporation . . .'"

During the year following Bancorp's rejection of the Proposed Goldman Transaction, the Bancorp Board continued negotiations with BoB. In late August, 1992, BoB submitted a written offer to the Bancorp Board to acquire all of Bancorp. BoB's offer consisted of a stock swap whereby the Bancorp shareholders would receive .8 shares of BoB common stock for each share of Bancorp common stock (the "BoB Offer"). At the time the board considered and voted on the BoB Offer, the exchange ratio translated into a per-share value of $ 17.30 for Bancorp's [*5] shareholders. Goldman Sachs made a presentation to the Bancorp Board, stating that the price to be received by the Bancorp shareholders was fair. Subsequently, the board voted on and approved the BoB Offer by a vote of 8 to 6 (including 5 abstentions). Shortly, thereafter, the board voted again, this time approving the BoB Offer by a vote of 13 to 0 (excluding one abstention).

On March 4, 1993, the Bancorp stockholders approved the Merger with 7,750,253 shareholders voting yes, 1,389,272 voting no, and 2,816,443 abstaining or not voting. Plaintiff moved for a preliminary injunction on May 5, 1993. I denied that motion on May 25, 1993. See *Arnold v. Society For Savings Bancorp, 1993 Del. Ch. LEXIS 85*, Del. Ch., C.A. No. 12883, Chandler, V.C. (May 25, 1993) ("Arnold I"). The Merger was consummated on July 9, 1993.

That same day, plaintiff filed this motion for partial summary judgment. Plaintiff alleges that (i) Defendants breached their duty of candor by failing to disclose material information to the shareholders; and (ii) Defendants violated their duties under *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc., Del. Supr., 506 A.2d 173 (1986)*. Defendants claim that, [*6] contrary to plaintiff's assertion, they are entitled to summary judgment on the claims asserted by plaintiff and argue, additionally, that as to BoB I should dismiss this action because this Court does not have personal jurisdiction. I will address each of these arguments in turn.

II. PERSONAL JURISDICTION

BoB claims plaintiff's action against it should be dismissed for lack of personal jurisdiction. BoB asserts that prior "factual findings in Arnold regarding the total absence of any contact between BoB and Delaware . . .

prove that plaintiff cannot establish a prima facie case against BoB on personal jurisdiction." Defendants' Answering Brief at 41.

Plaintiff served BoB under Delaware's long-arm statute, 10 Del. C. § 3104. [HN1] Whether Delaware has personal jurisdiction over a defendant served under *10 Del. C. § 3104* depends upon two factors: (i) whether the complaint provides a statutory basis under § 3104 for asserting personal jurisdiction; and (ii) whether subjecting the defendant to jurisdiction is fair under the Due Process Clause of the United States Constitution. *Hercules Inc. v. Leu Trust and Banking (Bahamas) Ltd., Del. Supr., 611 A.2d 476 (1992)*, [*7] cert. dismissed, *507 U.S. 1025, 123 L. Ed. 2d 463, 113 S. Ct. 1836 (1993)*. According to the United States Supreme Court's rulings in *International Shoe Co. v. Washington, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1985)*, and its progeny, prong two of this test requires me to examine the relationship between the forum, the litigation and the defendant to determine whether a defendant can be subjected "fairly" to this Court's personal jurisdiction. See *Sternberg v. O'Neil, Del. Supr., 550 A.2d 1105, 1120 (1988)*.

Plaintiff contends BoB is subject to personal jurisdiction under § 3104(c)(1). *10 Del. C. § 3104(c)(1)* provides that [HN2] a court may exercise personal jurisdiction over any non-resident who "transacts any business or performs any character of work or service in [Delaware]." Plaintiff asserts that BoB transacted business in Delaware for the purposes of § 3104 when it agreed to merge its subsidiary, BBC, into Bancorp by means of Delaware law. Specifically, plaintiff argues that BoB availed itself of Delaware law because the Merger could not have been completed but for *8 Del. C. § 252*. Plaintiff contends that BoB structured [*8] the transaction such that Bancorp, a Delaware corporation, would be the surviving entity. As a result, plaintiff asserts, BoB transacted business within the state of Delaware and is thus subject to the Delaware Courts' personal jurisdiction.

