# EXHIBIT G

LEXSEE 1998 DEL. CH. LEXIS 79

**LEON G. CAIRNS, GERALD A. CAIRNS and STANLEY K. MABBOTT, Plaintiffs, v. MICHAEL J. GELMON, LEWIS GELMON, CORY H. GELMON, ALVIN D. GELMON and INSTANT VISION, INC., Defendants.**

**Civil Action No. 16062**

**COURT OF CHANCERY OF DELAWARE, NEW CASTLE**

*1998 Del. Ch. LEXIS 79*

**May 1, 1998, Date Submitted**
**May 21, 1998, Date Decided**

**SUBSEQUENT HISTORY:** [*1]
    Released for Publication by the Court June 5, 1998.

**DISPOSITION:**
    Defendant's motions to dismiss denied except with respect to Cory Gelmon.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants filed a motion to dismiss plaintiffs' complaint, which alleged defendants caused plaintiffs to lose their equity in a corporation formed by defendants.

**OVERVIEW:** Plaintiffs filed suit alleging defendants caused plaintiffs to lose their equity in a corporation formed by defendants. The court granted one defendant's motion to dismiss for invalid service of process. The court held that plaintiffs failed to establish that they sent a second notice to that defendant no later than seven days after filing the first notice of suit. However, the court denied the remaining defendants' motion to dismiss plaintiffs' claims. The court held that it had personal jurisdiction over the remaining defendants because they purposely incorporated a business in the forum state. The court held that single act sufficed to constitute the transaction of business in Delaware, under Del. Code. Ann. tit. 10, § 3104(c)(1), and to satisfied the requirements of due process. The court also held that plaintiffs' allegations were sufficient to state a cognizable claim for relief.

**OUTCOME:** The court granted one defendant's motion to dismiss plaintiffs' complaint for invalid service of process. However, the court denied the remaining defen-

dants' motion to dismiss plaintiffs' claims because the court had personal jurisdiction over defendants.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
[HN1] On a motion to dismiss for lack of personal jurisdiction, the plaintiffs have the burden to demonstrate that jurisdiction exists.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*
[HN2] The incorporation of a company in Delaware in furtherance of a fraudulent scheme constitutes a contact sufficient to satisfy the requirements of the due process clause, particularly where the creation of the corporation is an integral part of the actions giving rise to the suit.

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN3] See Del. Code. Ann. tit. 10, § 3104(c)(1).

*Civil Procedure > Pleading & Practice > Service of Process > General Overview*
[HN4] Noncompliance with the statutory requirement that a second notice be sent no later than seven days after

1998 Del. Ch. LEXIS 79, *

the filing of the first notice invalidates service of process under Del. Code. Ann. tit. 10, § 3104.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Civil Procedure > Dismissals > Involuntary Dismissals > Failures to State Claims*
[HN5] The legal standard on a Del. Ch. Ct. R. 12(b)(6) motion to dismiss is that the complaint may not be dismissed unless it appears to a reasonable certainty that the plaintiff would not be entitled to relief under any set of facts which could be proved in support of his claim.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Civil Procedure > Pretrial Judgments > Judgment on the Pleadings*
[HN6] Del. Ch. Ct. R. 12(b)(6) states in part: A defense of failure to state a claim upon which relief can be granted may be made in any pleading permitted, or ordered under Del. Ch. Ct. R. 7(a), or by motion for judgment on the pleadings, or at the trial on the merits.

**COUNSEL:** Andre G. Bouchard and Joel Friedlander, Esquires, of BOUCHARD, FRIEDLANDER & MALONEYHUSS, Wilmington, Delaware; and Dale C. Lysak, Esquire of The DZIVI LAW FIRM, San Francisco, California; Attorneys for Plaintiffs.

Peter L. Tracey, Esquire, of POTTER, ANDERSON & CORROON, LLP, Wilmington, Delaware; and Debra A. Harrison, Esquire of KATTEN, MUCHIN & ZAVIS, Washington, DC; Attorneys for Defendants.

**JUDGES:** JACOBS, VICE CHANCELLOR.

**OPINIONBY:** JACOBS

**OPINION:**

MEMORANDUM OPINION

JACOBS, VICE CHANCELLOR

On November 26, 1997, Leon G. Cairns, Gerald A. Cairns, and Stanley K. Mabbott (the "plaintiffs" or the "Cairns Group") filed this action against Michael J. Gelmon, Lewis Gelmon, Cory Gelmon, and Alvin D. Gelmon (the "Individual defendants" or the "Gelmon Group"). The plaintiffs claim that the Gelmon Group wrongfully caused the Cairns Group to lose their equity in the corporate defendant Instant Vision, Inc. ("Instant Vision"), a Delaware corporation formed by the Gelmon Group.

