# EXHIBIT L



Not Reported in F.Supp.2d                                                                                                                Page 1
Not Reported in F.Supp.2d, 2003 WL 503257 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Kenneth J. MARINO, Plaintiff
v.
CROSS COUNTRY BANK, Applied Card Systems, Inc., and Rocco A. Abessinio, Defendants.
No. C.A.02-65-GMS.

Feb. 14, 2003.

*MEMORANDUM AND ORDER*
SLEET, J.

### I. INTRODUCTION

*1 The plaintiff, Kenneth J. Marino, filed the instant action on January 25, 2002, alleging various tort and contract claims arising from an employment agreement with the defendants, Cross Country Bank ("CCB"), Applied Card Systems, Inc. ("ACS"), and Rocco A. Abessinio (collectively "the defendants"). Abessinio is Chairman of both corporate defendants. The defendants move to dismiss several counts of the Amended Complaint (D.I.34) on various grounds. For the following reasons, the court will grant in part and deny in part the defendants' motion.

### II. BACKGROUND

The plaintiff is a lawyer. In September of 2000, he entered into a written employment agreement with CCB to serve as General Counsel for that corporation. After serving approximately eighteen weeks in that position, Marino was terminated. On July 11, 2001, following tensions between the parties, CCB filed a Demand for Arbitration pursuant to the employment agreement's arbitration provision. The plaintiff filed the present suit on January 25, 2002, alleging fraud, breach of the implied covenant of good faith and fair dealing, defamation, violation of the Delaware Wage Payment and Collection Law, interference with prospective business relations, injurious falsehood, and conspiracy. The defendants moved to dismiss the majority of the plaintiff's claims on April 18, 2002. Shortly thereafter, in June 2002, the parties abandoned arbitration and agreed to consolidate all of the claims, defenses, and counterclaims raised in the arbitration case into this action. The defendants' motion to dismiss was therefore dismissed as moot, and the plaintiff amended his pleading. The defendants now move to dismiss several counts of the amended complaint.

### II. STANDARD OF REVIEW

The defendants move to dismiss Counts I, II, V, VII, and VIII as to the corporate defendants, and all counts as to Abessinio personally, pursuant to Federal Rule of Civil Procedure 12(b)(6). The role of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). Thus, in deciding a motion to dismiss, the court must "accept as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them." *Markowitz v. Northeast Land Co.,* 906 F .2d 100, 103 (3d Cir.1990). In particular, the court looks to 'whether sufficient facts are plead to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer.' *Colburn v. Upper Darby Township,* 838 F.2d 663, 666 (3d Cir.1988) (quoting *Frazier v. Southeastern Pa. Transp. Auth.,* 785 F.2d 65, 68 (3d Cir.1986)). In this analysis, however, the court should disregard a complaint's 'bald assertions' and 'legal conclusions.' *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429-30 (3d Cir.1997) (quoting *Glassman v. Computervision Corp.,* 90 F.3d 617, 628 (1st Cir.1996). The court will dismiss a complaint only if the plaintiff can prove no set of facts, consistent with the allegations, upon which relief could be granted. *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989); *see also Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

### III. DISCUSSION

#### A. Claims against CCB and ACS

*2 The defendants contend that Marino has failed to state a cause of action against the corporate defendants, CCB and ACS, for fraud (Count I), breach of the implied covenant of good faith and fair dealing (Count II), interference with prospective business relations (Count V), and conspiracy (Count

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                      Page 2
Not Reported in F.Supp.2d, 2003 WL 503257 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

VII). Additionally, the defendants contend that Marino's breach of contract claim (Count VIII) is time-barred under prior arbitration proceedings. The court will discuss each of the defendants' contentions in turn.

1. Fraud

In Count I of his amended complaint, Marino alleges that the defendants intentionally made false and misleading representations to him in connection with his employment contract and termination from CCB. Additionally, the plaintiff alleges that the defendants made misrepresentations of fact to Wilmington Trust, a third party, regarding Marino's lease of a vehicle pursuant to his employment contract. For the reasons discussed below, the court finds that Marino has sufficiently pled a cause of action for fraud.

