# EXHIBIT N



Not Reported in A.2d  
Not Reported in A.2d, 2001 WL 1221749 (Del.Super.)  
**(Cite as: 2001 WL 1221749 (Del.Super.))**

Page 1

C  
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware.  
Bradley PALMER, Plaintiff,  
v.  
Nathaniel MOFFAT, Jay Moffat, Diana Spencer, Kim Spencer, Abby Moffat, Pamela Moffat, Alan Herstrum, James Kee, Thomas Lutes, Mario Kranjac Defendants.  
No. 01C-03-114-JEB.

Submitted: Sept. 24, 2001.  
Decided: Oct. 10, 2001.

Defendants Diane Spencer, Kim Spencer and Pamela Moffat's Motion to Dismiss. Granted. Defendant's Mario Kranjac's Motion to Dismiss. Denied.

Craig B. Smith, Esquire, and Robert J. Katzenstein, Esquire, Wilmington, for Plaintiff.

Richard H. Morse, Esquire, and Ben T. Castle, Esquire, Wilmington, for Defendants Diana Spencer, Kim Spencer, and Pamela Moffat.

Edward M. McNally, Esquire, Wilmington, for Defendants Alan Herstrum, James Kee, Thomas Lutes and Mario Kranjac.

OPINION

BABIARZ, J.

*1 This case is a dispute among the members and managers of a Delaware limited liability company. Four of the defendants have moved to dismiss for lack of personal jurisdiction. For the reasons discussed below, the motion is Granted as to Diana Spencer, Kim Spencer and Pamela Moffat, who were members of the company but not managers, and Denied as to Defendant Mario Kranjac, who served as a manager.

FACTS  
In March 1997, Plaintiff Bradley Palmer and Defendant Nathaniel Moffat, as well as other investors, formed the Yazoo Power Equipment Group, LLC ("the Company"), pursuant to Delaware's Limited Liability Company Act. [FN1] The Complaint alleges that when the Company's earnings fell to a dangerous low, Moffat withheld capital contributions which he was obligated to make, and that he encouraged other members and managers to do the same. As a result, the Company defaulted on its financing obligations, and was put up for sale at private auction. Moffat bought the Company and subsequently sold one of its major holdings for an alleged sum of approximately $25 million. Palmer, who was no longer a member of the Company received nothing from the proceeds of the sale.

FN1. See 6 Del. C. ch. 18.

Palmer subsequently filed suit in Superior Court, alleging that the members and managers of the Company successfully conspired to defraud him of more than $15 million of his equity interest in the Company. Defendants Diana Spencer, Kim Spencer and Pamela Moffat, who, for purposes of this motion only, are referred to as "the Spencer Defendants," have moved to dismiss for lack of personal jurisdiction, pursuant to Super. Ct. Civ. R. 12(b)(2). Defendant Mario Kranjac has filed a separate motion to dismiss for lack of personal jurisdiction.

STANDARD OF REVIEW  
On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden to make a prima facie case establishing jurisdiction under the long-arm statute. [FN2] In deciding the motion, the Court is to decide first whether jurisdiction is appropriate under the statute and, if so, whether the exercise of such jurisdiction would offend due process. [FN3] The Court must view all factual disputes in a light most favorable to the plaintiff. [FN4]

FN2. Greely v. Davis, Del.Supr., 486 A.2d 669, 670 (1984); Outokumpu Engineering Enterprises, Inv. v. Kvaerner Enviropower, Inc., Del.Super., 685 A.2d 724, 727 (1996).

FN3. Carlton Investments v. TLC Beatrice Internat'l Holdings, Inc., Del. Ch., C.A. No. 13950, Allen, C. (Oct. 16, 1996); Mumford v. Mumford, Del.Super., C.A. No. 93C-06-032, Terry, J. (Feb. 6, 1995).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d																								Page 2
Not Reported in A.2d, 2001 WL 1221749 (Del.Super.)
(Cite as: 2001 WL 1221749 (Del.Super.))

FN4. *Boone v. Oy Partek, AB,* Del.Super., 724 A.2d 1150, 1155 (1997) (citing *Outokumpu Engineering Enterprises, Inc. v. Kvaerner Enviropower, Inc.*, 685 A.2d at 727.)

## DISCUSSION

The Spencer Defendants argue that dismissal is appropriate as to them because 6 *Del. C.* § 18-109, the implied consent statute for service of process in a Delaware LLC case, applies only to managers and that they were members but never managers of the Company. Plaintiff argues that the Spencer Defendants were managers under the statutory definition and also under the Operating Agreement. Defendant Kranjac argues that he was not a manager at the time the complaint was filed and that he is therefore not subject to the implied consent statute. Plaintiff responds that the Complaint refers to events that occurred during Kranjac's tenure as a manager.

