IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT D. CHRIST, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| BRETT J. CORMICK, ELAN SUISSE INTERNATIONAL HOLDINGS (USA) LLC, ELAN SUISSE (PTY) LTD., NICOGEL LTD., JOHN WALTERS, DIANNE MARSHALL and MERCARI FINANCIAL SERVICES (PTY) LTD., | ) ) ) ) ) ) ) ) C.A. No. 06-275-GMS |
| Defendants. | ) ) ) |

**MEMORANDUM**

**I.    INTRODUCTION**

On April 27, 2006, the plaintiff, Robert D. Christ ("Christ") filed suit against the defendants, Brett J. Cormick ("Cormick"), Elan Suisse International Holdings (USA) LLC ("Elan Suisse USA"), Elan Suisse (PTY) LTD. ("Elan Suisse"), Nicogel LTD. ("Nicogel"), John A. Walters ("Walters"), Dianne E. Marshall ("Marshall"), and Mercari Financial Services (PTY) LTD. ("Mercari"), (collectively, "the defendants") alleging promissory estoppel (Count 1), breach of contract (Count II), fraud (Count III), and civil conspiracy (Count IV). (D.I. 1.) On May 22, 2006, all of the defendants, except Mercari, filed a Motion To Dismiss Or Stay asking the court to: (1) dismiss the action pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction; (2) dismiss the conspiracy count pursuant to Fed. R. Civ. P. 12(b)(6) for failure to

state a claim; (3) dismiss the fraud and conspiracy counts as being outside the statute of limitations; (4) stay this action pursuant to principles of international comity pending resolution of an action filed by the plaintiff in 2005, which is presently pending in South Africa; and (5) for sanctions. (D.I. 16.) On June 16, 2006, the defendant Mercari also moved to dismiss, and joined in the brief of the other defendants for the reasons supporting its motion. (D.I. 19.)

During the pendency of the defendants' motions, Christ amended his complaint. (D.I. 29.) Thereafter, the defendants filed a joint motion to dismiss on March 15, 2007, requesting the same relief sought in their previously mooted motions. (D.I. 30.) For the reasons that follow, the court will grant in part and deny in part the defendants' renewed motion.

## II.    BACKGROUND

The court accepts the following background recited in the amended complaint as true for the purpose of this motion only. At the time the amended complaint was filed, Christ was a resident of Abita Springs, Louisiana and Cormick was a citizen of Australia, but resided in the United Kingdom and the Republic of Zimbabwe. (D.I. 29, at 1.) Christ and Cormick became acquainted in April of 1996, while Christ was operating a tour company, specializing in expeditions to the geographic North and South Poles. (*Id.* at 3.) In January of 2004, Cormick met Christ in Cape Town, South Africa, during which time the two parties discussed a "potential investment in a purported business opportunity devised by Cormick." (*Id.*) Cormick suggested that Christ "invest in a holding company that would operate to promote and sell United States-based financial products and investment vehicles to investors located in South Africa." (*Id.* at 4.)

After making various representations to Christ,[1] Cormick asked for an initial investment from Christ to "launch the venture." (*Id.*)

The terms of the investment were negotiated through email, culminating in a written proposal by Cormick on February 15, 2004. (*Id.* at 4.) According to Christ, the terms were that "plaintiff would invest $350,000 in exchange for a 50% equity interest in two entities: (i) Elan Suisse, a South African corporation which would manage the investment operations [of which Cormick was a director and officer]; and (ii) Elan Suisse USA, a Delaware limited liability company which would own certain intellectual property rights." (*Id.* at 4.) Further discussions ensued and the parties agreed to memorialize the terms of the investment in a written agreement in the future. (*Id.* at 5.)

In March 2004, Christ wired two separate payments of $125,000 each to Cormick's personal bank account in London. (D.I. 1, at 5.) Cormick caused Elan Suisse USA to be formed on March 15, 2004; however, no written agreement was ever executed, nor did Christ receive equity shares of Elan Suisse or Elan Suisse USA. (*Id.* at 5.) In September 2004, Christ requested an audit of both Elan Suisse and Elan Suisse USA. (*Id.*) On September 9, 2004 Cormick offered to repay Christ the $250,000 investment and Christ accepted the offer in writing on November 30, 2004. (*Id.*) Christ has yet to receive payment. (D.I. 1, at 5.)

