IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT D. CHRIST, | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRETT J. CORMICK and ELAN SUISSE INTERNATIONAL HOLDINGS (USA) LLC, | ) ) ) | C.A. No. 06-275-GMS |
| | ) | |
| Defendants/Counterclaim Plaintiffs. | ) ) | |

**UNOPPOSED MOTION OF DEFENDANTS FOR PERMISSION TO FILE A SUR-REPLY BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendants/Counterclaim Plaintiffs Brett J. Cormick and Elan Suisse International Holdings (USA) LLC hereby submit this unopposed motion[1], pursuant to D. Del. Local 7.1.2(b), seeking permission to file a sur-reply brief in opposition to plaintiff's Motion for Partial Summary Judgment (the "Motion"), and in support thereof state as follows:

1. In his opening brief in support of the Motion, plaintiff argued that a legally binding contract was formed based on an "offer" in an e-mail dated September 9, 2004, and an "acceptance" contained in a letter dated November 30, 2004. (D.I. 75).

2. In their answering brief, defendants demonstrated that the November 30, 2004 "acceptance" was ineffective as plaintiff had rejected the "offer" because in an e-mail dated

---

[1] As indicated in the certification attached hereto, plaintiff has stated that he does not object to defendants filing a sur-reply brief, but is unwilling to enter into a stipulation because he believes it is precluded by the terms of Local Rule 7.1.2(b).

September 16, 2004, plaintiff proposed new and different terms, thereby constituting in the law a rejection of the offer and a counteroffer. (D.I. 77).

3. In his reply brief, plaintiff submitted new evidence not included in his opening brief, e-mails dated September 10 and 13, 2004, and changed his theory to claim that the acceptance actually occurred on September 13, not November 30. (D.I. 78-79).

4. The introduction of new evidence and a new legal theory in a reply brief justifies the Court in allowing a sur-reply brief, so as to permit a fair opportunity to respond to the new theory and evidence. *In re ML-Lee Acquisition Fund II, L.P. and ML-Lee Acquisition Fund (Retirement Accounts) II, L.P. Sec. Litig.*, 848 F.Supp. 527, 566 n.28 (D. Del. 1994); *Fredrick v. Mercedes-Benz USA, LLC*, 366 F.Supp.2d 1190, 1197 (N.D. Ca. 2005); *Lintz v. American General Finance, Inc.*, 50 F.Supp.2d 1074, 1076 n.1 (D. Kan. 1999).

5. Plaintiff does not object to the filing of the sur-reply brief, which is attached hereto as Exhibit A.

WHEREFORE, for the foregoing reasons, defendants respectfully request that the Court enter the attached form of Order granting them permission to file a sur-reply brief.

Dated: January 22, 2008

                                                            Respectfully submitted,

                                                            /s/ David L. Finger
David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE 19801-1155
(302) 884-6766
Attorney for defendants/counterclaim plaintiffs Brett J. Cormick and Elan Suisse International Holdings (USA) LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT D. CHRIST, ) | |
| ) | |
| Plaintiff/Counterclaim Defendant, ) | |
| ) | |
| v. ) | |
| ) | |
| BRETT J. CORMICK and ELAN SUISSE ) | C.A. No. 06-275-GMS |
| INTERNATIONAL HOLDINGS (USA) ) | |
| LLC, ) | |
| ) | |
| Defendants/Counterclaim Plaintiffs. ) | |
| _____) | |

## **ORDER**

On this _____ day of _____, 2008, IT IS HEREBY ORDERED THAT:

1. Defendants' Unopposed Motion for Permission to File a Sur-reply Brief in Opposition to Plaintiff's Motion for Summary Judgment (the "Motion") is GRANTED.

2. The Sur-Reply Brief attached as an exhibit to the Motion shall be deemed the filed and operable Sur-Reply Brief, without the need for defendants to file the sur-reply brief separately.

_____
Sleet, J.

## STATEMENT PURSUANT TO LOCAL RULE 7.1.1

Pursuant to D. Del. Local Rule 7.1.1, I, David L. Finger, hereby aver that I asked counsel for plaintiff whether he would agree to stipulate to permitting defendants to file a sur-reply brief in opposition to plaintiff's motion for summary judgment. Counsel for plaintiff responded that he believed that Local Rule 7.1.2(b) did not permit parties to stipulate to additional briefing, but that plaintiff had no objection to the motion, provided that the sur-reply brief was filed within seven (7) days of obtaining permission from the Court.

