IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT D. CHRIST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRETT J. CORMICK and ELAN SUISSE INTERNATIONAL HOLDINGS (USA) LLC, | ) ) ) | C.A. No. 06-275-GMS |
| | ) | |
| Defendants. | ) | |
| | ) | |
| ELAN SUISSE, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-60-GMS |
| | ) | |
| ROBERT D. CHRIST, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE THE DEPOSITIONS TESTIMONY OF MR. CHRIST'S PROPOSED WITNESSES**[1]

1.  In their Motion *in Limine*, movants Brett J. Cormick, Elan Suisse International Holdings (USA) LLC and Elan Suisse, Ltd. demonstrated that the proposed deposition testimony of Alan Dean, Gordon Subloo, Carl Palmer and Graham Lyman was improper and inadmissible because (i) it constituted "character" evidence in violation of F.R.E. 404(b), (ii) the prejudice from its admission outweighed any probative value, (iii) some of the deponents improperly used notes during

---

[1] Subsequent to the filing of this motion *in limine*, Mr. Christ listed two of these deposed witnesses, Alan Dean and Gordon Subloo, as potential live witnesses. As such, this motion relates to their live testimony as well as their deposition testimony.

their deposition, and (iv) some of the deponents gave opinions on matters outside the experience of the average person, thereby constituting expert opinion, without prior notice of such expert opinion or any expert reports.

2. Mr. Christ first responds that "evidence" of other, similar, fraudulent acts are admissible under Rule 404(b) to demonstrate a plan or scheme to defraud, intent to profit by deception, and the absence of mistake. However, such evidence is not automatically admissible simply by claiming that it is for one of those purposes. *Becker v. Arco Chemical Co.*, 207 F.3d 176, 191 (3rd Cir. 2000).

3. The Third Circuit requires that, before Rule 404(b) evidence can be admitted, the proponent of the evidence must clearly articulate how the evidence fits into a chain of logical inferences, none of which may be that the defendant has the propensity to commit the wrong alleged. *Id.*. Mr. Christ did not do this.

4. Importantly, as explained in the motion *in limine*, the deposition testimony does not evidence fraud. Mr. Dean and Mr. Subloo merely complained that they believe that they did not receive the services promised. They did not identify representations upon which they relied, or establish that any such representations were false. Mr. Lyman concluded, based on his expertise (beyond the ken of the average juror) that Dr. Cormick's proposed investment structure was unethical (without adequate explanation to let a jury understand why). Mr. Palmer focused on the activities of another person, and attempted to implicate Dr. Cormick by association, with no real proof. Given the weakness of the evidence, the passage of time and the different nature of the acts complained of, the admission of such evidence would be unfairly prejudicial. *See, e.g., U.S. v. Womack*, Cr. A. No. 97-72 MMS, 1998 WL 24355, WL Op. at *5, Schwartz, J. (D. Del. Jan. 12, 1998) (denying "other fraud evidence" as unfairly prejudicial).

5.      As to Mr. Christ's Rule 404(a)(3) argument, character for truthfulness, Rule 608(b)(2) allows Mr. Christ may cross-examine Dr. Cormick on specific instances of conduct in the Court's discretion. It does not allow Mr. Christ to ask his own witnesses on direct about specific instances to prove action in conformance with character. If Mr. Christ wants to attack Dr. Cormick's character, he may only do it through reputation evidence (not bad act evidence), and only if the requirements of Rule 608(a) are met.

6.      As to the defamation claim, Dr. Cormick is challenging only those statements relating to the transaction between him and Mr. Christ, many of which predated Mr. Christ's awareness of these individuals, and is not addressing statements pertaining to Messrs. Subloo, Dean, Lyman and Palmer.[2] As such, evidence of other transactions occurring many years earlier does not prove that Dr. Cormick acted illegally or fraudulently in this transaction. Mr. Christ is simply attempting to sneak in improper character evidence through the back door.

WHEREFORE, for the foregoing reasons, the Court should not allow the depositions transcripts to be introduced at trial.