Based on the following, I find the relationship between BoB, BBC's merger into a Delaware corporation and plaintiff's cause of action is sufficient to subject BoB to this Court's personal jurisdiction.

BoB is a Massachusetts corporation. BoB voluntarily merged its subsidiary into a Delaware corporation by virtue of *8 Del. C. § 252*, and it chose to designate the Delaware corporation, Bancorp, as the surviving entity. I find that these actions constitute a transaction of business under § 3104(c)(1). [HN3] Section 3104 is a "single act" statute such that one act may be enough to constitute "transacting business" under § 3104. *Mid-Atlantic Machine v. Chesapeake Shipbldg., Del. Super., 492 A.2d 250 (1985)*. As such, Delaware courts have previously found that the act of forming a Delaware subsidiary constitutes a transaction of business in Delaware for the purposes of § 3104. See, e.g., Red Sail Easter Limited Partners, [*9] *L.P. v. Radio City Music Hall Productions, Inc., 1991 Del. Ch. LEXIS 113*, Del. Ch., C.A. No. 12306, Allen C. (July 10, 1991); *Rabkin v. Philip A. Hunt Chemical Corp., Del. Ch., 547 A.2d 963 (1986)*. And, in the Supreme Court's recent discussion of personal jurisdiction in Sternberg, the Court found that "the difference between creating a wholly owned subsidiary in Delaware and purchasing a Delaware subsidiary is a distinction without significance," when the subsidiary is not thereafter reincorporated in another state. *Sternberg, 550 A.2d at 1121*. Although in that case the parent owned and operated a Delaware subsidiary for more than thirty years, and here BoB has owned Bancorp for less than one year, for the purposes of § 3104, the time period of ownership is irrelevant. It is the single act of merging into a Delaware corporation and voluntarily opting not to reincorporate that entity in another state that constitutes a transaction of business within the meaning of § 3104. As a result, I find that BoB's voluntary merger of its subsidiary into a Delaware corporation constitutes a transaction of business under § 3104.

BoB, however, contends [*10] that my prior findings in Arnold I preclude plaintiff from establishing a specific causal nexus between itself and Delaware. Specifically, BoB points to my findings in Arnold I that (i)BoB is a Massachusetts corporation that does no business in Delaware, (ii)BoB's holding company that merged into Bancorp is not a Delaware corporation, (iii)BoB did not negotiate, execute or perform any of the challenged transactions in this case in Delaware and (iv)BoB did not transact business in Delaware simply by agreeing to the Merger.

The findings in Arnold I pointed to by BoB relate to whether Defendant was subject to *8 Del. C. § 371*. These findings are inapposite here. "Transacting business" under § 371 means something different than doing so under § 3104. Under § 371, transacting business has a much broader meaning than under § 3104. Section 371 intends to encompass a course or practice of carrying on business whereas § 3104 is a "single act" statute. See e.g., *Mid-Atlantic Mach. v. Chesapeake Shipbldg., Del. Super., 492 A.2d 250 (1985)* (holding that the "transaction of business" language in Del. C. § 382 (the companion section to § 371) should [*11] be construed differently than the same language in § 3104). As a result, my findings in regard to whether BoB transacted business within Delaware under § 371 do not control whether BoB transacted business within Delaware for the purposes of this Court asserting personal jurisdiction.

I turn now to plaintiff's complaint. Plaintiff's complaint alleges that certain information provided Bancorp's

shareholders in connection with the Merger contained material omissions. It can be fairly said, then, that the events surrounding and encompassing the Merger form the basis of plaintiff's complaint. BoB argues, however, that there is no causal nexus between plaintiff's cause of action and BoB's ownership of a Delaware subsidiary, because BoB did not own the subsidiary until after plaintiff's cause of action accrued. n1 As a result, BoB asserts, it did not have a relationship with Delaware when the complained of events occurred. Plaintiff's cause of action did indeed occur prior to the technical consummation of the Merger in July 1993. It arises from the dissemination of information to the Bancorp stockholders that was intended to solicit the stockholders' approval of the Merger. Defendants' time [*12] distinction, however, is irrelevant, because the alleged omission of material statements is inextricably related to the actual consummation of the Merger in July. Indeed, the Merger could not have been effected and BoB could not own Bancorp but for the approval of the Bancorp stockholders. As a result, there is a causal nexus between plaintiff's cause of action and BoB's ownership of Bancorp, notwithstanding the fact that BoB did not technically own Bancorp until after plaintiff's cause of action accrued.

n1 BoB argues that it did not own the subsidiary until July, 1993, whereas the events complained of by plaintiff occurred prior to that time.