The Complaint alleges five Counts: (i) breach of contract; (ii) unjust enrichment; [*2] (iii) breach of fiduciary duties; (iv) fraud; and (v) violation of *8 Del. C. § 242*. n1 The Gelmon Group has moved to dismiss the Complaint on the grounds of lack of personal jurisdiction and for failure to state a claim upon which relief can be granted. Defendant Cory Gelmon has moved separately for a dismissal as to himself on the ground of ineffective service of process, and Instant Vision has moved to dismiss as to it for failure to state a claim upon which relief can be granted. This is the Opinion of the Court on those motions, which are denied except with respect to Cory Gelmon.

n1 Section 242 is the section of the Delaware General Corporation Law that governs amendments to a certificate of incorporation.

I. FACTS

The Cairns Group obtained from Morrison International, Inc. ("Morrison") an exclusive license to develop in Canada a product known as "Instant Eyeglasses." Morrison then invited the Cairns Group to bid for the right to license the Instant Eyeglasses technology in the United States. [*3] To raise the necessary capital, the Cairns Group formed a joint venture with the Gelmon Group and introduced the Gelmon Group to Morrison. The Cairns Group and the Gelmon Group then entered into two letter agreements, the essential elements of which were that (i) the parties would form a corporation as a vehicle to acquire the United States license from Morrison, (ii) the parties would share equally in the equity of that corporation, and (iii) each group would have one director on the corporation's board of directors.

On January 28, 1997, the Gelmon Group incorporated Instant Vision. It is claimed that contrary to their agreements, the Gelmon Group issued all of the shares to themselves and placed four of its members -- but only one member of the Cairns Group -- on Instant Vision's board of directors. On June 25, 1997, the Gelmon Group announced that it exclusively would handle the license transaction with Morrison, and also declared unilaterally its entitlement to a 10% finder's fee. The Gelmon Group also caused Instant Vision to amend its Certificate of Incorporation to increase its authorized common stock from 3000 to 10,000,000 shares, even though Leon Cairns, the director who [*4] represented the Cairns Group, was never informed of the charter amendment in advance of its approval. This action followed.

After commencing this action, the plaintiffs served each member of the Gelmon Group under *10 Del. C. § 3104*, Delaware's long-arm statute, and *10 Del. C. §*

1998 Del. Ch. LEXIS 79, *

*3114*, Delaware's director-consent-to-service statute. The record reflects that no member of the Gelmon Group has ever been physically present, or ever conducted any business or performed any work relevant to the plaintiffs' claims in Delaware.

## II. THE PARTIES' CONTENTIONS

The defendants advance several grounds for dismissal. First, they contend that this Court lacks personal jurisdiction over all members of the Gelmon Group under § 3104, because (i) none of those defendants had the requisite minimum contacts with Delaware, (ii) § 3114 does not support personal jurisdiction over the Gelmon Group, and (iii) service of process was never validly effected upon Cory Gelmon. The defendants also urge that the Complaint should be dismissed as to Instant Vision, because no relief is sought against it and because the Complaint does not allege that any conduct of Instant Vision caused harm to the [*5] plaintiffs. Finally, the defendants argue that because the plaintiffs are not shareholders of Instant Vision, they have no standing to challenge the certificate amendment that increased the number of Instant Vision's authorized shares.

In response, the plaintiffs contend that Cory Gelmon was properly served and that the act of incorporating Instant Vision in Delaware is a sufficient statutory and constitutional basis to support in personam jurisdiction over the Gelmon Group. The plaintiffs further claim that the Gelmon Group has waived its right to argue that Counts I through V fail to state a claim upon which relief can be granted, because the Gelmon Group's opening brief does not specify in what respect those Counts fail to state a claim. The plaintiffs contend that Instant Vision is a proper defendant, because its presence is necessary to afford the plaintiffs a full and complete remedy. Finally, the plaintiffs urge that they have standing to challenge the amendment to the certificate of incorporation because they are equitable (as opposed to record) shareholders, and because Mr. Cairns was harmed as a result of being denied full and equal access to the certificate amendment-related [*6] information that had been furnished to Instant Vision's remaining directors.