Under Delaware law, a plaintiff claiming fraud must demonstrate:
(1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's actions or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance.

Brooks v. Fiore, 2001 WL 1218448, at *7 (D.Del.2001) (citing Stephenson v. Capano Dev. Inc., 462 A.2d 1069, 1074 (Del.1983)). In addition, Federal Rule of Civil Procedure 9(b) requires that a pleading of fraud or mistake "be stated with particularity." Fed. R. Civ. P. 9(b). Thus, in order to sufficiently plead a claim of fraud, Marino must "provide sufficient factual detail regarding the circumstances of the alleged fraud to place the defendants on notice of the precise misconduct charged." Brug v. Enstar Group, Inc., 755 F.Supp. 1247, 1253 (D.Del.1991) (citing Seville Indus. Machine Corp. v. Southmost Machinery Corp., 742 F.2d 786, 791 (3d Cir.1984)). Count I of the amended complaint meets this standard.

In his amended complaint, the plaintiff alleges that the "defendants committed fraud by intentionally misleading Marino with false material statements regarding the scope of the Contract which reasonably induced Marino to enter the Contract." Pl.'s An. Br. at 14. The plaintiff alleges that the defendants falsely told him he would: (1) be given full authority over their legal departments; (2) be encouraged to provide legal advice; (3) be considered senior management; (4) participate in management of the company; and (5) be allowed to make reforms. See Amended Compl. ¶ 33(a)-(e). Marino contends that these false and misleading statements fraudulently induced him to leave his position with Blank Rome and to enter into an employment contract with the corporate defendants. Clearly, the amended complaint states a claim for fraud.

*3 The defendants note that under Delaware law, however, allegations of fraud cannot be based upon statements of future results. See Craft v. Bariglio, 1984 WL 8207, at *8 (Del. Ch.1984) ("Mere expressions of opinion as to probabl[e] future results, when clearly made and understood as such, do not constitute false representation even though they may relate to material matters."). It is unknown at this point, however, whether the alleged representations of the defendants were clearly made and understood as mere expressions of opinion as to probable future results, or whether they were false representations intended to fraudulently induce the plaintiff into entering the employment contract. For purposes of this motion, the plaintiff's averments are sufficient to state a claim of fraud.

2. Breach of Implied Covenant of Good Faith and Fair Dealing

Under Delaware law, "every employment contract made under the laws of this State, consonant with general principles of contract law, includes an implied covenant of good faith and fair dealing." Merrill v. Crothall-American, Inc., 606 A.2d 96, 101 (Del.1992). A cognizable action for breach of the implied covenant of good faith and fair dealing exists where the termination violates public policy. See DuPont v. Pressman, 679 A.2d 436, 441 (Del.1996) (noting recognized exceptions to employment at will). In such a case, the employee "must assert a public interest recognized by some legislative, administrative or judicial authority, and the employee must occupy a position with responsibility for that particular interest." Shearin v. E.F. Hutton Group, Inc., 652 A .2d 578, 587-88 (Del. Ch.1994). Additionally, "Delaware will not invoke the public policy exception absent some illegal act by the employer." Paolella v. Browning-Ferris, Inc., 158 F.3d 183, 191 (3d Cir.1998).

In Count II of his amended complaint, Marino alleges that the defendants' conduct constituted a breach of the implied covenant of good faith and fair dealing.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 3
Not Reported in F.Supp.2d, 2003 WL 503257 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Specifically, the plaintiff asserts:
Marino discovered that the mismanagement, misconduct and illegal activities conducted by ... [defendants] was far more extreme and pervasive than Marino had previously been led to believe. As Marino proceeded in his efforts to address and resolve those problems cost-effectively and expeditiously, Marino met with unanticipated and immovable resistance from ... [the defendants].

Amended Compl. ¶ 20. Further, the plaintiff alleges that "[a]s a result ... [the defendants] took measures to ensure that Marino would (1) not continue in his investigations; (2) not report the findings of those investigations; (3) lose his credibility and reputation with the appropriate governmental and law enforcement agencies...." *Id.* ¶ 22. Marino alleges that he "was wrongfully terminated for investigating and threatening to uncover unethical and illegal banking activities by the defendants." Pl.'s An. Br. at 16. Finally, Marino asserts that he was terminated, "though no termination notice compliant with the terms of the Contract was ever provided to Marino by either CCB or ACS." *Id.* ¶ 24.