The implied consent statute, § 18-109, provides in part as follows:

> A manager... of a limited liability company may be served with process... in all civil actions or proceedings brought in the State of Delaware involving or relating to the business of the limited liability company or a violation by the manager... of duty to the limited liability company, or any member of the limited liability company.... A manager's... serving as such constitutes such person's consent to the appointment of the registered agent of the limited liability company... as such person's agent upon whom service of process may be made.... (Emphasis added.)

*2 This statute establishes jurisdiction over a manager in an action alleging a breach of fiduciary duty in his managerial capacity. [FN5] It also provides two definitions of a manager:

FN5. *Assist Stock Mgmt, LLC v. Rosheim,* Del. Ch., 753 A.2d 974, 978 (2000).

As used in this... section, the term "manager" refers (i) to a person who is a manager as defined in § 18-101(10) of this title, and (ii) to a person, whether or not a member of a limited liability company, who, although not a manager as defined in § 18-101(10) of this title, participates materially in the management of the limited liability company; provided however, that the power to elect or otherwise select or to participate in the election or selection of a person to be a manager as defined in § 18-101(10) of this title shall not, by itself, constitute participation in the management of the limited liability company.

Plaintiff concedes that the second definition does not apply to the Spencer Defendants, that is, that they did not participate materially in managing the Company. Plaintiff contends instead that they were managers under the first definition. Section § 18-101(10) provides as follows:

> "Manager" means a person who is named as a manager of a limited liability company in, or designated as a manager of a limited liability company pursuant to, a limited liability company agreement or similar instrument under which the limited liability company is formed.

Plaintiff's construction of the Operating Agreement boils down to an argument that all members are managers. The pertinent section of the Operating Agreement provides as follows:

> The Members shall have full, exclusive and complete discretion, power and authority, subject in all cases to the provisions of this Agreement and the requirements of applicable law, to manage, control, administer and operate the business and affairs of the company for the purposes herein stated, to make all decisions affecting such business and affairs, and to adopt such accounting rules and procedures as they deem appropriate in the conduct of the business and affairs of the Company. [FN6]

FN6. Operating Agreement at 18, lines 498-99, 501-507.

Despite this broad grant of potential operating authority to members, the Operating Agreement vests actual authority in the Management Committee:

> The operations of the Company shall be conducted by the Management Committee. Except as otherwise provided in this Agreement, all Company decisions shall require the affirmative vote of the majority of the members of the Management Committee. [FN7]

FN7. *Id.* at 19, lines 544-47.

This section of the Agreement lists specific duties of the Management Committee, including hiring employees and determining their compensation, borrowing money for Company purposes, pledging or encumbering the Company's assets, and confessing judgment for the Company's liabilities. [FN8] Other duties assigned to the Management Committee

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                              Page 3
Not Reported in A.2d, 2001 WL 1221749 (Del.Super.)
**(Cite as: 2001 WL 1221749 (Del.Super.))**

include appointing a president, [FN9] a chief executive officer, a tax matters partner, [FN10] and other managers, officers or agents. [FN11] To increase capital investment, the Management Committee was authorized to issue new classes of interest units. [FN12] The Management Committee was also responsible for the admission of new members, [FN13] approval of capital items and initiation of bankruptcy proceedings. [FN14]

> FN8. *Id.* at lines 548-60.
>
> FN9. *Id.* at 20, lines 590, 592-93.
>
> FN10. *Id.* at lines 616-17.
>
> FN11. *Id.* at 21, lines 604, 609-13.
>
> FN12. *Id.* at 9, lines 230-34, et seq.
>
> FN13. *Id.* at 21, lines 630-33.
>
> FN14. *Id.* at lines 634-37.

*3 In contrast, members were strictly limited in their rights to sell, assign or transfer their units and could not even resign from the Company without the consent of the Management Committee. [FN15] The members were authorized to appoint or designate a majority of the Management Committee Members. [FN16] However, § 18-109 provides that this power, standing alone, is not sufficient to qualify a member as a manager: "[T]he power to elect or otherwise select or to participate in the election or selection of a person to be a manager as defined in § 18-101(10) of this title shall not, by itself, constitute participation in the management of the limited liability company."

> FN15. *Id.* at 22, § 7.1.1, § 7.1.5.
>
> FN16. *Id.* at 18-19, § 6.1.2.