---

[1] Christ alleges that Cormick misrepresented that he had (1) access to 8,000 brokers and financial advisors in South Africa who represented one million potential investors in that country, and (2) relationships with investors who intended immediately to invest $28.5 million through his proposed business. (D.I. 1, at 4.)

The remainder of Christ's allegations focus upon a conspiracy between the remainder of the defendants and Cormick. The facts alleged are as follows. Cormick was both a director of Mercari and Elan Suisse. (*Id*. at 8.) Cormick operated Elan Suisse out of Mercari's offices while at the same time communicating with Christ. (*Id.*) Christ alleges that the money he invested in Elan Suisse and Elan Suisse USA was diverted to Acquacine (renamed Nicogel in December 2005) through the efforts of Walters, (Nicogel's Chief Executive Officer), Marshall (Nicogel's officer and shareholder), and Cormick. (*Id.*) Elan Suisse promoted investment in Acquacine through print advertisement, and identified Cormick and Walters as managers of the "Elan Suisse Capital Biopharma" investment vehicle. (*Id*. at 9.) To promote Elan Suisse Biopharma Investment Portfolio, Marshall developed a PowerPoint presentation aimed at potential investors. (D.I. 32, at 5.) A key product in the portfolio of the Elan Suisse Capital Biopharma investment portfolio was Nicotea, a product produced by Acquacine. (*Id.*)

In February of 2005, Christ filed suit in the High Court of South Africa, Witwatersrand Local Division, Case No: 05-2033, naming Cormick as the sole defendant and alleging similar facts to the present action. (D.I. 31, Ex. A-1.) In response to the suit, Cormick disputes the South African court's jurisdiction, alleging that "[n]either the Plaintiff nor the Defendant is ordinarily resident or carries on business within the area of jurisdiction of the Honourable Court . . . and [t]he cause of action herein did not arise within the area of jurisdiction of the Honourable Court . . . and the Honourable Court consequently has no jurisdiction to entertain this action." (*Id.* at Ex. A-2.) Christ represents that he has not pursued the South African case against Cormick due to his likely inability to secure jurisdiction over Cormick in that court. (D. I. 32-2, Ex. A, at 6.)

### III.     STANDARDS OF REVIEW

#### A.     Rule 12(b)(2)

The defendants move to dismiss for lack of personal jurisdiction. "Rule 12(b)(2) of the Federal Rules of Civil Procedure requires a court to dismiss a case when the court lacks personal jurisdiction over the defendants." *E.I. duPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates*, S.A.S., 197 F.R.D. 112, 119 (D. Del. 2000). "Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 603-04 (3d Cir. 1990), *cert. denied*, 498 U.S. 812 (1990). Plaintiff may not rely upon the bare pleadings in order to withstand the motion to dismiss for lack of *in personam* jurisdiction. *Id.* at 604.

The determination of whether personal jurisdiction exists requires a two-step analysis. First, the court must decide whether jurisdiction is authorized by the long-arm statute of the state in which the court sits. *Transportes Aereos de Angola v. Ronair, Inc.*, 544 F. Supp. 858, 864 (D. Del. 1982). If jurisdiction is proper per the long-arm statute, the court must then determine whether exercising jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment. *Id.* at 864-65 (noting the "intent of the legislature to exercise jurisdiction over non-residents whenever feasible"); *see also, Compaq Computer Corp. v. Packard Bell Elecs., Inc.*, 948 F. Supp. 338, 342 (D. Del. 1996).

To satisfy the second prong of this analysis, the court must find the existence of "minimum contacts" between the defendant and the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*

*v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted).  In this case, Christ must show that each of the defendants purposefully availed itself of the privilege of conducting activities within Delaware.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citation omitted); *see also, Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 108-09 (1987).