/s/ David L. Finger
David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE 19801-1155
(302) 884-6766
Attorney for defendants/counterclaim plaintiffs Brett J. Cormick and Elan Suisse International Holdings (USA) LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT D. CHRIST, | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRETT J. CORMICK and ELAN SUISSE INTERNATIONAL HOLDINGS (USA) LLC, | ) ) ) | C.A. No. 06-275-GMS |
| | ) | |
| Defendants/Counterclaim Plaintiffs. | ) | |
| _____ | ) | |

**SUR-REPLY BRIEF OF BRETT J. CORMICK AND
ELAN SUISSE INTERNATIONAL HOLDINGS (USA) LLC IN OPPOSITION TO
ROBERT D. CHRIST'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE 19801-1155
(302) 884-6766
Attorney for defendants/counterclaim plaintiffs Brett J. Cormick and Elan Suisse International Holdings (USA) LLC

Dated: January 22, 2008

**TABLE OF CONTENTS**

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.   CHRIST HAS FAILED TO ESTABLISH ENTITLEMENT TO SUMMARY JUDGMENT
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.   AS THE "ACCEPTANCE" VARIED FROM THE "OFFER," NO CONTRACT
WAS EVER FORMED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.   ANY PROMISE WAS CONDITIONAL, AND THE CONDITION HAS NOT BEEN
FULFILLED THROUGH NO FAULT OF CORMICK'S. . . . . . . . . . . . . . . . . . . 4

    C.   THERE IS NO EVIDENCE THAT CORMICK WAS NOT DILIGENT IN
SEEKING TO SELL CHRIST'S INTEREST. . . . . . . . . . . . . . . . . . . . . . . . . . . 5

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**TABLE OF AUTHORITIES**

**Cases**

*American University v. Todd*, 1 A.2d 595 (Del. Super. 1938).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*B.L. Montague Co. v. Somers*, 96 S.E.2d 629 (Ga. App. 1957).. . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Devex Corp. v. General Motors Corp.*, 569 F.Supp. 1354 (D. Del. 1983), *aff'd mem.*, 746 F.2d 1466, 1468 & 1469 (3rd Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Friel v. Jones*, 206 A.2d 232 (Del. Ch. 1964), *aff'd*, 212 A.2d 609 (Del. 1965). . . . . . . . . . . . . . . 3

*Gibson v. Mayor & Council of the City of Wilmington*, 355 F.3d 215 (3rd Cir. 2004). . . . . . . . . 4

*PAMI-LDMB I, LLC v. EMB-NHC, L.L.C.*, 857 A.2d 998 (Del. Ch. 2004). . . . . . . . . . . . . . . . . . 3

*Patterson v. Verizon Wireless*, 122 P.3d 1193 (Mont. 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*People v. Henderson*, 809 N.E.2d 1224 (Ill. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Phoenix Oil Co. v. Mackenzie Oil Co.*, 154 A. 894 (Del. 1930). . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Scaife v. Associated Air Center, Inc.*, 100 F.3d 406 (5th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . 4

*Talecris Biotherapeutics, Inc. v. Baxter Intern., Inc.*, 510 F.Supp.2d 356 (D. Del. 2007). . . . . . . 4

*Terry Contracting, Inc. v. Commercial Ins. Co. of Newark, N.J.*, 156 N.Y.S.2d 285 (N.Y. Supr. 1956), *aff'd*, 159 N.Y.S.2d 676 (N.Y.A.D. 1st Dept.), *app. dismissed*, 143 N.E.2d 346 (N.Y. 1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Tracy v. Prudential Ins. Co. of America*, 101 A.2d 321 (Del. Ch. 1953). . . . . . . . . . . . . . . . . . . . 5

*Trautwein v. Leavey*, 472 P.2d 776 (Wyo. 1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Other authorities**

R.H. Christie, *Business Law in Zimbabwe* (2nd ed. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**ARGUMENT**

I.  **CHRIST HAS FAILED TO ESTABLISH ENTITLEMENT TO SUMMARY JUDGMENT.**

In his opening brief, Christ argued that (i) Cormick, in an e-mail dated September 9, 2004, offered to reimburse Christ's investment in Elan Suisse, and (ii) Christ accepted the offer in a letter from his lawyers on November 30, 2004. (D.I. 75).