Dated: April 14, 2008                                    Respectfully submitted,

/s/ David L. Finger
David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE 19801-1155
(302) 884-6766
Attorney for Movants

---

[2] In not challenging statements on Mr. Christ's website pertaining to these men, Dr. Cormick does not concede the correctness or lawfulness of those statements. It is simply a fact that Dr. Cormick lacks the resources to fully and fairly obtain evidence to respond to those false statement.



Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 24355 (D.Del.)
**(Cite as: Not Reported in F.Supp., 1998 WL 24355)**

Page 1

U.S. v. Womack
D.Del.,1998.
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
UNITED STATES of America, Plaintiff,
v.
Shawn WOMACK, Brian Howell, and Abubakar Davis, Defendants.
**No. Crim.A. 97-72 MMS.**

Jan. 12, 1998.

Gregory M. Sleet, United States Attorney, and Richard G. Andrews, Assistant United States Attorney, Wilmington, Delaware, for plaintiff.
Penny Marshall, Federal Public Defender, Wilmington, Delaware, for defendant Womack.
Thomas A. Foley, Wilmington, Delaware, for defendant Howell.
James A. Natalie, Jr., of Woloshin, Tenenbaum & Natalie, Wilmington, Delaware, for defendant Davis.

## MEMORANDUM OPINION

SCHWARTZ, Senior J.

## INTRODUCTION

*1 Defendants Shawn Womack, Brian Howell, and Abubakar Davis were indicted on July 22, 1992, on one count of credit card fraud in violation of 18 U.S.C. §§ 1029(a)(2) & (c)(1) and (2), and one count of conspiring to commit credit card fraud, in violation of 18 U.S.C. § 1029(b)(2). Each defendant was also indicted on one count of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) & (2). All three defendants were joined for trial. On November 14, 1997, defendant Womack filed a motion pursuant to Fed.R.Evid. 609 to exclude a prior conviction for possession with intent to deliver cocaine, and a motion pursuant to Fed.R.Evid. 404(b) to exclude various pieces of evidence alleged to be inadmissible "character" evidence. For the reasons stated below, defendant's motions will be granted in part and denied in part.

## STATEMENT OF FACTS

Shawn Womack operated a business called "Sho Dog Rims" in Wilmington. In March 1995, Sho Dog Rims signed an agreement with a credit corporation allowing the business to accept credit card purchases. Docket Item ("D.I.") 26 at 1. At the time, Womack indicated that he expected the business' average sale to be $200. *Id.* Between November 1, 1995 and December 11, 1995, however, Sho Dog's deposits into its checking account amounted to about $101,700, of which $95,000 was from ten allegedly fraudulent credit card transactions. D.I. 26 at 2. All ten transactions were based on Bank of New York account numbers used without authorization. *Id.* On each of the invoices for the fraudulent transactions the information of the account holder was correct, except for the phone number. *Id*. The numbers were from Pennsylvania or Delaware whereas none of the cardholders was from those states. *Id.* Further, bank records of Sho Dog Rims indicate that Womack wrote checks to Brian Howell for $5,500 on November 22, 1995 and to Abubakar Davis for $3,000 on November 28, 1995 and for $600 on December 4, 1995. *Id.* On November 29, 1995, Laverna Womack transferred title of a 1984 BMW to Abubakar Davis, stating wrongly on the transfer of title that it was a "gift" from his "sister." *Id.*

Howell and Davis worked for the Bank of New York as part-time customer service representatives during this period. D.I. 26 at 2. They both had access to customer account information. *Id.* Both started training on October 9, 1995, and requested approval for outside employment at BJ/Roc's, a barber shop. *Id.* Howell was terminated on December 4, 1995 and Davis was terminated for absenteeism on December 27, 1995. *Id.* Davis had called in sick the day after Womack was first approached by Secret

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1998 WL 24355 (D.Del.)  
**(Cite as: Not Reported in F.Supp., 1998 WL 24355)**

Page 2

Service agents. *Id.*

Review of the Delaware and Pennsylvania phone numbers found on the ten invoices showed that two of the numbers were subscribed to by a former girl-friend of Davis; one by his mother; one by BJ/Roc's; one by an individual who is connected to the defendants by telephone records; two by individuals or entities that could not be connected to the defendants; and three by individuals in Pennsylvania whose phones were "cloned." D.I. 26 at 2-3. Toll record information for two of the three "cloned" phones revealed that between November 18, 1995 and December 8, 1995, the two cloned phones were used to make thirty-six calls to Howell's home; thirty-five calls to Davis' home; eighteen calls to Womack's home; and twenty-seven calls to Sho Dog Rims. *Id.* at 3. One of the credit cards was also used for a phone order of flowers to Davis' ex-girlfriend on November 8, 1995. *Id.*