Because I find that BoB's act of merging into a Delaware corporation constitutes a transaction of business for purposes of § 3104 and because I find that plaintiff's complaint is inextricably related to this merger, I find that plaintiff's complaint provides a statutory basis under § 3104 for asserting personal jurisdiction.

In addition, I find that subjecting BoB to this Court's [*13] jurisdiction is fair under the Due Process clause of the United States Constitution. BoB's activities in regard to the operation of Bancorp are "shielded by the benefits and protection of [Delaware's] laws." BoB knew at the time it agreed to merge its subsidiary into Bancorp and designated Bancorp the surviving entity, that Bancorp was incorporated under Delaware law. Our Supreme Court has previously noted that "the decision to reincorporate or not to reincorporate in a particular jurisdiction is a deliberate one. The majority stockholders in a parent corporation can vote to change the state of incorporation of the parent, or of a subsidiary anytime there is a preference to be governed by the laws of another jurisdiction." *Sternberg, 550 A.2d at 1121.* n2 Here, BoB made a deliberate decision to designate Bancorp, a Delaware corporation, the surviving entity after it merged with BBC. Because of this designation, BoB's operation of Bancorp will benefit from the protections of Delaware law. Thus, BoB purposefully availed itself of the benefits and protections of the laws of the State of Delaware for financial gain in activities related to the cause of action [*14] [here]. Therein lies the 'minimum contact' sufficient to sustain the jurisdiction of Delaware's courts over [BoB]." *Papendick v. Bosch, Del. Supr., 410 A.2d 148, 152 (1979).*

n2 In Sternberg, the Supreme Court noted that the defendant's knowledge that its target of acquisition was a Delaware corporation and its failure to reincorporate that target in another state is an important factor in determining whether defendant intentionally established minimum contacts in Delaware. *Id. 550 A.2d at 1121-22.*

### III. SUMMARY JUDGMENT MOTIONS

I turn now to plaintiff's summary judgment motions. [HN4] To prevail on a summary judgment motion, the moving party must establish that there is no genuine issue as to any material fact presented to the Court. Chancery Court Rule 56(c); *Gilbert v. El Paso Co., Del. Supr., 575 A.2d 1131 (1990).* Reasonable factual inferences will be drawn against the nonmoving party only if they are supported by evidence "as opposed to mere assertions or allegations." [*15] *In re Sea-Land Corp. Shareholders Lit., Del. Ch., 642 A.2d 792, 799 (Cons.), Jacobs, V.C., (Mar. 26, 1993).* There being no issues of material fact, plaintiff's claims are appropriate for summary judgment resolution.

A. Duty Of Candor

Plaintiff maintains that Defendants breached their fiduciary duty of candor by failing to disclose material facts to the Bancorp shareholders in connection with the Merger. Specifically, plaintiff asserts that Defendants' failure (i) to disclose the facts about the auction bids for FAC, (ii) to disclose the difference in consideration offered in the Proposed Goldman Transaction as compared to that offered in the Merger, (iii) to disclose the manner and conduct of negotiations with BoB, and (iv) to correctly disclose management's projections, amounted to a breach of Defendants' duty of candor. In addition, plaintiff asserts that BoB is liable for the Bancorp Board's alleged disclosure violations because BoB played a significant role in the preparation of those disclosure materials.

Defendants, on the other hand, assert that they did not violate any of their fiduciary duties because the information plaintiff alleges Defendants failed [*16] to disclose is not material. Moreover, Defendants allege that plaintiff is bound by my ruling in Arnold I because

plaintiff has presented no new facts or compelling legal arguments.