## III. ANALYSIS

On these motions, the Court must decide five issues. Two of those issues are jurisdictional, namely, (i) whether the Gelmon Group's sole act of incorporating Instant Vision in Delaware, without more, is enough to sustain in personam jurisdiction over the Gelmon Group in Delaware, and (ii) whether Cory Gelmon was properly served. The remaining three issues relate to the legal sufficiency of the various Counts in the Complaint: specifically, (i) whether the Gelmon Group has waived its right to assert the defense that Counts I through V fail to state a claim upon which relief can be granted; (ii)

whether Instant Vision is a proper defendant; and (iii) whether the plaintiffs have standing to challenge the amendment to the certificate of incorporation.

### A. The Personal Jurisdictional Issues

#### 1. Personal Jurisdiction Over the Gelmon Group

In determining whether it has personal jurisdiction over the Gelmon Group, this Court must employ a two-step inquiry: (i) whether personal jurisdiction has been established under the Long-Ann Statute, and (ii) if so, whether the assertion of personal [*7] jurisdiction in this specific instance would violate traditional notions of Due Process. n2 [HN1] On a motion to dismiss for lack of personal jurisdiction, the plaintiffs have the burden to demonstrate that jurisdiction exists. n3

n2 *LaNuova D & B, S.P.A. v. Bowe Co., Del. Supr., 513 A.2d 764, 768 (1986).*

n3 *Hart Holding Co. v Drexel Burnham Lambert Inc., Del. Ch., 593 A.2d 535, 539 (1991).*

The plaintiffs rely on Papendick v. Bosch n4 as on-point authority for their position that a single act of incorporation in Delaware, if done as part of a wrongful scheme, will suffice to confer in personam jurisdiction over the nonresident defendants responsible for the scheme. n5 In Papendick, the plaintiff sued the defendant for breach of a finder's fee agreement. The only contact between the nonresident defendant and the Delaware forum was that the defendant had formed a Delaware subsidiary to acquire stock in a third company. The Delaware Supreme Court determined that the defendants' purposeful availment [*8] "of the benefits and protections of the State of Delaware for financial gain" through the act of incorporating the Delaware subsidiary satisfied the "minimum contacts" requirement of International Shoe Co. v. Washington. n6

n4 *Del. Supr., 410 A.2d 148 (1979),* cert. denied, *446 U.S. 909, 100 S. Ct. 1837, 64 L. Ed. 2d 262 (1980).*

n5 See *Newspan, Inc. v. Hearthstone Funding Corp., 1994 Del. Ch. LEXIS 52,* Del. Ch., C.A. No. 13304, Allen, C. (May 10, 1994) ("It is well accepted that [HN2] the incorporation of a company in Delaware in furtherance of a fraudulent scheme constitutes a contact with this jurisdiction sufficient to satisfy the requirements of the Due Process Clause, particularly where the

creation of the corporation is an integral part of the actions giving rise to the suit.").

n6 *326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945).*

The plaintiffs claim that here, as in Papendick, the act of incorporating Instant Vision in Delaware was an integral part of a fraudulent scheme, and is therefore sufficient to sustain personal jurisdiction under § 3114(c)(1). n7 Indeed, [*9] plaintiffs argue, the present facts are even more compelling than Papendick, because here the very act of incorporation is claimed to have caused the plaintiffs' injury.

n7 [HN3] Sub-section (c)(1) provides: "As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent: (1) Transacts any business or performs any character of work or service in this State." It is claimed that the incorporation of Instant Vision falls within the scope of this provision.

The defendants contend that Papendick is not controlling because in that case, service of process was accomplished by writ of foreign attachment under *10 Del. C. § 3507*, whereas in this case, service was accomplished under § 3104. The defendants fail to explain why this distinction is significant; moreover, their assertion that the plaintiffs have failed to make an adequate evidentiary [*10] showing to satisfy the requirements of § 3104 and the Due Process clause is at best conclusory. The defendants rely upon the identical recital(s), in affidavits filed by each member of the Gelmon Group, denying that "they have ... transacted business or performed any work or services from which plaintiffs' alleged causes of action against me arises in the State of Delaware, either in my individual capacity, or as a Director or officer of Instant Vision, Inc." The defendants argue that because the plaintiffs have failed to rebut that affidavit testimony, they have failed to carry their burden of proof.