*4 Accepting the plaintiff's allegations as true for purposes of this motion, Count II survives a motion to dismiss because Marino has sufficiently stated a cause of action for breach of the implied covenant of good faith and fair dealing. Retaliatory terminations violate public policy. Indeed, "the paradigmatic dismissal giving rise to a public policy cause of action is the termination of an employee in retaliation for the employee's refusal to act contrary to public policy." *Lawrence v. National Westminster Bank,* 98 F.3d 61, 73 (3d Cir.1996). Furthermore, to the extent the plaintiff's termination resulted from his attempt to uphold the code of ethics governing the legal profession, the termination may have been wrongful. *See, e.g., Shearin,* 652 A.2d at 587 ("[T]he law would protect to some extent an employee who upheld a legally significant professional standard against attempted invasion."). In short, the amended complaint suffices, for purposes of this motion, to state a claim of breach of the implied covenant of good faith and fair dealing.

3. Interference with Prospective Business Relations

In Count V of the amended complaint, Marino alleges that the defendants interfered with prospective business relations. Under Delaware law, to establish a claim for tortious interference with prospective business relations, the claimant must show: "(1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference which induces or causes a breach or termination of the relationship or expectancy; and (4) resulting damages to the party whose relationship or expectancy has been disrupted." *Lucent Information Mgmt., Inc. v. Lucent Techs., Inc.,* 5 F.Supp.2d 238, 243 (D.Del.1998) (citing *Dionisi v. DeCampli,* 1995 WL 398536 (Del. Ch. June 28, 1995)). Additionally, "the plaintiff must be able to cite 'actual or potential contracts.' " *Id.* (citing *Kirkwood Kin Corp. v. Dunkin' Donuts, Inc.,* 1995 WL 411319 (Del.Super. Ct. June 30, 1995)).

Count V does not sufficiently plead a claim of interference with prospective business relations. Marino fails to allege an actual or potential contract with any identifiable entity. Naturally, because he names no valid contract or expectancy, the plaintiff also fails to allege a breach or termination of such a contract or expectancy. Marino alleges only that the defendants' conduct caused him to "lose the ability to earn a living as a banking lawyer to support his wife and children" and that the defendants "took actions which were designed to destroy Marino's reputation and ability to find employment in his profession." Amended Compl. ¶ ¶ 22, 27. This broad grievance which, at best, implies a loss of potential future employment contracts, is purely speculative and does not sufficiently state a claim for interference with prospective business relations. *See Lucent Information Mgmt.,* 5 F.Supp.2d at 243 (granting summary judgment to the defendant because plaintiff "only makes [a] broad claim [regarding] 'potential' customers, but does not cite any actual contract, or even contract discussions, with any of these parties."). Count V, therefore, is dismissed.

4. Conspiracy

*5 In Count VII of his amended complaint, Marino alleges that the "defendants conspired to cause harm to Marino and took action in furtherance of that conspiracy." Amended Compl. ¶ 53. Rule 8(a) of the Federal Rules of Civil Procedure governs allegations of civil conspiracy. Under the liberal pleading requirements of Rule 8(a), Delaware courts have required that the "allegations must be sufficient to 'describe the general composition of the conspiracy, some or all of its broad objectives, and the defendant's general role in the conspiracy.' " *China Resource Prods. (U.S.A.), Ltd. v. Fayda Int'l, Inc.,* 788 F.Supp. 815, 819 (D.Del.1992) (citing *Rose v.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                   Page 4
Not Reported in F.Supp.2d, 2003 WL 503257 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