Thus the Operating Agreement designates members of the Management Committee as the Company's actual managers. It is uncontested that the Spencer Defendants never served on that Committee. In addition, the Spencer Defendants have filed affidavits averring that they never acted as managers, never attended managerial meetings and had no business connections with Delaware. The Court concludes that Defendants Diana Spencer, Kim Spencer and Pamela Moffat were not managers under either § 18-109 or the Operating Agreement and that they are not subject to service under the implied consent statute. Thus, it is not necessary for the Court to reach the constitutional question as to these Defendants.

Defendant Kranjak also moves to dismiss, joining in the arguments made by the Spencer Defendants. Kranjac further argues that he was neither a member nor a manager of the Company when the acts alleged in the Complaint took place. Kranjac, who served the Company as outside counsel, avers in his affidavit that he resigned from the Management Committee effective October 7, 1998, and that he did not again become a member of the Management Committee until February 1999, following the foreclosure.

Since Kranjac concedes that he was a member of the Management Committee, the only question is one of timing. Pursuant to § 18-109(a), a manager may be served with process "whether or not the manager or liquidating trustee is a manager or a liquidating trustee at the time suit is commenced." [FN6] He was a member of the Management Committee in 1998 when many of the disputed event occurred. Therefore, Kranjac is subject to the implied consent statute.

> FN6. Title 6 *Del. C.* § 18-109(a).

The second prong of the test for personal jurisdiction is whether the exercise of such jurisdiction would offend due process. The constitutional standard for determining whether a state may exercise judicial power over a person is fairness and substantial justice. [FN7] The critical question in making this determination is whether a reasonable person would have anticipated that his actions might result in the forum state asserting personal jurisdiction over him in order to adjudicate disputes arising from those actions. [FN8]

> FN7. *In re USA Cafes, L.P. Litigation,* Del. Ch., 600 A.2d 43 (1991)(citing *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292 (1980)).
>
> FN8. *Id.* at 50-51.

In considering this question pursuant to § 18-109, the Court of Chancery stated that "[w]hen nonresidents agree to serve as directors or managers of Delaware entities, it is only reasonable that they anticipate that under [certain] circumstances... they will be subject to personal jurisdiction in Delaware courts." [FN9] The Court went on to say that a case-by-case analysis would eliminate any risk of an unconstitutionally broad application of the statute. [FN10] In other words, the same principle that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                 Page 4
Not Reported in A.2d, 2001 WL 1221749 (Del.Super.)
**(Cite as: 2001 WL 1221749 (Del.Super.))**

governs jurisdiction over corporate directors under 10 Del. C. § 3114 applies to 6 Del. C. § 18-109: it is the "rights, duties, and obligations which have to do with service as a director of a Delaware corporation which make a director subject to personal service in Delaware." [FN11]

> FN9. *Assist Stock Mgmt, LLC v. Rosheim,* Del. Ch., 753 A.2d 974, 975 (2000).

> FN10. *Id.* at 980.

> FN11. *Hana Ranch v. Lent,* Del. Ch., 424 A.2d 28, 30-31 (1980).

*4 Unlike 10 Del. C. § 3114, the LLC implied consent statute explicitly incorporates this principle into its provisions. Section 18-109(a) limits implied consent to service of process to managers and liquidating trustees, and defines managers as those individuals who materially participate in management or those who are designated to serve as managers by the company itself via its operating agreement.

Defendant Kranjac does not dispute that he was a member of the Management Committee or that he served as outside counsel to the Company. The Complaint alleges that Kranjac colluded with other defendants to stall the contribution of new capital in order to facilitate the foreclosure, thereby forcing Plaintiff out of the Company. While this allegation is disputed, it is clear that Kranjac was on the Management Committee throughout the spring, summer and fall of 1998, when the alleged actions took place. In particular, Kranjac was allegedly involved in the unsuccessful negotiations between the parties to reach an agreement that would prevent foreclosure. [FN12] The Court finds that Kranjac could reasonably have anticipated being subject to Delaware jurisdiction under these circumstances to answer for his actions as a manager and that the exercise of such jurisdiction would not offend traditional notions of fair play and substantial justice.

> FN12. Complaint ¶ 40.

## CONCLUSION

For the foregoing reasons, the motion to dismiss filed by Diana Spencer, Kim Spencer and Pamela Moffat is Granted, and the motion to dismiss filed by Mario Kranjac is Denied.

It Is So ORDERED.

Not Reported in A.2d, 2001 WL 1221749 (Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.