When reviewing this motion, the "court must accept as true all allegations of jurisdictional fact made by the plaintiff and resolve all factual disputes in the plaintiff's favor." *Shamrock Holdings of California, Inc. v. Arenson,* 421 F. Supp. 2d 800, 803 (D. Del. 2006).  Christ, however, bears the burden of alleging facts sufficient to make a *prima facie* showing of personal jurisdiction over the defendants.  *ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.*, 147 F. Supp. 2d 268, 270-71 (D. Del. 2001).  To meet this burden, Christ must adduce facts which "'establish with reasonable particularity'" that jurisdiction over the defendants exists.  *Id.* at 271 (citation omitted).

      **B.**      **Rule 12(b)(6)**

The defendants also move to dismiss Count IV (Civil Conspiracy) for failure to state a claim.  Under the Rule 12 pleading standard, the court must "view the complaint as a whole and [] base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable."  *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998).  The court is not obligated to accept as true "unsupported conclusions," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997), or allegations that are "self-evidently false."  *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).  "Similarly, legal conclusions draped in the guise of factual allegations may not benefit from the

presumption of truthfulness." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Eames v. Nationwide Mut. Ins. Co.*, 412 F. Supp. 2d 431, 435 (D. Del. 2006) (citation omitted). The moving party bears the burden of persuasion. *Id.*

## IV. DISCUSSION

### A. Personal Jurisdiction Pursuant To 6 Del. C. § 18-109(a)

The defendants contend that there is no basis "for exercising personal jurisdiction over the non-Delaware defendants (i.e., all defendants other than Elan Suisse USA), much less justification under the Due Process Clause." (D.I. 31, at 8.) Christ asserts that Cormick is subject to personal jurisdiction in Delaware pursuant to 6 Del. C. § 18-109(a) because he is "a person who participates materially in the management of Elan Suisse USA." (D.I. 29, at 3.) Under the first step of this analysis, the court must determine if this section of the Delaware long-arm statute "warrant[s] the exercise of jurisdiction over" Cormick. *Telcordia Techs., Inc. v. Alcatel S.A.*, C.A. No. 04-874 GMS, 2005 WL 1268061, *2 (D. Del. May 27, 2005). Section 18-109(a) provides in pertinent part that: "[a] manager . . . of a limited liability company may be served with process . . . in all civil actions or proceedings brought in the State of Delaware *involving or relating to the business of the limited liability company or a violation by the manager . . . of a duty to the limited liability company.*" (emphasis added)

The statute contemplates the exercise of jurisdiction over Cormick if he breached a fiduciary duty in a managerial capacity. *See, e.g., Assist Stock Mgmt. L.L.C. v. Rosheim*, 753

A.2d 974, 978 (Del. Ch. 2000). In this case, however, there is no allegation of a breach of fiduciary duty. In *Rosheim*, "Vice Chancellor Lamb respected the General Assembly's decision to write § 18-109 more broadly . . . , by investing th[e] court with personal jurisdiction over managers in disputes 'involving or relating to the business of' their LLCs." *Cornerstone Techs., LLC v. Conrad,* 2003 WL 1787959, *12 (Del. Ch. Mar. 31, 2003) (citations omitted). While § 18-109 may be "susceptible to too broad an application, . . . [p]rotection against unconstitutional application of [the] statute[] [may] be provided on a case-by-case basis by applying the minimum-contacts analysis mandated by due process." *Rosheim*, 753 A.2d at 980 (citation and internal quotations omitted).

The Vice Chancellor concluded in *Rosheim* that *in personum* jurisdiction was proper over the defendant – who had no Delaware contact beyond his involvement as founder and manager of AIT, a Delaware corporation – "to adjudicate the matter because: (1) the allegations against Rosheim focus[ed] centrally on his 'rights, duties and obligations' as a manager of a Delaware LLC; (2) the resolution of this matter [was] 'inextricably bound up in Delaware law;' and (3) Delaware [had] a strong interest in providing a forum for disputes relating to the ability of managers of an LLC formed under its law to properly discharge their respective managerial functions." *Id.* at 981.