On the basis of the specific argument presented by Christ, Cormick responded by demonstrating that prior to the November 30 "acceptance," there were further negotiations and changes in terms which, under law, constituted a rejection of the original offer such that it could not be accepted on November 30. (Cormick Answering Brief ("CAB"), D.I. 77 at 4-7).

Faced with a clear refutation of his claim that the November 30 "acceptance" was not legally effective, Christ in his reply brief changed his theory, and introduced new evidence that he did not include in his opening brief.

Christ's new argument is that, instead of accepting the "offer" on November 30, he "indisputably" accepted the offer in an e-mail dated September 13, in which he said "I tell you what, Brett, *per your offer below* please liquidate my position and send my money ($250,000 USD plus the $8,000 USD I spent for the web site development) back to my Wachovia account from your National Westminster account...Please do so by October 15." (Christ Reply Brief ("CRB") D.I. 78 at 6 & D.I. 79 Ex. M, italics added).

The "offer below," however, was not the offer in the September 9 e-mail upon which Christ previously claimed to contain the offer. As the e-mail evidence submitted by Christ makes clear, the "offer" was contained in an e-mail from Cormick to Christ dated September 10, in which Cormick

1

writes: "if you are out, no sweat, I will just *sell your position* and get your money back *ASAP*." (*Id.*, italics added).

As demonstrated below, (i) the acceptance differed from the offer, and so no contract was formed, (ii) even if there was a promise, it was a conditional promise, and Christ has not established Cormick's ability to pay, and (iii) the "offer" to return Christ's investment was contingent upon the sale of his interest, and (a) there is no evidence that Cormick did not diligently attempt to sell his interest, and (b) the failure to sell his interest is Christ's own fault.

### A. AS THE "ACCEPTANCE" VARIED FROM THE "OFFER," NO CONTRACT WAS EVER FORMED.

As set forth in Cormick's answering brief, under both Delaware and Zimbabwe law, an acceptance must mirror the terms of the offer. If an offeree responds by modifying the terms of the offer, it is deemed in the law a rejection of the offer and the submission of a counteroffer. (CAB 9-10).

In the September 10 e-mail, Cormick "offered" to return Christ's investment "ASAP" from the proceeds of a sale of his interest. However, in his September 13 e-mail, Christ did not accept that. He added a demand for an additional $8,000, which was not part of the investment to be repaid from the sale ("money back"). Also, Christ did not accept payment "ASAP," but instead insisted on payment within approximately one month (with no reason to know whether his interest could be sold within one month). Moreover, in the September 10 e-mail Cormick offered to sell Christ's stock and transfer the proceeds to Christ, but Christ is claiming in his reply brief that liquidation (sale of Christ's interest) was not the only way to perform under the alleged contract. (CRB 9-10). This

2

indicates that Christ's position was that liquidation was not what he accepted, although it was all that Cormick offered.

These changes rendered the "acceptance" a "qualified acceptance," and so constituted a rejection and counteroffer. *Devex Corp. v. General Motors Corp.*, 569 F.Supp. 1354, 1363 (D. Del. 1983), *aff'd mem.*, 746 F.2d 1466, 1468 & 1469 (3rd Cir. 1984). *See also B.L. Montague Co. v. Somers*, 96 S.E.2d 629, 643-33 (Ga. App. 1957) (changing offer with no fixed date of performance to fixed date of performance plus modifying payment by excluding taxes from purchase price constituted counteroffer); *Terry Contracting, Inc. v. Commercial Ins. Co. of Newark, N.J.*, 156 N.Y.S.2d 285, 287 (N.Y. Supr. 1956), *aff'd*, 159 N.Y.S.2d 676 (N.Y.A.D. 1st Dept.), *app. dismissed*, 143 N.E.2d 346 (N.Y. 1957) (changing time of performance and adding amount for a bond constituted counteroffer).

As set forth in Cormick's Answering Brief (CAB 9-10), where an acceptance adds new and different terms, it constitutes a rejection and counteroffer, and so is not effective to create a legally enforceable contract. *PAMI-LDMB I, LLC v. EMB-NHC, L.L.C.*, 857 A.2d 998, 1015 (Del. Ch. 2004)*; Friel v. Jones*, 206 A.2d 232, 233-34 (Del. Ch. 1964), *aff'd*, 212 A.2d 609 (Del. 1965); R.H. Christie, *Business Law in Zimbabwe* 36, 39 (2nd ed. 1998).