**\*2** On December 13, 1995, the day after the Secret Service first contacted Womack, he tried to withdraw the remaining $11,000 from the Sho Dogs bank account. *Id.*

### DISCUSSION

*Prior Conviction-Role 609 Evidence*

The prosecution seeks to admit against Womack a 1990 conviction of possession with intent to deliver cocaine for purposes of impeachment only. As a result, the Court is called upon to apply Fed.R.Evid. 609 to the facts of this case. Federal Rule of Evidence 609 states in pertinent part:

For the purpose of attacking the credibility of a witness, (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused...."

Fed.R.Evid. 609. The burden of demonstrating the probative value of the prior conviction outweighs the prejudice to the defendant is on the party seeking to introduce the conviction. *See, e.g., United States v. Cunningham,* 638 F.2d 696, 698 (4th Cir.1981); *United States v. Hendershot,* 614 F.2d 648, 652-53 (9th Cir.1980); *United States v. Mahone,* 537 F.2d 922, 929 (7th Cir.), *cert. denied,* 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976).

Courts have generally considered five factors when balancing the probative weight and the prejudicial effect: 1) the nature (i.e., impeachment value) of the prior conviction; 2) the age of the conviction and the defendant's subsequent criminal history; 3) the similarity between the prior conviction and the charges for which the defendant is on trial; 4) the importance of the defendant's testimony; and 5) the importance of the defendant's credibility. *See, e.g. United States v. Alexander,* 48 F.3d 1477, 1488 (9th Cir.), *cert. denied,* 116 S.Ct. 210 (1995); *United States v. Moore,* 917 F.2d 215, 234 (6th Cir.1990), *cert. denied,* 499 U.S. 963 (1991); *United States v. Jackson,* 627 F.2d 1198, 1209 (D.C.Cir.1980); *Mahone,* 537 F.2d at 929; *United States v. Paige,* 464 F.Supp. 99, 100 (E.D.Pa.1978).

With respect to the first factor, the prosecution argues the crime of possession with intent to deliver cocaine has "relatively great" impeachment value. D.I. 34 at 5. In this case, there is no evidence of how the defendant's commission of this offense was particularly covert or deceptive. Further, to the degree the defendant's activities were deceptive or covert because he generally hid them from law enforcement officials, such a standard implicates all crimes. Nevertheless, the Court agrees with the government that some drug offenses are generally more covert or deceptive than other crimes. The Ninth Circuit Court of Appeals has held that "drug offenses" are probative of veracity, *U.S. v. Alexander,* 48 F.3d 1477, 1488 (9th Cir.1997), while the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1998 WL 24355 (D.Del.)  
**(Cite as: Not Reported in F.Supp., 1998 WL 24355)**

Page 3

Second Circuit Court of Appeals has distinguished between drug smuggling, which it held has a relatively high degree of impeachment value when compared to other crimes, and drug possession, which does not. *United States v. Hayes,* 553 F.2d 824, 828 (2d Cir.), *cert. denied,* 434 U.S. 867, 98 S.Ct. 204, 54 L.Ed.2d 143 (1977). Along this spectrum, possession of intent to deliver cocaine would appear to have slightly greater impeachment value than other crimes. With no more information, this factor weighs slightly in favor of admissibility.

**\*3** Regarding the second factor, the prosecution concedes that the defendant's more than seven year old conviction followed by a clean criminal record militates against admitting the conviction. Turning to the third factor, the Court agrees with the prosecution that the prior drug offense is not facially similar to the current credit card fraud and money laundering charges, such as would be the case if the current charges involved the use, possession or distribution of drugs. However, the Court agrees with Womack that the jury could reasonably infer the credit card fraud and money laundering scheme was motivated by a desire to obtain money to further a presumably ongoing drug habit or business. Further, the prosecution itself noted that, although the government intends to downplay the use of the words "money laundering" to describe the activities supporting that charge, the phrase "money laundering" conjures up images of a drug cartel. As a result, although not overtly similar to the current charges, the prior conviction for possession with intent to deliver drugs does create a somewhat greater risk than most crimes that the jury will use it not for impeachment purposes but rather to help determine the probability that Womack is guilty of the current charges against him. As a result, the third factor weighs slightly against admissibility.