This Court has previously stated that it refuses to reconsider an issue it has already decided on a preliminary injunction motion when the moving party offers no new evidence or legal arguments that would persuade the Court that its prior holding was inaccurate. *Siegman v. Columbia Pictures Entertainment, Inc., 1993 Del. Ch. LEXIS 1*, Del. Ch., C.A. No. 11152, Hartnett, V.C., slip op. at 8 (Jan. 12, 1993). Here, plaintiff has not proffered any new evidence or legal arguments of any significance. However, it has presented some additional facts and, as such, I will reconsider my prior position as stated in Arnold I and fully treat plaintiff's arguments.

[HN5] Under Delaware law, one of a director's fiduciary duties in regard to a merger transaction is to disclose the material facts regarding that transaction to the shareholders. *Rosenblatt v. Getty Oil Co., Del. Supr., 493 A.2d 929 (1985)*. "An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider [*17] it important in deciding how to vote. . . . [This standard] contemplate[s] . . . a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder." *TSC Industries, Inc. v. Northway, Inc., S.Ct., 426 U.S. 438, 449, 48 L. Ed. 2d 757, 96 S. Ct. 2126 (1976)*. Thus, I must determine if the reasonable shareholder would view that Defendants' alleged omission of certain facts significantly altered the "total mix" of information made available to her or him.

1. FAC Bids

Plaintiff first contends that the facts about the bids submitted for FAC should have been disclosed to the Bancorp shareholders. Plaintiff asserts that these bids (and the facts surrounding them) were reliable, important and non-speculative pieces of information the Bancorp shareholders were entitled to know. Defendants, on the other hand, argue that the omitted facts concerning the FAC bids were not material. They assert that, contrary to plaintiff's belief, the bids for FAC were speculative and contingent upon the occurrence of other events and as such were not material.

Plaintiff stresses that I must consider the [*18] facts surrounding the bids for FAC. According to plaintiff, I erroneously termed the FAC bids "hypothetical speculations of what the value of FAC might be" in Arnold I, rather than facts that established the market value of FAC. Plaintiff stresses that the bids submitted for FAC were not contingent or speculative in any way.

Plaintiff misses the point. It is true that several companies submitted bids for FAC, one of which was valued at approximately $ 275 million. The bids for FAC were indeed submitted and were genuine offers to purchase FAC. However, these circumstances do not mean that FAC could be or was intended to be sold, in a stand-alone transaction, to the highest bidder. On the contrary, the record shows that the FAC bids were solicited as one part of the Proposed Goldman Transaction. FAC's sale was but one part of this complex transaction that included the sale of other Bancorp assets, the creation of a stub entity and the sale of Bancorp's deposit base. As a result, if any part of the Proposed Goldman Transaction was contingent or speculative in any way, the sale of FAC must have been contingent, too, because the sale of FAC was but a component of a larger transaction, [*19] the Proposed Goldman Transaction.

More importantly, the fact that several companies submitted bids for FAC, one of which was valued at $ 275 million, is immaterial. According to the Supreme Court of the United States, to determine materiality, I must consider whether, under all the circumstances, a fact would assume actual significance in the deliberations of a reasonable shareholder. Here, the circumstances surrounding the bidding on FAC are important. First, regardless of the fact that several companies did bid on FAC, the sale of FAC was not an event that could occur under any scenario. It is apparent that the sale of FAC was an event that could occur only under certain circumstances (e.g., with regulatory approval, and/or concurrent with the sale of Bancorp). Moreover, as contemplated by Goldman Sachs, the solicitor of the FAC bids, the sale of FAC was but one component in a complicated transaction. Goldman did not solicit the FAC bids with the intention of selling FAC in an isolated transaction; rather, Goldman solicited the bids for FAC as part of a complicated transaction involving not only the sale of FAC but also the sale of other Bancorp assets and the creation of [*20] a stub entity. To consider the receipt of the FAC bids as an isolated event and completely ignore these other circumstances, as plaintiff suggests I should do, would result in an overemphasis on the significance of the FAC bids. More importantly, it would run contrary to the Supreme Court's admonition that a court must determine materiality in light of all the surrounding circumstances.