I cannot agree. Given the defendants' failure to distinguish Papendick, and because the incorporation of Instant Vision in Delaware is central to their claims of wrongdoing, I conclude that in these specific circumstances that single act suffices to constitute the "transaction of business" in Delaware under *10 Del. C. § 3104(c)(1)* and to satisfy the requirements of Due Process. n8 The defendant's contrary affidavits recite legal conclusions that are legally incorrect. The Court there-

fore rejects the Gelmon Group's motion to dismiss for lack of personal jurisdiction.

n8 *Red Sail Easter Limited Partnership, L.P. v. Radio City Hall Productions, Inc., 1991 Del. Ch. LEXIS 113,* Del. Ch., C.A. No. 12036, Allen, C. (July 10, 1991).

[*11]

2. Sufficiency of Process on Cory Gelmon

The defendants next argue that service of process was never validly effected on Cory Gelmon. The plaintiffs respond that process was sent by registered mail to Cory Gelmon's mailing address as set forth on the original certificate of incorporation, n9 and that such process was returned as undelivered on February 3, 1998. Accordingly, the plaintiffs conclude, service of process on Cory Gelmon was effective under § 3104(d) and (g).

n9 Cory Gelmon was one of the Incorporators of Instant Vision.

The defendants respond that although the plaintiffs filed proof of nonreceipt, § 3104(d) then required that they send Cory Gelmon a second registered notice by certified mail. Because the plaintiffs have not offered proof that they did this, defendants continue to argue that service of process on Cory Gelmon was ineffective.

The Court finds that the plaintiffs have not carried their burden on this issue, as they have not established that they sent a second registered [*12] notice to Cory Gelmon. Our Supreme Court has held that [HN4] noncompliance with that statutory requirement (that a second notice be sent no later than seven days after the filing of the first notice) invalidates service of process under § 3104. n10 Because the plaintiffs have not established that they satisfied this requirement, the Complaint must be dismissed as against Cory Gelmon, unless the plaintiffs are able to show (by way of a supplemental affidavit) that a timely second registered notice was sent.

n10 See *Greenly v. Davis, Del. Supr., 486 A.2d 669, 671 (1984).*

B. The Rule 12(b)(6) Issues

The defendants also contend that all Counts of the Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim. [HN5] The legal standard on a

1998 Del. Ch. LEXIS 79, *

Rule 12(b)(6) motion to dismiss is that "the complaint may not be dismissed unless it appears to a reasonable certainty that the plaintiff would not be entitled to relief under any set of facts which could be proved in support of his claim." n11

n11 *Weinberger v. UOP, Inc., Del. Ch., 409 A.2d 1262, 1263-64 (1979).*

[*13]

1. The Waiver Argument

The plaintiffs respond that the defendants have waived their right to argue that those Counts should be dismissed under Rule 12(b)(6), because their opening brief contains no argument as to how Counts I-IV inclusive fail to state a claim.

The plaintiffs are mistaken. Court of Chancery Rule 12(h)(2) states that "[HN6] A defense of failure to state a claim upon which relief can be granted ... may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits." Because Rule 12(h)(2) entitles the Gelmon Group to advance Rule 12(b)(6) arguments up to and including the trial, they have not waived their right to raise a 12(b)(6) defense as to Counts I through IV, inclusive.

2. The Claims Against Instant Vision

The defendants argue that Instant Vision should be dismissed: (i) as to Count I (breach of contract) because Instant Vision was not a party to the alleged contract(s) between the plaintiffs and the Gelmon Group; (ii) as to Count II (unjust enrichment) because the Complaint does not allege that Instant Vision was unjustly enriched; (iii) as to Count III (breach of fiduciary duty) because [*14] the Complaint does not allege that Instant Vision owed any fiduciary duties to the plaintiffs; (iv) as to Count IV (fraud) because the Complaint does not allege that Instant Vision misrepresented or failed to disclose any material fact to the plaintiffs; and (v) as to Count V (violation of § 242) because the Complaint fails to allege any action or inaction by Instant Vision that resulted in harm to the plaintiffs.

The plaintiffs respond that Instant Vision was properly joined as a defendant solely in order to ensure that full and complete relief can be granted. The relief that plaintiffs seek here is to recover 50% of Instant Vision's shares, dividends, and profits now held by the Gelmon Group. That being the case, the plaintiffs contend, Instant Vision must be made a defendant if only because they claim that certain stock, dividends, and profits were dis-

tributed to one member of the Gelmon Group, and were then returned to Instant Vision. To recover those monies from Instant Vision, plaintiffs argue, that entity must be joined as a party.

The plaintiffs also argue that Instant Vision is a proper defendant with respect to their claim that the defendants incorporated Instant Vision, [*15] and then wrongfully took control of its board of directors and caused to be issued to themselves all of its stock. The plaintiffs contend that because it may be impossible to distinguish the acts of Instant Vision from those of the Gelmon Group which controlled the corporation, any relief against the Individual defendants may have to run against Instant Vision as well.