*Bartle,* 871 F.2d 331, 366 (3d Cir.1989)). Additionally, in order to plead a **civil conspiracy** under **Delaware law**, a plaintiff must allege: "(1) a confederation or combination of two or more persons; (2) an unlawful act done in furtherance of the conspiracy; and (3) actual damage." *Id.* at 820 (citing *Nicolet, Inc. v. Nutt,* 525 A.2d 146, 149-50 (Del.1987)). Moreover, Delaware courts have recognized that civil conspiracy is not a separate cause of action and "must arise from an underlying cause of action." *See Ramunno v. Cawley,* 705 A.2d 1029, 1039 (Del.1998) (discussing pleading standards for civil conspiracy). Finally, where the underlying cause of action is defamation, "[t]he complaint must set forth specific facts such as 'meetings, conferences, telephone calls or joint signatures on written recommendations to indicate a conspiracy.' " *Id.* (quoting *Petula v. Mellody,* 588 A.2d 103, 107 (Pa.Commw.Ct.1991)).

Count VII does not sufficiently allege a claim of conspiracy. Marino describes the general composition of the conspiracy as including CCB, ACS, Abessinio, Dougherty, "and others." The complaint states that these parties conspired "to fabricate false and/or wildly exaggerated grounds for the termination of Marino's employment at CCB and ACS." Although this may be viewed as stating the broad objective of the conspiracy, it does not allege an unlawful act done in furtherance thereof. Marino also alleges that the defendants "communicated false, defamatory and misleading statements to officials of Wilmington Trust Company that Marino was not authorized to enter into an automobile lease as part of his compensation from CCB and ACS and that Marino had in fact stolen the leased automobile" and that the defendants "took actions which were designed to destroy Marino's reputation and ability to find employment in his profession." Amended Compl. ¶ ¶ 25, 27. Although this language is sufficient to allege defamation as the unlawful act underlying the conspiracy, it does not provide specific facts to support a claim of conspiracy to defame. For example, the amended complaint fails to allege any meetings, phone calls, or other specific conduct that points to the existence of a conspiracy. In addition, the plaintiff fails to allege any actual damage arising from the conspiracy. *See Atlantis Plastics Corp. v. Sammons,* 558 A.2d 1062, 1066 (Del. Ch.1989) ( "Facts, not legal conclusions, must be pled, including facts showing damages.").

*6 In sum, Marino's allegations, even when viewed in a light most favorable to him, do not sufficiently plead a claim of conspiracy because they fail to meet the pleadings criteria for such a claim. Thus, the court will dismiss Count VII.

5. Breach of Contract

The plaintiff alleges a breach of contract claim in Count VIII; the defendants contend that the claim is time-barred. In support of their argument, the defendants cite Marino's failure to meet deadlines during the parties' prior arbitration proceedings. The defendants' basic contention is that the plaintiff's breach of contract claim is time-barred because Marino "flouted the deadlines imposed by the arbitrator" to such an extent that his claim in the arbitration proceeding became barred. Defs.' Opening Br. at 24. Therefore, the defendants argue, the plaintiff "should not ... be allowed to amend his pleadings here to asset a time-barred claim." *Id.*

The court finds this argument most unpersuasive. First, it is unclear whether the plaintiff's counterclaim would have been barred in the arbitration proceedings. This is so because counterclaims in the arbitration context are permissive and not mandatory. *See* Am. Arb. Ass'n. Comm. Arb. R. 4(b)(iii)(1) (providing for permissive counterclaims). Moreover, the arbitrators did not rule on the timeliness of Marino's counterclaims before the parties agreed to forego arbitration in June 2002. Pl.'s An. Br. at 19.

Second, and more importantly, the defendants have offered no caselaw, and the court can fathom none, for their position that relevant statutes of limitations and the rules of federal procedure and practice do not apply in federal court once parties have voluntarily abandoned the arbitration process and brought their dispute to federal court. Thus, the plaintiff's breach of contract claim is subject only to the three-year statute of limitations governing such claims. *See* 10 Del. C. § 8106 (setting three-year statute of limitations for suits "based upon alleged wrongful termination of [a] contract and seeks damages therefor"); *see also Goldman v. Braunstein's, Inc.,* 240 A.2d 577, 578 (Del.1968) (discussing statute of limitations governing actions for breach of contract based on wrongful termination). According to the amended complaint, Marino's breach of contract claim accrued on February 12, 2001, when the plaintiff was suspended from his employment with CCB and ACS. *See* Amended Com pl. ¶ 23-24. The present action was instituted on January 25, 2002. Clearly, Marino's claim is not time-barred. Therefore, the defendants' motion to dismiss the breach of contract claim is denied.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 5
Not Reported in F.Supp.2d, 2003 WL 503257 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