Under the facts alleged, Cormick meets the definition of manager found in § 18-109(a) and is subject to personal jurisdiction under Delaware's long-arm statute. As defined in § 18-109(a), the term manager refers to (i) a person who is a manager as defined in § 18-101(10)[2] of this title and (ii) a person, whether or not a member of a limited liability company, who although

---

[2] Pursuant to 6 Del. C. § 18-101(10), "manager" is defined as "a person who is named as a manager of a limited liability company in, or designated as a manager of a limited liability company pursuant to, a limited liability company agreement or similar instrument under which the limited liability company is formed."

not a manager as defined in § 18-101(10) of this title, participates materially in the management of the limited liability company. Christ has set forth enough facts in his complaint to satisfy the latter definition of manager, as provided in § 18-109(a). According to Christ's amended complaint, Cormick caused Elan Suisse USA to be formed as a limited liability company in Delaware on March 15, 2004. (D.I. 29, at 5.) As the "sole initial member of the limited liability company," Cormick was the only person capable of managing the affairs of Elan Suisse USA. (*Id*.) Likewise, Cormick participated materially in the formation and management of Elan Suisse USA, a limited liability company.

Christ also sets forth facts showing that Cormick "purposefully availed [himself] of the privilege of conducting activities within the state of Delaware." *See Burger King,* 471 U.S. at 475. Cormick's contacts fall short of continuous and systematic given that the only alleged contact with Delaware is Cormick's formation of Elan Suisse USA. This district has held, however, that "[a] single act of incorporation in Delaware will suffice to confer personal jurisdiction over a nonresident defendant if such purposeful activity in Delaware is an integral component of the total transaction to which plaintiff's cause of action relates." *Arenson*, 421 F. Supp. 2d at 804 (*citing Cairns v. Gelmon*, 1998 WL 276226, *3 (Del. Ch. 1998)). Cormick's single contact with Delaware is directly related to the cause of action before the court, if it accepts as true as it must, that the formation of Elan Suisse USA was part of a scheme to defraud Christ.[3] Christ further alleges that "Cormick offered to repay plaintiff the $250,000 Christ had wired previously to Cormick." (D.I. 29, at 5.) Accepting these allegations as true, like *Rosheim,* one aspect of this case will fall upon the "rights, duties and obligations" of Cormick as sole founder and manager of Elan Suisse USA to perform on this obligation to repay Christ. Finally,

---

[3] The record reflects that Christ transferred funds to Cormick both before and after the formation of Elan Suisse USA as a Delaware limited liability company. (*See* D.I. 32-2, Christ Aff., Ex. A.)

like *Rosheim*, the state of Delaware has a strong interest in providing a forum for the resolution of disputes relating to not only the discharge of managerial functions within an LLC formed in Delaware but also relating to the use of the laws of incorporation of a limited liability company.

Given Cormick's managerial duties over Elan Suisse USA, the long arm statute will operate to bring Cormick within the court's jurisdiction. As Christ's allegations relate to Cormick's act of founding Elan Suisse USA under the limited liability corporate law of Delaware, the maintenance of this suit will not offend traditional notions of fair play and substantial justice.

     **B.**     **Personal Jurisdiction Pursuant To 10 Del. C. § 3104**

Christ alleges that Elan Suisse, Elan Suisse USA, Nicogel, Marshall, Walters, and Mercari conspired with Cormick to perpetrate a fraud; therefore, the defendants are subject to personal jurisdiction pursuant to 10 Del. C. § 3104.[4] (D.I. 29, at 9.) The statute provides in pertinent part:

> (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent: (1) Transacts any business or performs any character of work or service in the State; ... (3) Causes tortious injury in the State by an act or omission in this State;

§ 3104(c). The Delaware Supreme Court, in *Istituto Bancario Italiano SpA v. Hunter Eng'g Co., Inc.,* 449 A.2d 210, 225 (Del. 1982), held that "a conspirator who is absent from the forum state is subject to the jurisdiction of the court, assuming he is properly served under state law, if the plaintiff can make a factual showing that: (1) a conspiracy to defraud existed; (2) the defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know of the act

---

[4] Under 10 Del. C. § 3104(a), the term "person" includes any natural person, association, partnership or corporation.

in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy." *See also Resource Ventures, Inc. v. Resources Mgmt. Int'l, Inc.*, 42 F. Supp. 2d 423, 434 (D. Del. 1999).