Moreover, once there has been a rejection of an offer, the offeree may not thereafter revive the offer and create a binding contract by purporting to accept it. *Patterson v. Verizon Wireless*, 122 P.3d 1193, 1195 (Mont. 2005); *People v. Henderson*, 809 N.E.2d 1224, 1232 (Ill. 2004); *Trautwein v. Leavey*, 472 P.2d 776, 779 (Wyo. 1970). As such, there was no enforceable contract between Cormick and Christ.

The unambiguous evidence not only justifies denying Christ's motion for summary judgment, but also warrants entering summary judgment in favor of Cormick on Christ's breach of contract claim.[1]

### B. ANY PROMISE WAS CONDITIONAL, AND THE CONDITION HAS NOT BEEN FULFILLED THROUGH NO FAULT OF CORMICK'S.

Even if the Court were to assume that there was a legally binding contract between Christ and Cormick (which there was not), Cormick's promise was conditional. The "offer," as set forth in the September 10 e-mail, consisted of two parts: (1) Cormick would sell Christ's interest to a third party, and send the proceeds to Christ, and (2) this would occur ASAP (as soon as possible). As Christ, in the September 13 e-mail, "accepts" the "offer below," meaning the "offer" contained in the September 10 e-mail, the rights and liabilities of the parties must be determined according to the terms of the "offer."

Cormick offered to sell Christ's interest "ASAP," meaning "as soon as possible." This renders any promise conditional. *American University v. Todd*, 1 A.2d 595, 597-98 (Del. Super.

---

[1]

As noted in Cormick's Answering Brief (CAB 10-11 n. 5), the Court has authority to grant summary judgment in favor of the non-moving party even if no cross-motion for summary judgment has been filed. *Gibson v. Mayor & Council of the City of Wilmington*, 355 F.3d 215, 222 (3rd Cir. 2004); *Talecris Biotherapeutics, Inc. v. Baxter Intern., Inc.*, 510 F.Supp.2d 356, 362 (D. Del. 2007).

In this case, where the evidence of Christ's counteroffer/rejection is in writing, the issue of whether or not there was a clear and unequivocal acceptance is one of law for the Court. *Scaife v. Associated Air Center, Inc.*, 100 F.3d 406, 410 (5th Cir. 1996).

4

1938).² A conditional promise may not be enforced unless the plaintiff proves as part of his affirmative case that the defendant has the ability to pay. *Id.* at 598.

Christ has not submitted any evidence showing that Cormick has a present ability to pay. To the contrary, Christ previously submitted evidence that Cormick is impecunious and has no ability to pay. (D.I. 61 Ex. A). By filing a motion for summary judgment, Christ has conceded that the record is sufficient on this issue and that further discovery will not assist his case. As there is no dispute of fact on this point, the Court should deny Christ's motion for summary judgment on his breach of contract claim and enter summary judgment in favor of Cormick.

### C. THERE IS NO EVIDENCE THAT CORMICK WAS NOT DILIGENT IN SEEKING TO SELL CHRIST'S INTEREST.

As to the first aspect of the "offer," it is clear that Cormick did not make an offer simply to refund Christ's money on demand. Rather, Cormick offered to sell Christ's interest and then pay the proceeds over to Christ. Christ understood this to be a term of the offer, as evidenced by his e-mail dated September 17, 2005, 8:53 p.m., in which he again asks that his interest be liquidated, and adds "I hope the new investor is easier to deal with than me." (D.I. 77 Cormick Decl. Ex. 3).

When a promise is made to pay money out of a fund to be realized in a certain way, there is an implied promise to use reasonable diligence in performing the act upon which the payment is contingent. The right to collect from the promisor without the occurrence of the event arises only

---

² Cormick has not located any Zimbabwe law on this point, and so assumes it is the same as Delaware law. *See Tracy v. Prudential Ins. Co. of America*, 101 A.2d 321, 322 (Del. Ch. 1953) (assuming Maryland law is the same as Delaware law in the absence of proof of foreign law).

if the promisor is not diligent in performing the act. *Phoenix Oil Co. v. Mackenzie Oil Co.*, 154 A. 894, 899 (Del. 1930).[3]

In his affidavit and counterclaim (which he verified, D.I. 77, Cormick Decl. ¶2), Cormick set out the details of his efforts to sell Christ's interest. On November 19, 2004, Norman Botha from Barnard Jacobs Mallet, the largest independent stockbroker in South Africa, flew to Harare for two days to give an institutional presentation on the extraordinary progress of the Elan Suisse group to that date. The audience was carefully selected from amongst the increasing number of interested investors ready to purchase Christ's equity ownership in ESUS. The presentation luncheon was organized at an outdoor restaurant in Harare and was attended by many wealthy businessmen invited for the specific purpose of liquidating Christ's position in ESUS. Interest was very high. (Counterclaim ¶70).