The fourth factor, dealing with the importance of the defendant's testimony, weighs against admissibility. For tactical reasons at oral argument, Womack would not divulge details about the nature of his anticipated testimony. However, Womack indicated his testimony will dispute the government's arguments regarding the fraudulent transactions (e.g., the fraudulent nature of the transactions, the alleged intent to defraud, or his participation in the transactions). He will also testify to explain various documents. Womack argues there are no other means to introduce the evidence to be offered through his testimony. *See generally* JACK WEINSTEIN & MARGARET BERGER, 4 WEINSTEIN'S FEDERAL EVIDENCE § 609.04[2][a][v] (Joseph McLaughlin ed., 2d ed.1997) (explaining that a lack of other potential sources for the defendant's testimony increases the importance of the testimony). Further, as learned from oral argument on the motion for severance, there is no evidence the other defendants will offer exculpatory evidence on behalf of Womack. Despite the somewhat incomplete information available to the court regarding the substance of Womack's intended testimony, the Court believes there is sufficient evidence to find that Womack's testimony is very important to his defense. As stated by Womack, his testimony appears to be his primary if not his only defense at the present time. Consequently, this factor weighs against admissibility.

Finally, on the issue of the importance of credibility in this trial, the Court agrees with the prosecution that the defendant's credibility is a central issue, as the analysis of the fourth factor demonstrates. As a result, the fourth factor favors the government's argument for admission.

**\*4** Balancing the factors, the Court concludes the government has not shown the probative value of Womack's seven year old conviction for possession with intent to deliver cocaine outweighs the significant prejudice presented by the conviction in this case. Instead, there is an impermissible risk of the very kinds of prejudice that Fed.R.Evid. 609 was designed to protect against. WEINSTEIN & BERGER, 4 WEINSTEIN'S FEDERAL EVIDENCE at § 609 App.01. Womack's motion for exclusion of his prior conviction will be granted.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1998 WL 24355 (D.Del.)  
**(Cite as: Not Reported in F.Supp., 1998 WL 24355)**

Page 4

*Other Acts-Rule 404(b) Evidence*

Womack has made a motion to exclude the following three pieces of evidence: 1) credit card records that show someone used one of the stolen credit cards to order flowers for Davis' ex-girlfriend; 2) "cloned" phone numbers which were listed on the fraudulent transaction slips and were allegedly used by Davis to call Womack, among other people, during the time of the alleged conspiracy; 3) fraudulent transaction allegedly involving Womack which were not part of the charged offenses but occurred a short time before the charged offenses. The motion is based on Fed.R.Evid. 404(b) which states:

Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

Fed.R.Evid. 404(b). In order for evidence to be admissible in light of Fed.R.Evid. 404(b), the evidence must (1) have a proper purpose; (2) be relevant to that purpose; (3) have probative value that is not substantially outweighed by any unfair prejudice; and (4) be offered at trial along with an instruction charging the jury to consider it only for its limited purpose, not as character evidence. *See Huddleston v. United States,* 485 U.S. 681, 691, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). In more of a summary fashion, the Third Circuit Court of Appeals has stated the test as whether the evidence is "probative of a material issue other than character" and whether the probative value is "substantially outweighed by the danger of undue prejudice ." *See United States v. Sriyuth,* 98 F.3d 739, 745-46 (3d Cir.1996), *cert. denied,* 519 U.S. 1141, 117 S.Ct. 1016, 136 L.Ed.2d 892 (1997).