Plaintiff also suggests that the circumstances surrounding the bids submitted for FAC are material because they are relevant to the fairness of price received by the Bancorp shareholders in the Merger. In support of its materiality argument, plaintiff cites *Burlington Indus. v. Edelman, M.D.N.C., 666 F. Supp. 799, 816 (1987)*, for the proposition that "the Court cannot assess the question of what information is material in a vacuum." But, when plaintiff asks me to find that the bids submitted for FAC are material because they go to fairness of price, plaintiff

is asking me to do exactly what it says I should not: assess the FAC bids in a vacuum. As stated above, the bids submitted for FAC were highly speculative and contingent. As a result, they in no way established a [*21] fair value of Bancorp. In addition, the bids submitted for FAC were just that; they were bids for FAC, not Bancorp. No reasonable shareholder could extrapolate the value of a parent company from the value of one of its subsidiaries. The shareholder would have no way of knowing if other subsidiaries owned by the parent had a negative value and the extent of that negative value, if any. As a result, I find that the bids submitted for FAC are not relevant to the fairness of price received by the Bancorp shareholders in the Merger and are therefore not material.

2. Consideration Offered In The Proposed Goldman Transaction

Plaintiff also asserts that Defendants' failure to disclose the difference in consideration offered in the Proposed Goldman Transaction as compared to that offered in the Merger was a violation of their duty of candor. Plaintiff maintains that the alleged value of the Proposed Goldman Transaction was material because it was relevant to a reasonable shareholder's assessment of the adequacy of the consideration to be received in the Merger. Plaintiff specifically asserts that the "valuation" of the Proposed Goldman Transaction was material because it was generated shortly [*22] before the Bancorp Board voted on the Merger, prepared by a highly qualified organization, intended to establish a valuation of Bancorp, highly relevant and unavailable to the Bancorp shareholders from another source.

Again, plaintiff's arguments miss the mark. I find, much like the FAC bids, that the alleged value of the consideration offered in the Proposed Goldman Transaction was too speculative to significantly alter the total mix of information considered by the Bancorp shareholders. Plaintiff is adamant that the value of the Proposed Goldman Transaction was fixed at $ 19.26 per share. However, no where do the facts establish that the value of the Proposed Goldman Transaction was fixed at this amount. On the contrary, uncontroverted deposition testimony shows that the value of the Proposed Goldman Transaction could not be designated with certainty because of the contingencies involved in the transaction. For example, Rudolph Arnold testified that the Proposed Goldman Transaction was "somewhat arbitrary . . . The set of numbers was very imprecise in terms of what actually would be obtained . . . There's a great deal of uncertainty whether these values would actually be recovered." [*23] And, David Chase, Bancorp's largest shareholder, testified that the value the Bancorp shareholders might have received in the Proposed Goldman Transaction could have been several dollars less than $ 19.26 per share, if the value of the stub turned out to be negative. n3 Thus, the undisputed evidence shows that because of the contingencies involved in the Proposed Goldman Transaction and the uncertainty of the value of the stub, the value of the Proposed Goldman Transaction was in no way fixed at $ 19.26 per share or any other amount. Indeed, the value of the Proposed Goldman Transaction was so uncertain that it could in no way significantly alter the total mix of information considered by the Bancorp shareholders.

> n3 In the $ 19.26 per share valuation, the stub was valued at about $ 3.00 per share. If the stub, in fact, had a negative value, the value the Bancorp shareholders would have received in the Proposed Goldman Transaction could have been less than $ 15.00 per share.

3. The Manner And Conduct Of Negotiations [*24] With BoB

Plaintiff argues that Defendants breached their duty of candor by failing to disclose the manner and conduct of their negotiations with BoB. Plaintiff alleges that the Bancorp shareholders should have been made aware of the facts that (i) Bancorp's CEO negotiated the sale of Bancorp on his own, (ii) the maximum consideration initially proposed by Bancorp was based on what Bancorp's CEO thought was a fair price for Bancorp, (iii) the Bancorp Board's so-called unanimous approval of the Merger included abstentions; and (iv) Bancorp attempted to renegotiate the terms of the Merger with BoB.