The defendants respond that Instant Vision need not be made a party to afford the plaintiffs the specific relief they seek because the Complaint only seeks 50% of the stock held by the Gelmon Group. That argument incorrectly assumes that the only form of relief sought is a constructive trust. It ignores the fact that the Complaint also requests such other form of relief that the Court deems appropriate. At the oral argument on the pending motions, the defendants' counsel conceded that under at least one scenario relief against the corporation might be justified, viz., if the Court were to direct Instant Vision to recognize the plaintiffs as record owners of 50% of its stock. Because the Court finds that Instant Vision is a proper party, the defendants' motion to dismiss the Complaint as to it is denied.

3. [*16] The Standing Argument

The defendants argue that the Court must dismiss Count V because the plaintiffs are not record shareholders of Instant Vision, and therefore lack standing under *8 Del. C. § 242* to challenge the amendment to Instant Vision's corporate charter that increased its authorized stock from 3000 to 10,000,000 shares.

The plaintiffs counter that they have standing to challenge the charter amendment, because Mr. Cairns was a director of Instant Vision at the time the amendment was adopted, yet was not given advance notice of the proposed amendment, or any opportunity to vote on it. Plaintiffs also argue that they have standing by virtue of the Cairns Group's claimed equitable interest in the disputed shares of Instant Vision. For that reason, the plaintiffs argue, they should have the same standing as would any record holder of the corporation's shares, because had the Gelmon Group honored their agreement, the plaintiffs would be the record owners of one half of Instant Vision's equity. n12

n12 See *Shaev v. Wyly, 1998 Del. Ch. LEXIS 2*, Del. Ch., C.A. No 15559, Steele, V.C. (Jan. 6, 1998) (former shareholder of parent has standing to bring derivative action on behalf of subsidiary after spin-off); *International Equity Capital Growth Fund, L.P. v. Clegg, 1997 Del. Ch. LEXIS 59*, Del. Ch., C.A. No. 14995, Allen, C. (Apr. 21, 1997) (discussing exception to standing requirement for plaintiffs with a "substantial and continuing equity investment.").

[*17]

Defendants contend that Mr. Cairns does not have standing, even as a director, because the plaintiffs have not alleged how (if at all) he was harmed. Moreover, the defendants argue, if the plaintiffs have an equitable claim to shares held by the Gelmon Group, that claim is derivative yet Count V of the Complaint is not brought derivatively. Therefore, the defendants urge that Count V of the Complaint must be dismissed for failure to state a claim upon which relief can be granted.

I conclude that Count V states a claim upon which relief can be granted. First, there is no merit to the argument that the plaintiffs' claim as equitable owners of stock is derivative, because the alleged harm runs to the plaintiffs directly, not to the corporation. Second, Count V claims that Mr. Cairns was a director of Instant Vision at the time the amendment to the corporate charter was considered and voted upon, yet he was intentionally not given notice that this issue would be considered, and was deprived of the opportunity to join in the board's deliberations. These allegations are sufficient to state a cognizable claim for relief. In Moore Business Forms, Inc. v.

Cordant Holdings Corp., n13 [*18] this Court held that except where certain board governance procedures are established, a director has a right of access to whatever corporate information is given to its other directors during the director's tenure. Because Mr. Cairns is claimed to have been denied such access, Count V may be viewed as a claim to enforce that right, by invalidating a charter amendment that was the result of a defective board process. That claim, if meritorious, would afford the plaintiffs a basis for relief. n14 Accordingly, the motion to dismiss this Count must be denied.

n13 *1996 Del. Ch. LEXIS 56*, Del. Ch., C.A. Nos. 13911 & 14595, Jacobs, V.C. (June 4, 1996), appeal denied, *682 A.2d 625 (1996)*.

n14 See, e.g., *Schroder v. Scotten, Dillon Company*, Del. Ch., *299 A.2d 431, 435 (1972)* ("A special meeting held without notice to all directors as required by the by-laws is not lawful and all such acts done at such a meeting are void.").

IV. CONCLUSION

For the foregoing reasons, the Court denies the defendants' motions to dismiss, [*19] except that the claims against Cory Gelmon will be dismissed unless the plaintiffs are able to demonstrate, by the filing of appropriate proof within ten days of the date of this Opinion, that Mr. Gelmon was properly served in accordance with *10 Del. C. § 3104*. IT IS SO ORDERED.