### B. Claims against Abessinio Individually

The defendants urge that Abessinio cannot be sued in his individual capacity for the present claims. They maintain that Abessinio, as Chairman of the Board of both CCB and ACS, is shielded from liability for actions performed in his corporate capacity and on behalf of the corporations. Because all of the claims at issue arise only from the defendants' employment relationship with the plaintiff, the defendants assert, and because all of Abessinio's dealings with Marino were performed in his capacity as an agent for the corporate defendants, Abessinio is protected from personal liability arising from these actions. In addition, the defendants note that Abessinio was not a signatory in his personal capacity to the employment agreement with the plaintiff. Nor can the conspiracy claim survive against Abessinio, they argue, because an officer or director acting in his or her corporate capacity can not conspire with the corporation. Because the court has dismissed the claims of tortious interference with prospective business relations and conspiracy, it need not address Abessinio's liability as to these claims. The remaining claims against Abessinio are: fraud; breach of the implied covenant of good faith and fair dealing; breach of contract; defamation; and injurious falsehood.[FN1]

> FN1. Count IV, alleging violations of the Delaware Wage Payment and Collection Act, implicates the corporate defendants only. Therefore, it is not addressed in the analysis of Abessinio's personal liability.

#### 1. Breach of Contract and of Implied Covenant of Good Faith and Fair Dealing

*7 Abessinio cannot be held personally liable for these claims. It is well-established that directors and officers are not personally liable on contracts signed by them on behalf of the corporation unless they purport to bind themselves individually. *Wallace v. Wood,* 752 A.2d 1175, 1180 (Del. Ch.1999) ("Delaware law clearly holds that officers of a corporation are not liable on corporate contracts as long as they do not purport to bind themselves individually."); *see also International Ass'n of Heat & Frost Insulators & Asbestos Workers Local Union 42,* 814 F.Supp. 392, 400 ("[A]n officer or director may be held personally liable for tortious interference with a contract of the corporation if, and only if, said officer or director exceeds the scope of his agency in so doing."). The plaintiff has not alleged that Abessinio purported to bind himself individually on the employment contract, or that he exceeded the scope of his agency with regard to the employment contract. Counts II and VIII are dismissed as to Abessinio personally.

#### 2. Fraud, Defamation, and Injurious Falsehood

Abessinio may be held personally liable for fraud, defamation, and injurious falsehood. "Corporate officers are liable for their tortious conduct even if they were acting officially for the corporation in committing the tort. A corporate officer can be held personally liable for the torts he commits and cannot shield himself behind a corporation when he is a participant." *Stonington Partners, Inc. v. Lernout & Hauspie Speech Products, N.V.,* 2002 WL 31439767, at *8, n. 27 (citing cases). As stated above, the amended complaint suffices to state a claim for fraud. It also appears to allege all of the elements of the torts of defamation and injurious falsehood.[FN2] The plaintiff has sufficiently pled these claims. Thus, the defendant Abessinio is not entitled to immunity regarding these torts. Counts I, III, and VI survive the defendants' motion.

> FN2. The defendants did not challenge the sufficiency of the pleadings regarding these claims, nor have they moved to dismiss these claims regarding the corporate defendants.

### IV. CONCLUSION

For the aforementioned reasons, IT IS HEREBY ORDERED that:
1. The defendants' Motion to Dismiss the Amended Complaint (D.I.34) is GRANTED in part and DENIED in part.
2. Counts V (Interference with Prospective Business Relations) and VII (Conspiracy) are DISMISSED as to each defendant.
3. Counts II (Breach of the Implied Covenant of Good Faith and Fair Dealing) and VIII (Breach of Contract) are DISMISSED as to the defendant Rocco A. Abessinio.

D.Del.,2003.
Marino v. Cross Country Bank
Not Reported in F.Supp.2d, 2003 WL 503257

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                Page 6
Not Reported in F.Supp.2d, 2003 WL 503257 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

(D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.