In short, when a defendant voluntarily participates in a conspiracy with knowledge of its acts in or effects in the forum state, he "can be said to have purposefully availed himself of the privilege of conducting activities in the forum state, thereby fairly invoking the benefits and burdens of its laws*." Istituto Bancario,* 449 A.2d at 225. This participation qualifies as substantial contact with the jurisdiction such that it would be reasonable to require the defendant to defend an action there. *Id.*

Christ fails to allege facts sufficient to establish that defendants Marshall, Walters, Nicogel, Mercari, and Elan Suisse are subject to personal jurisdiction in Delaware. Christ's amended complaint and associated pleadings do not present facts that establish the existence of a conspiracy, let alone that any of these non-Delaware defendants were participants in or knew of a conspiracy to defraud Christ. The amended complaint merely pleads the existence of relationships and contacts among the defendants. Based on these connections and assumptions, Christ invites the court to speculate as to the defendants' knowledge and participation in an alleged conspiracy for purposes of justifying the court's exercise of jurisdiction over them. While the court must accept all well-pleaded facts as true, the court need not credit bald assertions and speculation in a complaint. As such, the court finds that, based on the *facts*

alleged, the court lacks personal jurisdiction over Marshall, Walters, Nicogel, Mercari, and Elan Suisse.[5]

### C.    Motion to Dismiss for Failure to State Claim of Civil Conspiracy

The court finds that Christ fails to allege sufficient facts to claim a civil conspiracy among the defendants. To state a claim of civil conspiracy, in Delaware, the plaintiff must show: "(1) a combination of two or more persons; (2) an unlawful act done to further the conspiracy; and (3) damages." *Eames*, 412 F. Supp. 2d at 438. The Pennsylvania standard is similar, requiring the plaintiff to allege: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *In re Student Finance Corp.*, 335 B.R. 539, 552 (D. Del. 2005) (citation omitted).

Christ alleges that "Cormick formed Elan Suisse USA in connection with and in furtherance of his unlawful scheme to defraud plaintiff and induce plaintiff to pay Cormick $250,000." (D.I. 29, at 8.) Christ's claim lacks any facts or indication that there was a combination or agreement to perpetrate fraud between Cormick, Elan Suisse USA, and Elan Suisse. Christ's conclusory allegations do not satisfy the pleading requirement.

### D.    Statute of Limitations

The defendants have failed to meet their burden to show why Christ's fraud claim should be dismissed. "[A] federal court, sitting in diversity, follows the forum's choice of law rules to determine the applicable statute of limitations." *David B. Lilly Co., Inc. v. Fisher,* 18 F.3d 1112,

---

[5] While the court would ordinarily entertain a request for leave to amend an insufficiently pled claim, the court notes that Christ made such an attempt almost a year after filing its initial complaint. (*See* D.I. 29.) Christ's amended complaint, however, falls substantially short of the standard necessary to state a *prima facie* claim for civil conspiracy. Accordingly, the court will deny Christ's request for leave to amend his conspiracy claim.