A Q&A session followed the presentation which lasted for about 90 minutes to ensure that the potential new investors would feel comfortable buying out Christ's position. All attendees indeed seemed to be very happy both with the level of institutional commitment and excitement from the South African financial markets, the financial engineering plans to increase Elan Suisse (Pty) Ltd.'s stock price, and the exit strategy for the company. (Counterclaim ¶72).

In the meantime, Norman Botha confirmed in writing that there would be no problem bringing in some investors and, with the very high level of interest already demonstrated, Cormick was able to convey this to Christ by assuring him that there would be no problem in liquidating his stock and getting his money back. Since Christ seemed to be getting more erratic with each day,

---

[3] Again, Cormick has not been able to locate any Zimbabwe case law on this point, and so assumes that it is the same as Delaware law.

Cormick decided that it was a good thing to keep him as involved and abreast of the process as much as possible. (Counterclaim ¶74).

However, while Cormick was having Christ's revised share subscription documents prepared and forwarded to him so that Christ could sign them in order for Cormick to effect the liquidation of his position as per Christ's request, and while Cormick was organizing the investors meetings (including the one with Norman Botha) to liquidate his position, Christ suddenly decided to show his most recent correspondence (in which he changed and re-debated his position as it was being sold) to a lawyer in the U.S. Christ apparently did so without telling this lawyer that he had previously issued a request to have his position liquidated and that Cormick was complying with that request. (Counterclaim ¶75).

While Cormick was actually in an advanced closing negotiations with a potential investor, Cormick was informed that Christ had retained the services of an attorney in South Africa and intended to bring suit to collect what he mis-characterized as a "loan" for $250,000. (Counterclaim ¶79).

Given Christ's legal maneuvering, it was necessary to halt the sale of Christ's interest until this matter was sorted out given that Cormick felt that it would be unethical, illegal and not acceptable to market his shares while forced to litigate with him. (Counterclaim ¶80).

Christ's legal action also impeded the sale of his interest because his withdrawal from the project caused the U.S. management services operation to become inoperative. In reality, this meant that it would not be possible to launch the U.S. Government Bond Fund in the fashion in which Cormick had intended, because there would be no effective U.S. management services company in place to specifically service the escalating demand for the product. (Counterclaim ¶81).

Initially, there is a question as to whether expert testimony is required to establish what constitutes "reasonable diligence" in the context of a sale of an interest in a startup company in South Africa. If expert testimony is required, Christ's motion fails for lack of such expert testimony.

Even if expert testimony is not required, Christ cannot establish as a matter of law that Cormick's efforts to sell Christ's interest in Elan Suisse was not reasonably diligent. It is a matter for a jury, and summary judgment is not appropriate.

**CONCLUSION**

Christ's new theory and new evidence fail for the same reason as did his old theory – the "acceptance" was ineffective as it sought to change the terms of the "offer," which rendered the "acceptance" a counteroffer, which in turn constituted a rejection and termination of the offer, which could not be revived by the subsequent letter dated November 30 from Christ's counsel purporting to accept the offer.

Alternately, any offer was conditional, and Christ failed to submit any evidence establishing as a matter of law either that Cormick is able to pay or that his actions in attempting to sell Christ's interest in Elan Suisse were not diligent.

WHEREFORE, for the foregoing reasons, defendants Brett J. Cormick and Elan Suisse International Holdings (USA), LLC respectfully request that this Court deny Christ's motion for summary judgment, and enter summary judgment in favor of defendants on Christ's breach of contract claim.

Dated: January 22, 2008

                                                Respectfully submitted,

                                                /s/ David L. Finger
David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE 19801-1155
(302) 884-6766
Attorney for defendants/counterclaim plaintiffs Brett J. Cormick and Elan Suisse International Holdings (USA) LLC