Regarding the credit card purchase of flowers for Davis' ex-girlfriend, the Court is compelled to address an unstated threshold issue: Is this evidence Rule 404(b) evidence at all? The Court concludes it is not. This evidence is relevant circumstantial evidence of Davis' participation in the conspiracy with which he is charged. When an act is part of the crimes for which the defendant is being charged and is not a separate, prior act to be somehow linked to the crimes charged, Rule 404(b) is simply not implicated. *See United States v. Blyden,* 964 F.2d 1375, 1378 (3d Cir.1992). *See also,* 2 JACK WEINSTEIN & MARGARET BERGER, 4 WEINSTEIN'S FEDERAL EVIDENCE § 404.20 [[2][b] (Joseph McLaughlin ed., 2d ed.1997) (stating that evidence governed by Rule 404(b) is often referred to as extrinsic evidence because it is extrinsic to the crime charged; acts intrinsic to the charged offense are not governed by Rule 404(b)). As a result, with respect to Davis, the evidence is clearly admissible. Although the relevance of the evidence and its potential prejudice as to Womack is less clear and may give rise to an objection and subsequent limiting instruction on its use against Womack, the evidence still does not raise a 404(b) problem with respect to Womack. Womack's motion to exclude the charge record for the flowers will be denied.

**\*5** In terms of the cloned phone numbers (i.e., phone numbers illegally obtained and used), the Court's analysis mirrors that stated above. This evidence is circumstantial evidence that Womack was involved in the charged conspiracy of credit card fraud and money laundering. If these numbers were used on the fraudulent credit transactions slips and he is connected to those numbers, this evidence is clearly part of establishing the very conspiracy it seeks to prove. This is not character evidence, which 404(b) was designed to protect against but rather is evidence of the crime itself. *See United States v. Dozie,* 27 F.3d 95, 97 (4th Cir.1994) (acts that occurred within the time frame of the conspiracy and that were admitted to prove involvement in the conspiracy and not to prove similar acts are not Rule 404(b) evidence); Blyden, 964 F.2d at 1378. Further, if the prosecution establishes, as it claims it will, that Davis was the person who used the phone numbers to call Womack, such circumstantial evidence is directly applicable to helping estab-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 5
Not Reported in F.Supp., 1998 WL 24355 (D.Del.)
**(Cite as: Not Reported in F.Supp., 1998 WL 24355)**

lish the conspiratorial relationship among the defendants. *See United States v. Bailey,* 859 F.2d 1265, 1283 (7th Cir.1988) (evidence admissible to show relationship between conspirators), *cert. denied,* 488 U.S. 1010, 109 S.Ct. 796, 102 L.Ed.2d 787 (1989). Womack's motion to exclude the cloned phones evidence will be denied.

A very different analysis applies, however, to the evidence of prior fraudulent transactions. First, these transactions are clearly the very kinds of "other crimes, wrongs, or acts" contemplated by Rule 404(b). They are illegal acts identical to those being charged and they occurred before (i.e., outside of) the conspiracy charged. Although the evidence may be relevant to establish knowledge of the fraudulent nature of similar transactions and/or a plan of such illegal transactions, the Court is unpersuaded by the prosecutions argument that there is "virtually no unfair prejudice." On the contrary, the prejudice presented by this evidence is both substantial and of the very nature that is prohibited by Rule 404(b). If the jury is not convinced that Womack engaged in the prior transactions, then both the probative value and the risk of prejudice are both low. However, if the jury decides that Womack did engage in the prior transactions, the jury might readily conclude that he must have committed the subsequent fraud and money laundering, even if they would not have been independently convinced of Womack's guilt. *See, e.g., United States v. Yeagin,* 927 F.2d 798, 803 (5th Cir.1991) (holding admission of prior drug conviction was improper because it "provided direct support only for the one inference specifically forbidden by rule 404(b): that because [the defendant] had committed drug crimes in the past, he had a bad character and a propensity to commit such crimes again"). This probable "bad character" use of the evidence substantially outweighs any probative value the evidence offers. As a result, the Court will grant Womack's motion to exclude these prior acts.[FN1]

> FN1. Because the alleged, prior fraudulent transactions cannot survive a Rule 404(b) analysis, the Court does not need to address whether the government established the occurrence of such acts by a preponderance of the evidence. *See Huddleston,* 485 U.S. at 686-691.

D.Del.,1998.
U.S. v. Womack
Not Reported in F.Supp., 1998 WL 24355 (D.Del.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.