Plaintiff's arguments are wrong as a matter of law. First, [HN6] under Delaware law, shareholders are not entitled to a "play-by-play" description of merger negotiations. *TCG Sec., Inc. v. Southern Union Co., 1990 Del. Ch. LEXIS 12*, Del. Ch., C.A. No. 11282, Chandler, V.C., slip op. at 17 (Jan. 31, 1990). The proxy statement fully discloses the date at which formal negotiations were entered into by the Bancorp Board of Directors. Second, according to *Cinerama, Inc. v. Technicolor, Inc., 1991 Del. Ch. LEXIS 105*, Del. Ch., C.A. No. 8358, Allen, C., slip op. at 56 (June 21, 1991), rev'd in part, *Cede & Co. v. Technicolor, Del. Supr.,* [*25] *634 A.2d 345*, Horsey, J. (Oct. 22, 1993), failure to disclose the initial price named by a seller acting without the benefit of an investment advisor is immaterial. As a result, the CEO of Bancorp's initial proposal of what he believed to be a fair price did not need to be disclosed. Third, Bancorp's characterization of the board of directors' approval of the Merger as unanimous is not misleading as a matter of law. The vote was unanimous with one director abstaining; according to *Weinberger v. UOP, Inc., Del. Ch., 426 A.2d 1333, 1353 (1981)*, rev'd on other grounds, *Del.*

*Supr.*, 457 A.2d 701 (1983), [HN7] a proxy statement is not misleading when a vote, reported as unanimous, contains abstentions. Finally, the fact that Bancorp attempted to renegotiate with BoB shows only that Bancorp was attempting to get the best deal for its shareholders. It does not evidence that the original agreement reached by BoB and Bancorp was unfair or inadequate in any way. Based on the foregoing, I find that plaintiff's allegations that Defendants breached their duty of candor in these regards are meritless.

### 4. Management's Projections

Plaintiff [*26] argues that Defendants breached their duty of candor by misleading the Bancorp shareholders into believing that management's projections, as stated in the proxy statement, were inaccurate, speculative, and unreliable. Plaintiff asserts that the Bancorp shareholders should have been made aware of the fact Bancorp's CEO told the Bancorp Board that it could accomplish its projections in its best case scenario, because this would have affected the shareholders' perception of what was a fair price to be received in the Merger. Plaintiff's arguments are without merit and are unsupported by the record.

First, Bancorp's CEO made this statement to support his recommendation that the Merger be approved, not rejected. Moreover, after making the above statement, the CEO went on to say that, "management believes that risks associated with achieving the best case results outweigh the potential of actually attaining those results." See Affidavit of Ronald A. Brown, Jr., Ex. 10. In addition, the proxy statement was distributed close to a year after management made the projections included in the proxy statement. These projections were not updated. As a result, it would have been improper for [*27] the Bancorp shareholders to rely on or place too much weight on the projections. For the foregoing reasons, I find that Defendants did not breach their duty of candor insofar as their representations of management's projections are concerned.

### 5. Liability Of BoB

Because I find that Defendants have not breached their duty of candor with respect to disclosure of the FAC bids, the purported value of the Proposed Goldman Transaction, management's projections and the manner of negotiations with BoB, I need not reach plaintiff's assertion that BoB is liable for the Bancorp Board of Directors alleged disclosure violations.

### 6. Conclusion

In light of the fact that there are no issues of material fact and based on my finding that Defendants have not breached their duty of candor, summary judgment on this claim is granted in favor of Defendants.

### B. Revlon Duties

Plaintiff asserts that Defendants breached their Revlon duties. It claims that according to Revlon, when a Board of Directors decides to sell a company, it has a duty to obtain the highest price possible for its shareholders. Plaintiff alleges that Defendants breached this duty when they agreed to merge Bancorp into BBC. Moreover, [*28] plaintiff asserts that because Defendants committed numerous disclosure violations, the Bancorp shareholders' approval of the Merger could not amount to stockholder ratification of Defendants' Revlon violations. In the alternative, plaintiff submits that the Bancorp stockholders did not ratify Defendants' Revlon violations because such ratification could only occur by unanimous vote.