1117 (3d Cir. 1994) (citations omitted). The court must use the same choice of law rules to determine which jurisdiction's law should be applied to the claim. *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 379 (D. Del. 1990) (citation omitted). Generally in tort cases, Delaware courts have followed "the principle of *lex loci delicti*, and [have] appl[ied] the law of the place of the injury." *Id.* (citation omitted). However, "[i]n the case of intentional torts, such as fraud, the *lex loci deliciti* rule requires a court to apply the substantive law of the state or, in this case, country where the defendant's wrongful conduct primarily occurred." *Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp.*, 576 F. Supp. 107, 127-28 (D. Del. 1983) (citing *Johnston Assocs., Inc. v. Rohm & Haas Co.,* 560 F. Supp. 916, 918 (D. Del. 1983)). The rationale follows that, where there is an action based upon an intentional tort, "the punitive element is dominant, [and the] state finds [the] conduct wrongful because its people regard it as sinful or offensive to public morals and the conduct, not the injury, is critical for applying the applicable law." *Johnston Assocs.,* 560 F. Supp. at 918 (D. Del. 1983) (citation and internal quotations omitted). The aforementioned policy appears to be in accord with the Delaware Supreme Court's adoption of the most significant relationship test, "set forth in the Restatement (Second) of Conflict of Law § 145(1) (1971) for analyzing choice of law questions relating to tort claims." *Lilly*, 18 F.3d at 1117; *see also*, *Johnston Assocs,* 560 F. Supp. at 918 (noting that the Restatement stands for the proposition that "rights and liabilities of parties with respect to tort action are determined by local law of [the] state which has the most significant relationship to the occurrence").

To address the statute of limitations, this court must first discern which forum's laws apply and specifically where Cormick's acts giving rise to this claim occurred. Given Christ's present allegations, it is difficult to determine exactly where Cormick's conduct occurred.

13

Cormick may have caused the formation of Elan Suisse USA in a remote corner of the world, without ever setting foot in Delaware. It is also difficult to locate the origin of emails and phone calls used to negotiate the allegedly fraudulent deal. For the purposes of this motion, however, the defendants have failed to show why this court should not consider the act of incorporation under the laws of Delaware as an act that has one of the most, if not the most, significant relationship to the alleged fraud upon Christ in Delaware. This act brings Christ's claim of fraud under Delaware law and, therefore, under Delaware's three year statute of limitations. At this stage of the proceedings, in the absence of a clearer and more thorough illumination of the issues by the parties' briefs, the court finds it prudent to allow the claim of fraud to proceed.

### E. Motion to Stay Pending Resolution of Parallel Action in South Africa

International comity has been defined as "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to the international duty and convenience." *Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92 (2d Cir. 2006) (*citing Hilton v. Guyot,* 159 U.S. 113, 163-64 (1895)). While the federal courts have a "virtually unflagging obligation to exercise the jurisdiction conferred on them by Congress, in exceptional cases, a federal court should stay a suit and await the outcome of parallel proceedings as a matter of wise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation." *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 898 (7th Cir. 1999) (*citing Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (internal quotations omitted)). Ordinarily, "a party invoking the doctrine of international comity seeks the recognition of a foreign judgment." *Royal & Sun,* 466 F.3d at 92. In the

present case, the defendants contend that this court should stay the present action in favor of a similar pending action in South Africa, (D.I. 31, at 29,) an "alternate forum [that] is not the tribunal of a state of the federal union to which, under our Constitution, we owe a special obligation of comity." *Finova Capital Corp.,* 180 F. 3d at 898 (citation omitted).

For the most part, "federal courts are reluctant to decline jurisdiction solely on the basis of concurrent proceedings in another jurisdiction." *Evergreen Marine Corp. v. Welgrow Int'l Inc.,* 942 F. Supp. 201, 207 (S.D.N.Y. 1996). "[P]arallel proceedings on the same in personam claim should ordinarily be allowed to proceed simultaneously." *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 36 (2d Cir. 1987) (quoting *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 926 (D.C. Cir. 1984)) (internal quotations omitted).

The decision, whether to stay a proceeding based upon the existence of parallel litigation in a foreign forum "does not rest on a mechanical checklist, but on a careful balancing of the important factors . . . as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Royal & Sun,* 466 F.3d at 94 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983). "[A] district court should be guided by the principles upon which international comity is based: the proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency." *Royal & Sun*, 466 F.3d at 94. To address these principles, courts have considered a litany of factors under the guidance of the Supreme Court, including but not limited to: "the similarity of the issues, the order in which the actions were filed, the adequacy of the alternate forum, the potential prejudice to either party, the convenience of the parties, the connection between the litigation and the

15

United States, and the connection between the litigation and the foreign jurisdiction." *Royal & Sun,* 466 F.3d at 94; *see also Finova Capital Corp.*, 180 F.3d at 898-99.