Defendants, on the other hand, contend that they are entitled to summary judgment on plaintiff's Revlon claim. They argue that Bancorp's Board of Directors was not under any Revlon duties because a break-up of Bancorp was not inevitable. Moreover, Defendants assert, the Bancorp shareholders ratified any Revlon violations the Board may have committed when a majority of fully informed Bancorp shareholders voted to approve the Merger.

Earlier in this opinion, I found that Defendants did not commit any disclosure violations. As a result, the Merger could be approved by a vote of the Bancorp shareholders. *In re Wheelabrator Technologies, Inc.*, 1990 Del. Ch. LEXIS 145, Del. Ch., C.A. No. 11495, Jacobs, V.C., slip op. at 19 (Sept. 6, 1990). Plaintiff argues strenuously, however, that such a ratification could [*29] only occur by a unanimous vote because plaintiff raises allegations of corporate waste. In Arnold I, I declined to reach plaintiff's arguments because I found that plaintiff did not raise any allegations of corporate waste. Not surprisingly, plaintiff offers additional facts and arguments here to show that it did, indeed, raise allegations of corporate waste. In spite of the fact that plaintiff has introduced additional facts and arguments, I am doubtful that it has transformed its claim into one of corporate waste. I need not reach this issue, however, because I find that the enhanced duties implicated under Revlon are clearly inapplicable in this case.

According to Revlon, [HN8] when a break-up of a corporate entity becomes "inevitable", the duty owed by the board of directors of that company changes. No longer does the board have the duty to preserve the corporate entity; instead, it must maximize shareholder value. *Revlon 506 A.2d at 182.* It is important to note, however, that Revlon duties arise only in very specific instances. According to our Supreme Court, there are, generally speaking, only two instances that implicate Revlon duties: [HN9] [*30]

> first . . . when a corporation initiates an active bidding process seeking to sell itself or to effect a business reorganization involving a clear break-up of the company . . . [and second,] where, in response to a bidder's offer, a target abandons its long-term strategy and seeks an alternative transaction involving the breakup of the company.

*Paramount Communications, Inc. v. Time Inc., Del. Supr., 571 A.2d 1140, 1150 (1989).* From this language, it is apparent that Revlon duties do not attach every time a company enters into a combination or acquisition agreement with another company. n4

    n4 For example, our Supreme Court refused to implicate Revlon duties in the merger of Time, Inc. and Warner Communications Inc., two companies engaged in similar businesses.

Bancorp's actions do not fall within the two categories expressly mentioned by our Supreme Court in Paramount where Revlon duties apply. It is clear from the facts presented that Bancorp did not initiate [*31] an active bidding process when it entered into negotiations with BoB. Regardless of who first approached whom regarding the possible merger of BBC and Bancorp, n5 Bancorp did not put itself on the auction block when it began negotiations with BoB in May 1992. True, Bancorp most likely was on the auction block in 1991 when it put itself in play. However, when the Bancorp Board rejected the Proposed Goldman Transaction in 1992 to focus its attention on Bancorp's long-term business and recovery, it immediately removed Bancorp from the auction block and abandoned its consideration of breaking up Bancorp. The Bancorp Board's rejection of the Proposed Goldman Transaction and its deliberate choice to pursue Bancorp's long-term business and recovery options removed it from the Revlon realm of fiduciary duty at that time. *Paramount, 571 A.2d at 1151-52.* And, after the board rejected the Proposed Goldman Transaction, Bancorp's Board did not initiate an active bidding process with BoB, and as such did not implicate itself under Revlon.

    n5 The parties vigorously dispute who first contacted whom regarding the possible merger of BBC and Bancorp. For the purposes of whether Revlon duties are implicated, however, this dispute is meaningless. Revlon duties attach when a corporation initiates an active bidding process. Initiating contact with a prospective buyer, in itself, could hardly be considered initiating an active bidding process. At a minimum, some other facts must be present to show that the corporation is, indeed, placing itself on the auction block.