One factor that weighs heavily in favor of a stay pending the resolution of the South African proceedings is that the High Court of South Africa was first to exercise jurisdiction over the subject matter of the current dispute. In addition, the proceedings are parallel, as the main parties, Christ and Cormick, are included in both actions. The actions seek the same relief – the return of the $250,000 investment and other damages related thereto. There is, however, a high risk of inadequate relief in the South African court, given Cormick's decision to dispute personal jurisdiction. As Christ contends, it is unlikely that the South African court will exercise jurisdiction over Cormick. Given the aforementioned precedent that parallel proceedings in such an instance are ordinarily allowed to proceed simultaneously, the court will allow Christ's claim to proceed despite the prior-filed action in South Africa.

### F. Motion for Sanctions

The defendants request that the court sanction Christ for: (1) maintaining a prior-filed action alleging the same facts and seeking the same relief against Cormick in South Africa; (2) impleading Cormick, Elan Suisse, Nicogel, Marshall, and Walters; and (3) making false accusations. (D.I. 31, at 32.) The Third Circuit recognizes that the "[i]mposition of attorney's fees and costs . . . is reserved for behavior of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation." *In Re: Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 795 (3d Cir. 1999) (internal quotations and citations omitted); *see also*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (cited for the proposition that a court may assess fees under inherent powers when a party has acted "in bad faith, vexatiously,

wantonly, or for oppressive reasons") (internal citations omitted). The defendants have not persuaded the court that sanctions against Christ are warranted.

## V. CONCLUSION

The court will dismiss Elan Suisse, Nicogel, Walters, Marshall, and Mercari for lack of personal jurisdiction, thus retaining jurisdiction over Cormick and Elan Suisse USA. Further, the court will dismiss Christ's civil conspiracy claim for failure to state a claim. The defendants' motion to dismiss Christ's fraud claim as time-barred under the statute of limitations will be denied. The defendants' motion to stay pending resolution of the parallel action in South Africa will be denied. Last, the defendants' request for sanctions will be denied.

|  |  |
|---|---|
| Dated: July 10, 2007 | /s/ Gregory M. Sleet<br>UNITED STATES DISTRICT JUDGE |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT D. CHRIST, | ) |
| Plaintiff, | ) |
| v. | ) |
| BRETT J. CORMICK, ELAN SUISSE INTERNATIONAL HOLDINGS (USA) LLC, ELAN SUISSE (PTY) LTD., NICOGEL LTD., JOHN WALTERS, DIANNE MARSHALL and MERCARI FINANCIAL SERVICES (PTY) LTD., | ) C.A. No. 06-275-GMS |
| Defendants. | ) |

**ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. The Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (D.I. 30) is GRANTED in part and DENIED in part.

    a. The motion is GRANTED as to defendants Elan Suisse, Nicogel, Marshall, Walters, and Mercari.

    b. The motion is DENIED as to defendants Cormick and Elan Suisse USA.

2. The Defendants' Motion to Dismiss for Failure to State a Claim for Conspiracy (D.I. 30) is GRANTED.

3. The Plaintiff's request for leave to amend his claim for civil conspiracy (D.I. 32, at 29) is DENIED.

4. The Defendants' Motion to Dismiss the Fraud and Conspiracy Claims for Failure to Satisfy the Statute of Limitations (D.I. 30) is DENIED.

5. The Defendants' Alternative Motion to Stay Pending Resolution of Prior-Filed Action in South Africa (D.I. 30) is DENIED.

6. The Defendants' Motion for Sanctions (D.I. 30) is DENIED.

/s/ Gregory M. Sleet
Dated: July 10, 2007                    UNITED STATES DISTRICT JUDGE