[*32]

Plaintiff argues, however, that "in selling the company, the Board had one overriding duty under Delaware law: to obtain the highest possible price for the shareholders." Plaintiff's Opening Brief at 45. Plaintiff then goes on to assert that because Bancorp only dealt with one bidder, it was required to "(i) have possessed a body of reliable evidence upon which to judge the adequacy of BoB's bid or ([ii]) have canvassed the market to determine whether greater value could have been obtained" pursuant to *Barkan v. Amsted Indus., Del. Supr., 567 A.2d 1279 (1989).* In Barkan, the Supreme Court opined that Revlon governed "this case and every case in which a fundamental change of corporate control occurs or is contemplated." *Id. at 1286.* Apparently, plaintiff asserts that BBC's merger into Bancorp implicates Revlon duties under Barkan because the BBC-Bancorp transaction involved a change of control. I find here that Revlon duties are not implicated because no change of control has occurred. In Paramount, Chancellor Allen reached a similar result. He stated:

> If the appropriate inquiry is whether a [*33] change in control is contemplated, the answer must be sought in the specific circumstances surrounding the transaction. Surely under some circumstances a stock for stock merger could reflect a transfer of corporate control. That would, for example, plainly be the case here if Warner were a private company. But where, as here, the shares of both constituent corporations are widely held, corporate control can be expected to remain unaffected by a stock for stock merger. . . . Control of both [companies] remain[s] in a large, fluid, changeable and changing market.

Paramount Communications Inc. v. Time Incorporated and Warner Communications Inc., C.A. No. 10866; In re Time Incorporated Shareholder Litigation, Cons. C.A. No. 10670; *Literary Partners, L.P. v. Time Incorporated and Warner Communications Inc., 1989 Del. Ch. LEXIS 77,* *68, C.A. No. 10935, Del. Ch., Allen, C., (July 14,

1989). The Supreme Court expressly affirmed this rationale in *Paramount Communications, Inc. v. Time Inc., Del. Supr., 571 A.2d 1140, 1150 (1989)* ("The Chancellor's findings of fact are supported by the record and his conclusion is correct as a matter of law"). Thus, if control [\*34] of Bancorp remained in a large, fluid market of disaggregated shareholders after the Merger, no change of control occurred and Revlon duties are not implicated.

This is indeed the case here. The Merger was effectuated through a stock swap: each Bancorp share was swapped for eight-tenths of a share of BoB stock. Nothing in the record indicates that the shareholders owning BoB and Bancorp stock were anything other than a fluid, changing market of shareholders. Both companies were publicly owned; neither company had a large controlling block of shares held by one individual or entity. In addition, there is nothing in the Merger's structure that suggests that the continuity of Bancorp's shareholders in the merged entity is threatened. Cf., *QVC Network, Inc. v. Paramount Communications Inc., Del. Ch., 635 A.2d 1245, 1267,* Jacobs, V.C. (Nov. 24, 1993) (where control of merged company will rest in one person and the board does not bargain for "any structural protections that would ensure the continuity of [the] current shareholders (or their successors) in [the] merged enterprise," the shareholders must be afforded the fiduciary protection mandated by Revlon and [\*35] Unocal), aff'd, Del. Supr., *Paramount Comm. Inc. v. QVC Network Inc., 1993 Del. LEXIS 440,* Nos. 427, 1993 and 428, 1993 (Cons.), Veasey, C.J. (Dec. 9, 1993) (ORDER). As a result, the merger of BBC and Bancorp did not alter the corporate control of Bancorp and Revlon duties are not implicated.

Based on the foregoing, I find that the facts here do not implicate Revlon duties, and I therefore grant summary judgment in favor of Defendants on this claim. Because Revlon duties were not implicated, I decline to reach plaintiff's and Defendants' arguments regarding ratification of these duties. For the same reason, I decline to address plaintiff's arguments regarding the no-shop clause and lock-up option in the Merger agreement.

IV. CONCLUSION

For the reasons stated above, I find that this Court has personal jurisdiction over BoB and I decline to dismiss plaintiff's action as to BoB for lack of jurisdiction. In addition, I find that Defendants have not breached their duty of candor and are not subject to any Revlon duties. As a result, I grant summary judgment in favor of Defendants, and against plaintiff, on both of these claims.

IT IS SO ORDERED. [\*36]